# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br><br> Defendants. | Civil Action No.: 03-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br><br> Defendants. | Civil Action No.: 04-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br><br> Defendants. | Civil Action No.: 04-10477 (PBS) |

JANET BAKER and JAMES BAKER, JKBAKER
LLC and JMBAKER LLC,

     Plaintiffs,

      v.

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),

     Defendants.

Civil Action No.:  04-10501 (PBS)

## DECLARATION OF JEFF E. BUTLER

I, Jeff E. Butler, declare and state as follows:

1.     I am an attorney associated with Clifford Chance US LLP and admitted *pro hac vice* to practice before this Court.  I am fully familiar with the facts set forth herein.  I submit this declaration in support of Dexia Bank Belgium's Motion to Stay Proceedings Pending Interlocutory Appeal.

2.     Attached hereto as Exhibit A are true and correct copies of the stipulations signed by the Individual Plaintiffs agreeing to extend Dexia's time to answer or move against their complaints until 30 days after a decision on Dexia's motion to dismiss the Class Complaint.

3.     Attached hereto as Exhibit B is a true and correct copy of the Scheduling Order dated April 27, 2005.  This Scheduling Order was originally entered by the Court in *Baker v. Dexia, S.A.*, 04-CV-10501-PBS.  Judge Collings subsequently entered identical scheduling orders in *Quaak v. Dexia S.A.*, 03-CV-11566-PBS, *Stonington Partners, Inc. v. Dexia, S.A.*, 04-CV-10411-PBS, and *Filler v. Dexia S.A.*, 04-CV-10477-PBS.

NYA 759195.1

4.      Attached hereto as Exhibit C is a true and correct copy of a transcript of a hearing held on February 15, 2005, in the related *Lernout & Hauspie Securities Litigation* regarding Plaintiffs' Motion for Postponement of Trial Date.

5.      Attached hereto as Exhibit D is a true and correct copy of a letter dated September 30, 2005, that was received by the Brussels office of Clifford Chance from Examining Magistrate Henri Heimans, preceded by a certified translation of the letter into English.

6.      Apart from some possible follow-up items, Dexia has substantially completed its document production in this litigation.  Dexia has produced more than 140,000 pages of documents to Plaintiffs.  The documents were collected in Belgium and the vast majority are written in Flemish or French.  Dexia's production includes e-mails extracted from Artesia backup tapes that were created at the end of 1998 and 1999.

7.      The parties have engaged in discussions concerning the possible production of additional e-mail from certain backup tapes.  Dexia has not agreed to such discovery, but has indicated a willingness to compromise provided that Plaintiffs are willing to compensate Dexia for the cost of additional work by outside vendors.

8.      Plaintiffs have served two sets of interrogatories on Dexia.  Dexia has provided responses to all of Plaintiffs' interrogatories.

9.      Pursuant to the Scheduling Order, Plaintiffs produced well over a million pages of documents from the related *Lernout & Hauspie Securities Litigation* to Dexia in June 2005. Additionally, in response to Dexia's document requests, Plaintiffs produced approximately 400,000 pages of documents in September 2005.  Plaintiffs have resisted production of documents concerning their alleged investigation of Dexia.  On September 9, 2005, Dexia filed a

NYA 759195.1

motion to compel such documents. On October 6, 2005, Judge Collings issued a preliminary order requiring Plaintiffs to produce documents that Plaintiffs had previously agreed to produce. In response to that order, Plaintiffs produced nearly 4,000 pages of additional documents in October 2005. Judge Collings heard oral argument on this motion on October 20, 2005, and has taken the motion under advisement.

10.     Dexia has served two sets on interrogatories on the Class Plaintiffs, and one set of interrogatories on each of the Individual Plaintiffs. In response to one of those interrogatories, Plaintiffs have identified numerous individuals who were involved in their alleged diligent investigation of Dexia, including virtually all the lawyers currently representing Class Plaintiffs and Individual Plaintiffs in this litigation. In response to other interrogatories, Dexia received inadequate responses. Dexia moved to compel more complete responses at the same time that it moved to compel documents concerning Plaintiffs alleged diligent investigation. Judge Collings has taken that motion under advisement.

11.     In October 2005, Plaintiffs conducted a Rule 30(b)(6) deposition in Belgium of a Dexia representative on the subject of document collection. Apart from that deposition, there have been no other depositions in this litigation. In September 2005, Plaintiffs served a notice seeking the depositions of five Dexia employees to be taken in Belgium in January 2006. Dexia objected to this notice on the ground that three of those employees are not officers, directors or managing agents of Dexia. On November 4, 2005, Plaintiffs served a motion to compel deposition testimony from these three employees. Dexia served its opposition to that motion on November 18, 2005.

NYA 759195.1

12.     At the oral argument and conference held on October 20, 2005, counsel for Plaintiffs informed Judge Collings that an extension to the existing discovery schedule may be needed, and counsel for Dexia agreed with that assessment.

13.     The parties held a telephonic meet and confer on November 16, 2005, to discuss the discovery schedule and Dexia's proposal to stay proceedings.  Plaintiffs were represented on the call by Patrick Rocco of Shalov Stone & Bonner LLP, Steven Singer of Bernstein Litowitz Berger & Grossman LLP, Susan Davies of Gregory P. Joseph Law Offices, and Karen Dyer of Boies Schiller & Flexner.  Dexia was represented by Jeff Butler and Maryana Kodner of Clifford Chance US LLP.  During the call, Plaintiffs indicated that they were not willing to agree to a stay under any circumstances.  The parties also discussed an extension of the discovery schedule proposed by Plaintiffs, but ultimately decided to defer discussion of the schedule until after Dexia filed its motion to stay.

14.     The day after the telephonic meet and confer the Plaintiffs served Dexia with a Rule 30(b)(6) deposition notice, seeking testimony concerning the closing of a Dexia branch bank in New York City.  The notice included a Rule 34 document request on the same topic and demanded expedited treatment of those requests.  Dexia has informed Plaintiffs that they are not entitled to this discovery because the New York branch has no connection to the claims and defenses in this litigation.  On November 21, 2005, Plaintiffs filed an expedited motion to compel this discovery and Dexia moved for a protective order to prevent the discovery.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
          November 21, 2005

_____
                    Jeff E. Butler

5

NYA 759195.1

Exhibit A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JANET BAKER, and JAMES BAKER,<br>JKBAKER LLC and JMBAKER LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No.: 04-CIV-10501 (PBS) |
| | : | |
| DEXIA, S.A., DEXIA BANK BELGIUM<br>(formerly known as ARTESIA BANKING<br>CORP., S.A.), | : | |
| | : | |
| Defendants. | : | |

## STIPULATION ENLARGING TIME TO RESPOND TO COMPLAINT

The undersigned hereby STIPULATE AND AGREE that the deadline for Dexia Bank Belgium ("Dexia") to move, answer, or otherwise respond to the complaint in the above-captioned action be, and hereby is, enlarged until thirty (30) days after entry of a decision and order determining the motion of Dexia to dismiss the First Amended Class Action Complaint in the related action *Quaak et al. v. Dexia, S.A., et al.,* CA No. 03-11566-PBS.

/s/ Breton Leone-Quick
Peter M. Saparoff (BBO#441740)
Breton Leone-Quick (BBO#655571)
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO, PC
One Financial Center
Boston, MA 02111
Tel:  (617) 542-6000
Fax:  (617) 542-2241

Dated July 9, 2004

CLIFFORD CHANCE US, LLP
James B. Weidner
Sean M. Murphy
200 Park Avenue
New York, NY 10166
Tel: (212) 878-8000
Fax: (212) 878-8375

Counsel for Dexia S.A. and Dexia
Bank Belgium


_____/s/ George R. Coe (per assent)_____
George R. Coe
BOIS, SCHILLER & FLEXNER
LLP
255 South Orange Avenue, Suite 905
Orlando, FL 32801
Tel: (407) 425-7118
Fax: (407) 425-7047

Counsel for Janet Baker, James
Baker, JKBAKER LLC, and
JMBAKER LLC

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GARY B. FILLER and LAWRENCE
PERLMAN, Trustees of the TRA
Rights Trust,

               Plaintiffs,

v.

DEXIA, S.A. and DEXIA BANK
BELGIUM (formerly known as ARTESIA
BANKING CORP., S.A.)

               Defendants.

**Jury Trial Demanded**

CA No. 04-10477-PBS

## STIPULATION ENLARGING TIME TO RESPOND TO COMPLAINT

The undersigned hereby STIPULATE AND AGREE that the deadline for Dexia,
S.A. and Dexia Bank Belgium (collectively, "Dexia") to move, answer, or otherwise
respond to the complaint in the above-captioned action be, and hereby is, enlarged until
thirty (30) days after entry of a decision and order determining the motion of Dexia to
dismiss the First Amended Class Action Complaint in the related action *Quaak et al. v.
Dexia, S.A., et al.,* CA No. 03-11566-PBS.

Dated: June 21, 2004

GREGORY P. JOSEPH LAW OFFICES LLC

By: ___/s/Gregory P. Joseph_____
Gregory P. Joseph (N.Y. Atty Reg. #1645852)
e-mail: gjoseph@josephnyc.com
805 Third Avenue, 31st Floor
New York, New York  10022
Telephone:  (212) 407-1200

KOTIN, CARBTREE & STRONG, LLP
Nicholas M. Kelley (BBO #265640)
Amy C. Mainelli (BBO #657201)
One Bowdoin Square
Boston, Massachusetts 02114
Telephone:  (617) 227-7031

*Attorneys for Gary B. Filler and Lawrence Perlman,
Trustees of the TRA Rights Trust*

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO

By: _____/s/ Breton Leone-Quick_____
        Peter M. Saparoff (BBO #441740)
e-mail: psaparoff@mintz.com
Breton Leone-Quick (BBO #655571)
e-mail: bleone-quick@mintz.com
One Financial Center
Boston, Massachusetts  02111
Telephone:  (617) 542-6000

*Attorneys for Dexia S.A. and Dexia Bank Belgium*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, | : : : : : : | Civil Action No. 04-10411 (PBS) |
| Plaintiffs, | : : | **STIPULATION ENLARGING TIME TO RESPOND TO COMPLAINT** |
| v. | : : | |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.), | : : : | |
| Defendants. | : : : | |

The undersigned hereby STIPULATE AND AGREE that the deadline for Dexia Bank

Belgium ("Dexia") to move, answer, or otherwise respond to the complaint in the above-

captioned action be, and hereby is, enlarged until thirty (30) days after entry of a decision and

order determining the motion of Dexia to dismiss the First Amended Class Action Complaint in

the related action *Quaak et al. v. Dexia, S.A., et al.,* CA No. 03-11566-PBS.  In the event that

Dexia's motion to dismiss in the related *Quaak* action is denied and discovery commences in that

case, Dexia agrees that discovery may then commence in the above-captioned action.

                                        /s/ Breton Leone-Quick
                                        Peter M. Saparoff (BBO#441740)
                                        Breton Leone-Quick (BBO#655571)
                                        MINTZ LEVIN COHN FERRIS
                                        GLOVSKY & POPEO, PC
Dated: July 14, 2004                    One Financial Center
                                        Boston, MA 02111
                                        Tel:  (617) 542-6000
                                        Fax:  (617) 542-2241

CLIFFORD CHANCE US, LLP
James B. Weidner
Sean M. Murphy
31 West 52nd Street
New York, NY 10019-6131
Tel: (212) 878-8000
Fax: (212) 878-8375

Counsel for Dexia Bank Belgium


____/s/  J. Erik Sandstedt (per assent)____
J. Erik Sandstedt
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas
33rd Floor
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

Counsel for Stonington

2

Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
JANET BAKER AND JAMES BAKER,        )
JKBAKER LLC and JMBAKER LLC,        )
          Plaintiffs,               )
                                    )
          v.                        )  CIVIL ACTION NO. 04-10501-PBS
                                    )
DEXIA, S.A. and DEXIA BANK          )
BELGIUM (formerly known as          )
ARTESIA BANKING CORP., SA),         )
          Defendants.               )
                                    )
```

### SCHEDULING ORDER

April 27, 2005

Saris, U.S.D.J.

### 1. **Merits Discovery**

Merits discovery shall be completed by February 28, 2006. Subject to the entry of an appropriate protective order, Plaintiffs shall produce to Defendant no later than June 3, 2005, copies of the following documents from In re Lernout & Hauspie Sec. Litig., No. 00-CV-11589-PBS: (1) All documents produced by any party; (2) all deposition transcripts and exhibits; and (3) all written discovery requests and written responses.

Discovery taken in one of the coordinated actions will be treated as having been taken in all of the coordinated actions.

### 2. **Deposition Discovery**

Deposition discovery shall not begin until September 1, 2005, with the following exceptions: (1) the parties may seek discovery through Hague Convention requests or letters rogatory

at any time; (2) the parties may take depositions pursuant to
Fed. R. Civ. P. 30(b)(6) concerning document retention and
production in this case; (3) the parties may agree to depositions
at an earlier date. Dexia shall inform plaintiffs as soon as an
employee provides notice that he/she is leaving the employment of
Dexia. Plaintiffs may notice and take a departing employee's
deposition at any time.

    3.  **Expert Discovery**

Pursuant to Fed. R. Civ. P. 26(a)(2), the parties shall
serve expert reports concerning any matters for which they bear
the burden of proof on or before March 31, 2006. The parties
shall serve rebuttal expert reports on or before May 5, 2006.
All expert depositions shall be completed on or before June 30,
2006.

    4.  **Joinder of Additional Parties**
       **and Amendment of Pleadings**

Any motion to join additional parties or to amend the
pleadings in this action shall be filed on or before August 1,
2005.

    5.  **Dispositive Motions/Class Certification**

A motion for class certification shall be filed on or before
March 28, 2006. Any motion for summary judgment shall be filed
by August 3, 2006.

    6.  **Settlement/Settlement Conference**

Plaintiffs will present Defendants with a settlement demand

within the next thirty days.

   7.   **Final Pretrial Conference**

   The hearing on any dispositive motions and/or the final
pretrial conference shall take place on November 8, 2006.


                                   **S/PATTI B. SARIS**
                                   United States District Judge

3

Exhibit C

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
--------------------------------        Civil Action
IN RE:                          :       Nos. 00-11589-PBS,
                                :       02-10302, 02-10303
    LERNOUT & HAUSPIE          :        and 02-10304
    SECURITIES LITIGATION      :        Courtroom No. 19
         and                    :       1 Courthouse Way
    CONSOLIDATED AND           :        Boston, MA 02210-3002
    RELATED CASES              :        4:00 p.m. Tuesday
--------------------------------        February 15, 2005
```

CONFERENCE

Before:        THE HONORABLE PATTI B. SARIS,
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

Berman, DeValerio & Pease, Tobacco, Burt & Pucillo,
   (by Glen DeValerio, Esq, and Jeffrey C. Block, Esq. and
   Patrick Egan, Esq.),
   One Liberty Square, Boston, MA 12109,
   on behalf of the Class Action Plaintiffs.

Shalov, Stone & Bonner LLP, (by Patrick Rocco, Esq.),
   485 Seventh Avenue, Suite 100, New York, NY 10018,
   on behalf of the Class Action Plaintiffs.

Gregory P. Joseph Law Offices LLC, (by Susan Davies, Esq.)
   1221 Avenue of the Americas, 24th Fl., New York, NY 10004,
   on behalf of the Filler Plaintiffs.

Bernstein, Litowitz, Berger & Grossmann LLP,
   (by Javier Bleichmar, Esq.),
   1285 Avenue of the Americas, New York, NY 10019,
   on behalf of the Stonington Plaintiffs.

Marie L. Cloonan
Federal Court Reporter
1 Courthouse Way - Room 5209
Boston, MA 02210 - 617-439-7086
Mechanical Steno - Transcript by Computer

FORM CSR-LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

APPEARANCES CONTINUED:

Boies, Schiller & Flexner LLP, (by George R. Coe, Esq.),
  255 South Orange Avenue, Suite 905
  Orlando, FL 32801-3456,
  on behalf of the Baker Plaintiffs.

Willcox, Pirozzolo & McCarthy, (by James Nicklaus, Esq.),
  50 Federal Street, Boston, MA 02110,
  on behalf of the Bamberg and Roth Plaintiffs.

Goodwin Proctor LLP, (by Anthony M. Feeherry Esq. and
  Gus P. Coldebella, Esq.)
  Exchange Place, 53 State Street, Boston, MA 02109,
  on behalf of the Defendant Jozef Lernout.

Morrison Cohen Singer & Weinstein, LLP,
  (by David H. Chase, Esq.),
  750 Lexington Avenue, New York, NY 10022
  on behalf of the Defendants Pol Hauspie and Nico Willaert.

Craig and Macauley, (by William R. Moorman, Jr., Esq.),
  600 Atlantic Avenue, Boston, MA 02210,
  on behalf of the Defendant Gaston Bastiaens.

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
  (by Peter M. Saparoff, Esq.)
  One Financial Center, Boston, MA 02111,
  on behalf of the Defendant Dexier.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

3

1                              * * *

2          THE CLERK:   In Re:   Lernout and Hauspie Securities

3     Litigation, Civil Action No. 00-11589, will now be heard

4     before this Court.

5          Will counsel please identify themselves for the

6     record.

7          MR. DeVALERIO:   Good afternoon, your Honor.  Glen

8     DeValerio and Jeffrey Block and Patrick Egan from Berman

9     DeValerio for the plaintiffs.

10         MR. ROCCO:   Good afternoon, your Honor.  Patrick

11    Rocco, Shalov Stone & Bonner, for the plaintiffs.

12         MS. DAVIES:   Susan Davies of the Gregory Joseph Law

13    Offices for the Filler plaintiffs.

14         MR. COE:   George Coe, Boies, Schiller & Flexner for

15    the Baker plaintiffs.

16         MR. BLEICHMAR:   Javier Bleichmar on behalf of the

17    Stonington plaintiffs.

18         MR. NICKLAUS:   Jim Nicklaus, Willcox, Pirozzolo and

19    McCarthy for the Bamberg and Roth plaintiffs.

20         MR. FEEHERRY:   Anthony Feeherry for Mr. Lernout,

21    defendant.

22         MR. COLDEBELLA:   Gus Coldebella also for Mr.

23    Lernout.

24         MR. CHASE:   Don Chase for the defendants Hauspie

25    and Willaert.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

4

1          MR. MOORMAN:  William Moorman for Gaston Bastiaens.

2          THE COURT:  Well, here's the issue.  You don't want

3     to go to trial, basically, next month, as I understand it,

4     unanimously?  Is that it?

5          MR. DeVALERIO:  Yes, your Honor.  We don't want to,

6     but --

7          THE COURT:  I'm not willing to wait years.

8          You see, here's my issue.  These five cases have

9     shown up on my old case report now twice in a row.  They

10    were triggered as ancient at this point.  And, I have no

11    immediate sense of when they can go to trial.  So, we have

12    some solutions.

13         If you don't want to go to trial, one possibility

14    is I can stay this case, administratively close them until

15    the criminal case in Belgium is resolved.  And, then, you

16    can reopen it at that point.

17         Another issue is you could just dismiss the case

18    without prejudice, subject to an agreement that no statute

19    of limitations issues will be raised.

20         Or, thirdly, we can try it.

21         But, I can't infinitely put this off.  I don't

22    think we can tag it to Dexier because Dexier -- there's so

23    many issues between now and when we get to Dexier, that it

24    could be two years down the road.

25         MR. DEVALERIO:  Well, your Honor, let me respond to

5

1    that.

2          First of all, I don't think that that's accurate.

3    A very substantial amount of the discovery with regard to

4    Dexier is completed.  Because, we have all the discovery

5    with regard to the LDCs which is the role that Dexier played

6    --

7          THE COURT:  Well, how far down the road -- is

8    anyone here from Dexier?

9          MR. DeVALERIO:  Yes, they are here.

10          THE COURT:  How long do you see it?  What other

11    motions are up your sleeve, shall we say?

12          MR. SAPAROFF:  Well, my client --

13          THE COURT REPORTER:  Could I have your name,

14    please?

15          MR. SAPAROFF:  Peter Saparoff from Mintz Levin.

16          THE COURT:  Yeah.

17          MR. SAPAROFF:  The client just got the opinion,

18    your Honor.  So, I don't have much in the way of direction.

19    But, I could see a substantial amount of time before Dexier

20    is ready for trial.  There's been obviously no discovery

21    conducted by Dexier yet.

22          THE COURT:  Yes.  I mean, that's just it.

23          So let me ask you this.  I was trying to think of

24    the dilemma from your point of view.

25          Why don't we just close the case, pending whatever

6

1    happens in Belgium and, then, you just kick it into action

2    when that case is resolved.

3         MR. DeVALERIO:  Well, that part of it is the simple

4    part of it.  The complex part is the question of whether or

5    not we can try the Dexier action with the individual

6    defendants.

7         The problem with -- and my guess is, if your

8    Honor's position is that we're going to have to do this

9    twice, that our position is we'll just do it twice.

10        THE COURT:  You may have to.

11        MR. DeVALERIO:  Well, the problem is -- and the

12   complications that would arise from that are enormous.  For

13   example, not only are we going to have to put in all that

14   testimony two times, we're going to have the damage expert,

15   we're going to have the accounting expert, we're going to

16   have to have juries decide a portion of the fault.

17        THE COURT:  I understand this isn't perfect.

18        You chose to do Dexier separately.  You got a

19   benefit from that because it's a separate proceeding.  But,

20   it also comes with a cost.

21        I am simply not willing to carry five cases on the

22   geriatric list, the only five that I have, infinitely.  I am

23   willing to take other steps.  I understand at least --

24   actually, I just got another opinion -- I haven't had a

25   chance to see -- so, I'm not sure I totally understand what

7

1    the issue is yet and I'll read it over.  I understand that

2    there is some problem here, logistically and strategically.

3    I also understand that from the individual's point of view

4    -- has that Fifth Amendment issue been raised and resolved?

5            MR. CHASE:  It's been raised, not resolved.

6            THE COURT:  All right.

7            We could just do what I generally do in these

8    matters when there are pending criminal matters in a United

9    States case.  Just stay it.  Just stay it until the Belgium

10   thing is over.  It preserves your -- it takes it off my

11   active list.  It stays it, so you haven't lost your statute

12   of limitations.  As soon as that case which you, at least

13   last time, told me it was supposed to be tried in Belgium in

14   the fall, is that still a realistic shoot?  Someone?

15           MR. CHASE:  No idea, your Honor.

16           THE COURT:  Anyone know?

17           MR. COLDEBELLA:  That's our current understanding.

18           THE COURT:  And, then, when that's over, you seek

19   to put it back in and, then, we'll see where it exactly is.

20   If we're just a few months separate, that's one thing.  If

21   we're still years down the road, that's another thing.

22           MR. DeVALERIO:  Well, clearly, from our point of

23   view, if your Honor is willing to entertain at the

24   appropriate time the notion that it is not advantageous to

25   try these things twice, we'd be talking about several months

8

1    of trial done two times, with all the res judicata and

2    collateral estoppel issues that would come from one trial

3    and whether they're applied to another, and potentially

4    different jury verdicts with regard to percentage fault, one

5    to another.  That would be, I think, a logistical and legal

6    nightmare.

7          THE COURT:  I'm --

8          MR. DeVALERIO:  But, if --

9          THE COURT:  I'm never willing -- I'm never going to

10    say never.  I'm just simply saying I understand the

11    argument.  We're now so close to when the criminal case is

12    supposed to be tried, I'd be willing, if it goes that route

13    -- I don't know whether there are res judicata that stems

14    from that.  But, my guess is that there'd be a serious

15    chance of settlement if the defendants either won or lost on

16    that.  It would just facilitate settlement.

17          Is that right?

18          MR. DeVALERIO:  I'm sorry.  What ould be?

19          THE COURT:  Whatever happens in that criminal

20    proceeding may facilitate settlement.

21          MR. DeVALERIO:  It's really not a settlement

22    issue, your Honor.  The problem is what the PSLRA has put us

23    all in a bind now.

24          If we -- if we are able to establish -- and this is

25    what Judge Cote ruled on in the Worldcom case -- if we are

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

9

1   able to establish knowing conduct by Dexier and that

2   establishment in that trial is done in the context in which

3   the individuals remain as defendants and are tried at the

4   same, or, tried and go to a verdict, as opposed to

5   settlement, then, the claim against Dexier, they do not get

6   a setoff for the portion fault of the individual defendants,

7   which could easily be half or more of a verdict.

8          If we settle with them, even though in this

9   context, which we all recognize collectability is slim to

10  zero, and we know that -- but, if we settle, they get --

11  Dexier, even if we're able to establish known conduct, gets

12  a free pass with regard to the settlement with the

13  individuals and they get proportionate fault. And so, half

14  or more of a judgment against Dexier could be lost by

15  settlement.

16          THE COURT: That may be.

17          Let me tell you what my restraints are. I'm not

18  willing to wait forever. I've made that position clear.

19  They are sitting -- they've been sitting here since when,

20  1999? It's an old case. It's a really old case, which I've

21  spent enormous amounts of time on, as I know all of you

22  have. I think I've written half a dozen or more opinions

23  and that doesn't even include the ones Judge Collings has

24  put into it.

25          So, I am willing, because I understand we're so

10

1   close now to the trial in Belgium, to stay the case pending

2   that.  That makes sense.  We'll move along the Dexier case.

3   We'll see how close they are.  But, I'm not willing to put

4   this case -- I understand that -- I'm not willing to put it

5   off three years.  I'm just not.  Maybe you'll settle with

6   Dexier.  Maybe it will create a good incentive to do that.

7            So, let me hear -- does anyone have a problem with

8   staying this, pending the criminal proceeding in Belgium?

9            MR. DeVALERIO:  Well, let me just say, for the

10  plaintiffs, that we could -- if we were to see that -- it

11  would be a stay pending either the earlier of a resolution

12  with the criminal action, or, the Dexier case is now ready

13  for trial and we're there and thus able to make the argument

14  --

15           THE COURT:  Well, you could move to reopen it

16  whenever you want, but -- because, actually, from my point

17  of view, you go off my radar screen as soon as I

18  administratively close it.  You can move to reopen it.  I'll

19  do it on the grounds of the criminal proceeding and you can

20  move to reopen it whenever.

21           MR. COLDEBELLA:  We have no problem with that, your

22  Honor.

23           THE COURT:  Preserve -- my concern, just so that I

24  speak outloud, is I don't think you're right.  I think that

25  Dexier is at least they have to master the materials, I'm

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

11

1    going to get the inevitable motion for summary judgment.

2         If it looks anything like that monster that I

3    started to read before it settled -- I mean, I'm not

4    kidding.  We had a dolly bring in -- well, you probably had

5    one in your office.  What was it, eight crates of documents?

6    If it looks anything like that and it doesn't settle, it

7    will take me another three years to get through Dexier.

8         MR. DeVALERIO:  Your Honor, the only other point I

9    want to make is that -- we still have the settlement pending

10   against the outside directors and FLV.  So, I don't know

11   what your Honor has to do to keep it open at least for

12   purposes of our conclusion of settlement.

13        THE COURT:  When is that all resolved?  You

14   probably know.

15        MR. DeVALERIO:  Well, we're just about to finish

16   now with the FVL papers.  So, we're at a point where we'll

17   be able to file that, get a preliminary approval, and, then,

18   send a notice out.  So, it will be May, June, something like

19   that.

20        THE COURT:  Do we have a date for that?

21        MR. DeVALERIO:  We did, but we then continued it

22   because we settled with FLV.

23        THE COURT:  So, should we put that on now?

24        MR. DeVALERIO:  What are we, Patrick?

25        MR. EGAN:  We probably will get the FLV papers,

12

1    preliminary approval, within the next, I would say, week,

2    week and a half or two weeks.

3           MR. DeVALERIO:  Then, we have the notice hearing

4    and the final approval hearing.

5           I don't know if your Honor wants -- really needs to

6    have a hearing for preliminary approval of the FLV --

7           THE COURT:  No, no, no.

8           But, don't we need a hearing date?  Maybe I'll just

9    give -- you think this will happen sometime in May?

10          MR. EGAN:  Well, there's the preliminary approval

11   papers.  We'll have a proposed order and you can set a final

12   order at that time.

13          THE COURT:  Okay.

14          MR. DeVALERIO:  We'll propose a date.

15          THE COURT:  Of course.  That needs to be done.

16          So, does anyone have a problem with this solution?

17          MR. ROCCO:  Judge, I just want to clarify, because

18   I may be the one to craft the order.  This is without

19   prejudice to anybody's right to seek your Honor to reopen

20   the case?  I mean, it's stayed, but if events change and

21   either the Dexier case, is where we think it's going to be,

22   where something happened in the criminal proceeding, or

23   there's some issue with respect to discovery?

24          THE COURT:  Right.

25          But, anybody could move to reopen it.

13

1          Let me just say the one uncertainty in my mind.

2     Let's say there's a criminal trial and something happens,

3     charges are dismissed, they're acquitted, they're convicted,

4     whatever.  And, let's assume at that point, I think you need

5     to give me a status.

6          Maybe what I should do is set a status as to where

7     it's at.  What I think is bad lawyering -- well, that's

8     actually wrong.  I don't want to -- there's been excellent

9     lawyering in this case -- bad judgment on my part.  If you

10    go too far down the line, people's memories fade.  It just

11    -- as it is right now, I don't know how anyone can remember

12    anything.

13          And so, I'm not willing to wait until 2008 or some

14    -- I mean, I'm not willing to wait forever.  There is an

15    interest.  And, even though I understand, I've never seen

16    this play out before.  I understand how it interests you.

17    It's just I can't have it play out forever.

18          MR. ROCCO:  Your Honor, we share that same concern.

19    That's why I want to make sure we have the right to go back

20    in after years go by and, then, nothing's happened in

21    Belgium, or, that we may -- we may say, at that point:

22    Let's just have a trial.

23          THE COURT:  Yeah.  I don't know how you, candidly,

24    how you're going to try this case here.  Isn't it all going

25    to be by way of depositions?

14

1          MR. DeVALERIO:  Largely.

2          THE COURT:  That's horrible.  I mean, just in terms

3     of pressing the matter, I'm sure.

4          How are you all planning on defending the case?  By

5     way of deposition?

6          MR. CHASE:  It depends on whether -- your Honor, it

7     depends on whether it will be on the Fifth Amendment issue

8     or not.

9          THE COURT:  Well, once that trial is over, is there

10    going to be some -- let's say, for example, is there any

11    serious possibility of a criminal prosecution here?

12         MR. COLDEBELLA:  Well, the way that we've thought

13    about it, your Honor, is that the statute of limitations

14    probably runs around fall of 2005, in the United States and,

15    at that point --

16         THE COURT:  The winds were howling and they should

17    have known in the SEC Office?

18         (Laughter.)

19         MR. COLDEBELLA:  Exactly.

20         And, at that point, we may choose to defend the

21    case in a different way than we were defending that.

22         THE COURT:  Have you all been taking video

23    depositions over there

24         MR. DeVALERIO:  Yes.

25         THE COURT:  So, it won't be quite so boring for a

15

1    jury.

2         I don't know if any of you remember this case.  I

3    don't think any of you were involved.  But, I had a case

4    involving an alleged fraudulent fish farm, a situation in

5    Canada, and everyone was beyond the power of the subpoena.

6    It was the deadliest trial anyone's ever sat on.  It was a

7    hundred percent trial by depositions.

8         And, I have to tell you that the plaintiff lost,

9    although I thought he had a decent case, because all the key

10   witnesses were on transcripts.

11        Now, it's a little different now because of video.

12   Yeah, I'm not even sure the jury listened.  I mean, at some

13   point, it just gets boring.  So, I'm hoping that we can do

14   something else.

15        But, I am going to -- I can't do anything as far as

16   staying the cases now.

17        I take it the private plaintiffs are satisfied with

18   this solution, too?

19        MR. BLEICHMAR:  Yes, your Honor.

20        THE COURT:  And, I will just stay it until someone

21   moves to reopen it and gets it off my list and it's not just

22   sitting there every six months.

23        Are there five cases?  Are there five altogether?

24   It's my only five cases pending for six years or whatever it

25   is.  So, I think that is a helpful way to get beyond it.

16

1          Now, let me ask you.  If you're here for Dexier,

2    can I do a scheduling conference now?

3          MR. DeVALERIO:  I'm sorry, your Honor?

4          THE COURT:  Can I do a scheduling conference for

5    Dexier so you don't have to come back?

6          MR. DeVALERIO:  Well, we -- Mr. Saparoff and I were

7    talking before the hearing and what we discussed was that we

8    would try to come up with a schedule for your Honor of --

9    answer, discovery and, you know, all the way through.  And,

10   we'd like to have an opportunity to meet and discuss that

11   and see if we can work that out, only come back here with

12   whatever we may have in dispute.

13         THE COURT:  I'm not even sure you need to come

14   back, just if it's agreed upon --

15         MR. DeVALERIO:  Only if there is a dispute.

16         THE COURT:  But, it's got to be within reason

17   because there -- I can't imagine there's a deposition that

18   hasn't been taken.  And, that isn't to say that Dexier

19   doesn't have the right to clean it up.  But, you can

20   incorporate all those depositions into the case between the

21   two of you.  And, then, you can do cleanup depositions.  You

22   know, how it specifically affects Dexier.

23         You see, we've got to give them enough chance to

24   master the material.  It's huge, huge.

25         So, why don't you --

17

1           MR. DeVALERIO:  Well, remember, your Honor, this --

2    there is a distinction.  As long as you run it to the LDC

3    portion --

4           THE COURT:  That's huge.

5           MR. DeVALERIO:  Well, it's significant, but it's

6    not overwhelming.

7           THE COURT:  It's not the guy disappearing into

8    China.  Has anyone found him?

9           MR. DeVALERIO:  No.

10          MR. CHASE:  Korea?

11          MR. DeVALERIO:  No.

12          THE COURT:  But, wasn't he -- He's Korean?

13          MR. DeVALERIO:  They think he went to China, your

14    Honor.

15          THE COURT:  What?

16          MR. DeVALERIO:  They think he went to China.

17          THE COURT:  I keep thinking, with all these tours

18    of China, someone is going to say "There he is," on the

19    wall.  But, in any event -- or, one of those new

20    skyscrapers, one of those cities I've never heard of.  You

21    know.

22          (Laughter.)

23          THE COURT:  But, let's do this.  You two work it

24    out.  I'll probably just agree on two trials in the future.

25    If I can possibly try them together, I will.  But, I'm very

18

1    wary of waiting too long.

2         MR. DeVALERIO:  We are, too.

3         THE COURT:  You know, one possibility was let's say

4    you were tried in the fall and we could get you up to speed,

5    within a year, that might be a doable scenario than close to

6    three years.

7              Are there any personal jurisdiction issues with

8    Dexier?

9         MR. DeVALERIO:  No.  The bank is found here in the

10   United States.

11        THE COURT:  So that we won't have that whole round

12   of communications?

13        MR. DeVALERIO:  Well, it doesn't mean that it won't

14   be emotional, your Honor.

15        FROM THE FLOOR:  If we dismiss against Dexier USA,

16   then, there is a personal jurisdictional --

17        THE COURT:  All right.

18        FROM THE FLOOR:  -- then -- I don't think there is

19   on Dexier.

20        THE COURT:  All right.  Because that held up the

21   other -- a few of the other cases for a while.  So, it's

22   really going to be merits, discovery and then likely motions

23   for summary judgment, my guess is.  Is that right?

24        FROM THE FLOOR:  That's correct.

25        THE COURT:  All right.  So, you're going to get me

19

1    two things.  One is the FLV papers and then I'll set a date.

2    One is the schedule and set a date.  And, then, maybe an

3    agreed-upon motion for administrative leave to close this

4    pending the criminal action, without prejudice to either

5    side's right to move to reopen it.

6            MR. DeVALERIO:  We'll circulate a proposed order.

7            THE COURT:  Everybody else is happy?

8            MR. COLDEBELLA:  Yes.

9            THE COURT:  I don't really understand in my heart

10   what this is all about.  You say the Worldcom people have

11   done it pretty well, explained the whole ...

12           MR. DeVALERIO:  Well, Judge Cote wrote an

13   exhaustive opinion on the scope of these problems.  And,

14   you'll see it there.

15           The fundamental problem is that while -- when --

16   Congress had in the statute a section that said when there's

17   knowing conduct found against the defendant, then, you will

18   not have proportion of fault.  There would be joint and

19   several liability.

20           But, then, another section says that in the event

21   there's a settlement, then, the settling defendants -- the

22   nonsettling defendants are entitled to a setoff for the

23   proportionate fault of the settling defendant.

24           And, where the ambiguity lies is the Court -- the

25   statute never said anything about: well, what happens if you

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

20

1   go forward with a trial against the nonsettling defendant

2   and you find that -- the jury finds or the Court finds

3   knowing conduct by the nonsettling defendant?

4        And, that's been a battle going on and has been a

5   real impediment to settlement discussions in many cases for

6   several years now because no one knows the answer.

7        And, Judge Cote seems to be saying -- this is his

8   opinion -- but it has to do with Section 11 as opposed to

9   Section 10(b), the 33 Act -- that, yes, if you have -- if

10  you settle and even if you have knowing conduct later found

11  against the nonsettling defendant, that nonsettling

12  defendant gets the benefit of the proportion fault for the

13  settling defendant, which means, as you see here, she denies

14  approval of the settlement.

15        The plaintiffs say:  In that case, we're

16  withdrawing the settlement with the individuals because

17  we're not going to jeopardize the recovery against the

18  nonsettling defendants.

19        That would be the same situation --

20        THE COURT:  And, here, it would be worth it to you

21  because it's likely that the individuals don't have very

22  much money, whereas the bank would?

23        MR. DeVALERIO:  And, that's exactly what happened

24  before Judge Cote.  It was just $50 million as opposed to

25  potentially billions of dollars in liability by the inside

21

1    defendants.

2         THE COURT:  In the meantime, I rushed my -- not

3    rushed, but I made sure I got out Dexier before this because

4    it might -- is it worth trying to settle everything globally

5    at this point, people have a sense of the risks of it?

6         MR. DeVALERIO:  Well, we -- Mr. Saparoff and I -- I

7    spoke to him.  Obviously, they just got the opinion.  And, I

8    suggested to him the question of did they want to sit down

9    and talk, and I think it's part of our discussions on the

10   schedule.  We will broach that subject as well.

11        THE COURT:  I used to be able to offer the world's

12   most wonderful Judge Mazzone, but obviously he's not here

13   anymore.  And, I -- some of the magistrate judges -- and

14   Judge Skinner is not doing well.  So, I don't -- our ADR

15   program we're rethinking at the moment.  But, some of the

16   magistrate judges are pretty good and you can go privately.

17   So, I don't know whether that's something you --

18        MR. DeVALERIO:  Well, Professor Green knows a lot

19   about this --

20        THE COURT:  I know he does.

21        MR. DeVALERIO:  -- as well as Judge Pollitan who

22   settled the --

23        THE COURT:  I didn't want to -- Judge Green -- I

24   feel like it's Judge Green sometimes -- he's been very

25   involved in a bunch of my cases as he is in this one.  He'd

22

1    be great.  I don't know if Dexier feels comfortable with

2    him.  But, if not, we can try some other solution.

3           It may be worth you trying to do that and we can

4    wrap it all up in the FLV thing.  But ...

5           MR. DeVALERIO:  That, I think, is --

6           THE COURT:  That's too rosy?

7           MR. DeVALERIO:  Yeah.

8           THE COURT:  Fair enough.  Okay.

9           ALL ATTORNEYS:  Thank you, your Honor.

10          THE CLERK:  The Court is in recess.

11          (Whereupon the hearing was concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit D

Ghent Court of Appeal
Henri Heimans
President, Investigating Magistrate
Lieven Bauwens Building 2
5th Floor
Martelaarslaan, 17
9000 Ghent
Tel.: 09/269.30.38 – 09/269.30.43
Fax: 09/269.30.39

Ghent, 30 September 2005

Clifford Chance
Attorneys-at-law
Attention: Mr Sébastien Ryelandt, LLM
Attorney-at-law
Avenue Louise 65, box 2
1050 Brussels

**By ordinary post + by fax (02/533.59.59)**

Dear Mr Ryelandt,

Re:    L&H (not. no. 71.98.464/00) - I.C.1
       Your ref. SERY/C5162/16
       Discovery proceedings before the US courts, in which Dexia is a defendant

In reply to your letter dated September 29, 2005 concerning the subject in the
reference line, I wish to provide the following clarification on point 9 of my letter
dated August 2, 2005.

My office cannot and indeed in no way wishes to prohibit any person from making
statements under oath in American civil proceedings.

Such statements under oath should - however be avoided, in my view, if these persons
have been indicted in a Belgian criminal investigation.

To answer your specific question as to the announcement of the American plaintiffs,
I must request that you provide me with the names of the five members of Dexia,
whose depositions are scheduled for January 2006.

Sincerely yours,

Henri Heimans"
President, Investigating Magistrate

Pour traduction **conforme,**
La Traductrice Jurée,
**PAY Pascale**

**HOF VAN BEROEP
TE GENT**

Kamervoorzitter-onderzoeksrechter
**Henri HEIMANS**

Lieven Bauwens Building 2
5° verdieping
Martelaarslaan, 17
9000 Gent

tel. 09/269.30.38 – 09/269.30.43
fax. 09/269.30.39

Gent, 30 september 2005,

CLIFFORD CHANCE
Advocatenkantoor
T.a.v. meester Sébastien Ryelandt
advocaat
Avenue Louise 65 box 2

1050   BRUSSEL

**per gewone post + per fax (02/533.59.59)**

Waarde Meester,

**Betreft : L & H (not.nr. 71.98.464/00) – I.C.1
U. ref. SERY/C5162/16
"Discovery" procedure vóór Amerikaanse rechtbanken waarin
Dexia verweerder is.**

In antwoord op uw brief dd. 29 september 2005 i.v.m. voormelde aangelegenheid, wens ik -wat betreft punt 9 van mijn brief van 02 augustus 2005- de volgende verduidelijking van mijn zienswijze te verstrekken.

Mijn ambt kan en wil geenszins verbod opleggen aan enige persoon om verklaringen onder eed af te leggen ter gelegenheid van de Amerikaanse burgerlijke procedure.

Dergelijke verklaringen onder eed worden -naar mijn oordeel- echter best vermeden, in zoverre deze personen in het Belgisch strafonderzoek in verdenking zijn gesteld.

Om specifiek op uw vraag te antwoorden i.v.m. de aankondiging van de Amerikaanse eisende partijen, verzoek ik u mij de namen mede te delen van de vijf leden van de Dexia Bank, wiens verhoren gepland zijn voor januari 2006.

Met de meeste hoogachting,

Henri HEIMANS
Kamervoorzitter-onderzoeksrechter.