# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>      Defendant. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>      Plaintiffs,<br><br>      v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>      Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>      Plaintiffs,<br><br>      v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>      Defendants. | No.: 04-CV-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br><br> Defendants. | No.: 04-CV-10501 (PBS) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE RETURN OF INADVERTENTLY PRODUCED OPINION WORK PRODUCT DOCUMENTS

Class Plaintiffs Hans A. Quaak, Attilio Po and Karl Leibinger Class plaintiffs together with plaintiffs Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings, L.L.C., Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust, and Janet Baker, James Baker, JKBaker LLC and JMBaker LLC (collectively the "Plaintiffs") hereby jointly move, pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.1 to compel Defendant Dexia Bank Belgium ("Dexia") to return inadvertently produced opinion work product and to destroy any notes, memoranda or other documents Dexia has created concerning the opinion work product.

### PRELIMINARY STATEMENT

To date, Plaintiffs have produced over 1.8 million pages of documents to Dexia, including Plaintiffs' counsel's non-opinion work product files as of August 19, 2001 and all discovery requests, responses and documents produced in *In re Lernout & Hauspie Sec. Litigation* ("L&H Litigation"). In the course of this massive production, Plaintiffs had attorneys, paralegals and law clerks review all of the L&H Litigation document productions and perform a sweep for any attorney notes or comments.

Despite these reasonable precautions, Plaintiffs inadvertently produced fourteen nearly identical privileged documents to Dexia (the "Inadvertently Produced Documents").[1] The Documents are coding sheets that Plaintiffs used to review certain documents produced in the L&H Litigation. The Documents list issues and parties in the L&H litigation, and attorney opinions and notes of mental processes concerning the underlying documents. As such, the Documents are unquestionably *opinion* work product. Moreover, these documents were created well after August 19, 2001, and therefore fall beyond the scope of this Court's October 6, 2005 and December 22, 2005 Orders.

Immediately upon learning of the inadvertent production of a single document, Plaintiffs re-reviewed the L&H Litigation document productions they had made available to Dexia and determined that thirteen other, similar documents had been inadvertently produced. Plaintiffs demanded that Dexia return all copies of the Inadvertently Produced Documents. Dexia has refused, taking the position that any privilege has been waived in its entirety. Dexia is mistaken. As demonstrated below, given the scope of the production, the precautions taken by Plaintiffs' counsel and the *de minimus* number of inadvertently produced documents, Plaintiffs have not waived their privilege under the applicable test for inadvertent production. Accordingly, Dexia should be ordered to return the Inadvertently Produced Documents and to destroy any notes, memoranda or other documents Dexia has created concerning the opinion work product.

---

[1] In their January 26, 2006 and February 10, 2006 letters, Plaintiffs have designated the Documents confidential pursuant to paragraph 3 of the May 31, 2005 Stipulation and Proposed Order Governing the Treatment of Confidential Information. Accordingly, the documents have been withheld from the exhibits submitted in support of this motion, but are available for review *in camera* at the Court's request.

**RELEVANT FACTS**

To date, Class Plaintiffs and Transactional Plaintiffs have produced more than 1.8 million

pages of documents to Dexia in this litigation.  *See* Declaration of Patrick T. Egan ("Egan

Decl.") at ¶ 4.  As part of this production, on or about June 30, 2005, Plaintiffs produced to

Dexia over 113,000 pages of documents that had been produced by non-party Brown Rudnick

Berlack Israels LLP ("Brown Rudnick") in response to a subpoena served by Plaintiffs in the

L&H Litigation and other related litigations.  Egan Decl. at ¶ 5.  In so doing, Plaintiffs

inadvertently produced thirteen nearly identical documents entitled "Lernout & Hauspie

Document Review Issues List", which were produced in one box containing Brown Rudnick

documents Bates stamped BRBI 8564-15059.  *Id.*

These documents were created and utilized by Plaintiffs' counsel during a document

review occurring in mid-2002.  *See* Declaration of Avi Josefson ("Josefson Decl."), at ¶¶ 2-6.

The documents contain a list of issues and potential witnesses, as well as handwritten attorney

notes regarding the underlying documents.  *Id.* at ¶ 6.

Because Plaintiffs' counsel previously had reviewed and analyzed the copy of the Brown

Rudnick document production that was to be made available to Dexia, counsel for Class

Plaintiffs took steps to ensure that qualified attorneys, paralegals and law clerks re-reviewed all

boxes of documents for any potentially privileged or work product documents before making

them available to Dexia.  Egan Decl. at ¶ *6.*  Specifically, the persons performing the review

were instructed to identify any handwritten annotations, coding sheets or other un-Bates stamped

documents within the boxes containing the document production.  *Id.*  Any such documents were

to be brought to the attention of a more senior attorney.  *Id.*  Moreover, as an added preliminary

precaution, the written coding sheets used by Plaintiffs' counsel in connection with their prior

3

review and analysis of the Brown Rudnick document production had been printed on brightly

colored paper to make the sheets stand out and to clearly distinguish attorney notes from the

underlying document production. *Id.* The Stonington Plaintiffs took similar precautions,

printing such coding sheets on brightly colored papers. *See* Josefson Decl. at ¶ 6. However, it

appears that the when the "BRBI" documents were sent from the Stonington Plaintiffs to Class

Plaintiffs the thirteen inadvertently produced coding sheets were copied onto plain white paper.

*See id.* at ¶ 7.

Also on or about June 30, 2005, Plaintiffs produced to Dexia a computer hard drive

containing 350,902 electronic images of documents Plaintiffs had obtained from parties and non-

parties in the L&H Litigation.[2] Egan Decl. at ¶ 7. The computer hard drive contained a two-

page document similar to the document identified in Ms. Kodner's January 6, 2006 letter, which

appears immediately prior to document Bates stamped YPR037753. *Id.* The YPR-related

document was created and utilized by Plaintiffs' counsel during a document review occurring in

November 2003, months after the initial lawsuit was commenced against Dexia. *Id.* at ¶ 8. The

document contains a list of issues and potential witnesses, as well as handwritten attorney notes

regarding the underlying document. *Id.*

For purpose of the hard drive production, Plaintiffs' counsel had instructed our document

vendor not to scan any documents that reflected un-Bates stamped attorney notes or coding

sheets, which were printed on brightly colored paper. Egan Decl. at ¶ 9. Again, Plaintiffs also

printed those coding sheets on brightly colored paper to signify that they were privileged. *Id.*

Despite these reasonable precautions, the Documents were inadvertently produced to

Dexia. On January 6, 2006, counsel for Dexia notified Plaintiffs' counsel in a letter that a

---

[2]  Plaintiffs had scanned for their own use some documents that had been produced to them in paper
form. As a courtesy, Plaintiffs produced to Dexia electronic versions of those documents as well.

document "may have been produced inadvertently." *See* Egan Decl., Ex. A. Within hours,

Plaintiffs responded, informing Dexia that the production was inadvertent, requesting the return

of the document and any other versions or copies and thanking Dexia's counsel for its perceived

professional courtesy. *See* Egan Decl., Ex. B. In addition, Class Plaintiffs' counsel re-reviewed

the various document productions from the L&H Litigation that they had produced to Dexia in

this litigation in order to identify, and request the return of, any other inadvertently produced

documents. *Id.* at ¶ 4. In the course of that review, Class Plaintiffs' counsel identified a total of

thirteen other inadvertently produced documents, none of which bear any Bates numbers. *Id.*

Class Plaintiffs' counsel has requested that Dexia return these documents and destroy all notes

and memoranda concerning same. *Id.* Dexia has refused to do so, resulting in the instant motion.

## ARGUMENT

### I.    The Documents Are Privileged And Were Produced Inadvertently

Two things about the Inadvertently Produced Documents are indisputable: they are

opinion work product, and they were produced inadvertently. First, the Inadvertently Produced

Documents are coding sheets Plaintiffs' counsel created to assist in the review of certain

documents produced in the L&H Litigation and related actions. What is more, many of the

Inadvertently Produced Documents also contain handwritten attorney notes and comments on

particular items. As such, the Inadvertently Produced Documents reflect the opinions and mental

impressions of the attorneys performing the reviews in connection with on-going litigation. *See*

Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947).[3]

---

[3] In refusing to return the documents, Dexia not only argues that the act of production constituted a waiver, but that Plaintiffs have broadly waived all work product protection in this action by placing counsel's investigation into issue. *See* Egan Decl., Ex. D. This broad argument was already raised in connection with Dexia's motion to compel, and rejected by the Court in its December 22, 2005 Order. Accordingly, Dexia's already rejected 'global waiver' argument should be ignored.

Second, there has been no dispute that the production was inadvertent.  In fact, Dexia's counsel's January 6, 2006 letter acknowledged that the document found by Dexia "does not have a Bates number and it may have been produced inadvertently."  *See* Egan Decl., Ex. A.  Plaintiffs promptly confirmed that the production was inadvertent and demanded the return of that document and the other Inadvertently Produced Documents.

**II.    Plaintiffs' Inadvertent Production Of Privileged Documents Did Not Waive The Protections Afforded Opinion Work Product**

Given that the production was inadvertent, and that the Inadvertently Produced Documents are protected opinion work product, the only question is whether Plaintiffs have waived the privilege.[4]  Based on the law applied by the majority of courts in this circuit, the answer is no.

**A.    The Legal Standard Governing Inadvertent Production**

In determining whether the inadvertent production of privileged documents constitutes a waiver of the privilege, the majority of courts in this Circuit recently have applied what is known as the "middle test."  *See, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 292 (D. Mass. 2000) (C.J. Young) (adopting "middle test" after detailed survey of the law in this Circuit and finding such approach consistent with *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995)); *Turner v. Brave River Solutions, Inc.*, 92-148-JD, 2003 U.S. Dist. LEXIS 10298, at *4-6 (D.N.H. June 18, 2003) (adopting "middle test," granting motion to exclude use of inadvertently produced documents and ordering defendant to "return every note, memorandum or document containing any part of the language in the privileged file"); *see also Worcester v. HCA Mgmt. Co.*, 839 F. Supp. 86, 89 (D. Mass. 1993) (finding no

---

[4]  The May 31, 2005 Stipulation contains no provision for the handling of inadvertently disclosed documents.

waiver of privilege after analyzing the "totality of the circumstances surrounding the inadvertent production").[5] Indeed, Judge Saris herself implicitly adopted the "middle test" in *In re Grand Jury Subpoena*, 925 F. Supp. 849 (D. Mass. 1995). *See id.* at 855 ("Even an inadvertent release of a document *may in certain circumstances* work a waiver of the attorney-client privilege. A waiver *may result from the failure to take reasonable steps* to insure confidentiality.") (internal citations omitted and emphasis added). *Cf. VLT Corp. v. Unitrode*, 194 F.R.D. 8, 11 (D. Mass. 2000) (M.J. Neiman) (citing *Amgen* and noting that it would be inclined to adopt the middle test).

Under the "middle test," courts consider a number of factors to determine whether the inadvertently producing party has waived the privilege, namely: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." *Amgen*, 190 F.R.D. at 291.

Dexia has refused to return the Inadvertently Produced Documents, relying on this Court's pre-*Amgen* decision in *Int'l Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445 (D. Mass. 1988). There, this Court held that the inadvertent production of privileged documents operated as a waiver of the attorney-client privilege as to those documents by applying the so-called strict accountability test. *Id.* at 449-50. As noted above, however, since that time, the vast majority of courts in this circuit have rejected the strict accountability test in favor of the "middle test" outlined above. Moreover, the First Circuit implicitly rejected the "strict accountability"

---

[5] The two other approaches are: (a) the "never waived" test, which holds that a disclosure that was merely negligent can never effect a waiver because the holder of the privilege lacks a subjective intent to forego protection, *see Corey v. Norman, Hanson & DeTroy*, 742 A.2d 933, 941 (Me. 1999); and (b) the "strict accountability" test, which holds that confidentiality is always waived by inadvertent disclosure, *see Int'l Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449-50 (D. Mass. 1988). After a thorough analysis, the *Amgen* Court expressly rejected both of these approaches in favor of the "middle test" outlined above. *See Amgen*, 190 F.R.D. 290-91.

test in *Texaco* by acknowledging that inadvertent disclosure "may" work as a waiver. *See Texaco*, 60 F. 3d at 883; *see also Amgen*, 190 F.R.D. at 291.[6] Accordingly, Plaintiffs respectfully submit that the "middle test" controls.

### B. The Inadvertent Production Does Not Serve To Effect A Waiver Of Privilege Under the "Middle Test"

Applying the "middle test" to the facts here, it is clear that the balance of these factors weighs heavily in favor of upholding the work product privilege and compels the return of the Inadvertently Produced Documents.

First, Plaintiffs took reasonable precautions to prevent the inadvertent disclosure of documents. In particular, Plaintiffs had a staff of attorneys, law clerks and paralegals review the L&H document productions prior to their production to Dexia for any potentially privileged documents. Egan Decl. at ¶ 6. The reviewers were instructed to flag any documents that appeared to be attorney notes or comments so that any such documents could be reviewed a second time by senior attorneys. *Id.* Plaintiffs' reliance on staff to perform this non-discretionary task was entirely reasonable and proper. *See Turner*, 2003 U.S. Dist. LEXIS 10298, at *4-5 (finding precautions reasonable where file clearly marked "work product" was inadvertently placed in boxes made available to defendant). Moreover, Plaintiffs instructed their document vendor not to scan any coding sheets contained within a production. Despite Plaintiffs' instructions and the fact that the coding sheets were on brightly colored paper to

---

[6] Despite what Dexia may argue, the First Circuit did not adopt the "strict accountability test" for issues of inadvertent waiver in *Texaco*. *See Texaco*, 60 F.3d at 883 ("It is apodictic that inadvertent disclosures may work a waiver of the attorney-client privilege."). As then Chief Judge Young recognized in *Amgen*, the First Circuit stated only that inadvertent disclosure "*may*" result in a waiver of privilege, not that it always will. *Amgen*, 190 F.R.D. at 291. Moreover, two of the three opinions the *Texaco* court cited used "the balancing language of the 'middle test,'" and the First Circuit itself discussed the disclosing party's negligent conduct, a discussion that would have been rendered unnecessary had the Court been adopting the "strict" test. *Id.*

signify that they were privileged, our vendor scanned one two-page coding sheet alongside the other documents.  Egan Decl. at ¶ 9.

Second, Plaintiffs requested the return of the documents within hours of learning of the inadvertent production.  *See* Egan Decl., Ex. B.  Moreover, while Dexia noted the inadvertent production of only one document, Plaintiffs promptly identified other inadvertently produced documents and requested their immediate return.  *See* Egan Decl. Ex. E.

The third and fourth factors—the scope of the production and the extent of the inadvertent disclosure—also weigh heavily in Plaintiffs' favor.  Plaintiffs' entire production exceeds 1.8 *million* pages of documents.  Yet the inadvertent production was limited to only thirteen one-page documents, all of which are essentially identical, and a separate two-page document mistakenly scanned by Plaintiffs' vendor.  In *Turner*, the court held that the inadvertent production of nine privileged pages in a mere 2,093-page production was a "deminimus oversight."  *Turner*, 2003 U.S. Dist. LEXIS 10298, *5.  Plaintiffs' inadvertent production, which constitutes a much smaller fraction of the overall production, cannot therefore be described as anything but "deminimus."  *Cf. Amgen*, 190 F.R.D. at 293 ("An occasional inadvertently-produced document would be more comprehensible under the circumstances of such a large [70,000 pages] production.").

The fifth factor—the overriding interest of fairness and justice—also falls in Plaintiffs' favor.  As noted above, the Documents are opinion work product and fall outside the scope of this Court's October 6, 2005 and December 22, 2005 Orders.  Moreover, in its prior Orders, this Court has taken pains to protect the sanctity of Plaintiffs' counsels' opinion work product.  *See* December 22, 2005 Order (ordering production of non-opinion work product and stressing that "plaintiffs do not have to reveal all documents relating to the L&H investigation").  This is

supported by the well-settled principal that "[t]he underlying purpose of the work product

doctrine is to protect the integrity of the adversarial process by creating a zone of privacy for

those matters prepared by or for the party or the party's counsel in anticipation of litigation."

*Amgen*, 190 F.R.D. at 290. "As the First Circuit has stated, 'our adversarial system of justice

cannot function properly unless an attorney is given a zone of privacy within which to prepare

the client's case and plan strategy, without undue interference.'" *In re Grand Jury Subpoena*,

925 F. Supp. at 853 (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014

(1st Cir. 1988)); *see also Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 96 (D.

Mass. 2002) (M.J. Dein) ("The work product doctrine is distinct from and broader than the

attorney-client privilege.") (citation omitted); *Catino v. Travelers Ins. Co.*, 136 F.R.D. 534, 539

(D. Mass. 1991) (M.J. Collings) (equating disclosure of opinion work product to "disclosure of

those types of items which would destroy the *inviolate nature of the attorney's thought

processes*") (emphasis added).

       Weighing the precautions taken by Plaintiffs' counsel and the underlying sanctity of the

opinion work product doctrine, fairness and justice compel the return of the inadvertently

produced documents. *See Worcester*, 839 F. Supp. at 89 (compelling return of documents

because "recognition of the privilege under these circumstances does not result in an injustice.

On the contrary, it promotes the important goals of the work product doctrine and the attorney-

client privilege.").

10

### III.    Any Waiver Is Strictly Limited To The Documents Inadvertently Produced

Even assuming the work product protections have been waived, which Plaintiffs by no means concede, it is clear under the law of this District that any such waiver would be limited to only the Inadvertently Produced Documents. *See Int'l Digital Sys.*, 120 F.R.D. at 446 n.1 ("I can find no case in which an unintentional or inadvertent disclosure has been found to be a waiver of the privilege as to undisclosed documents concerning the same subject matter"); *Amgen*, 190 F.R.D. at 293 (rejecting subject matter waiver argument); *Ken's Foods,* 213 F.R.D. at 96 ("'[T]he broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to Rule 26(b)(3).'") (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222 (4th Cir. 1976)).

### CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court order Dexia to return the inadvertently produced opinion work product and to destroy any notes, memoranda or other documents Dexia has created concerning the opinion work product.

Dated:  March 8, 2006                    Respectfully submitted,

BERMAN DEVALERIO PEASE
    TABACCO BURT & PUCILLO
    _____/s/ Patrick T. Egan_____
Glen DeValerio, BBO # 122010
Jeffrey C. Block, BBO #600747
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
One Liberty Square
Boston, MA 02109
Telephone:  (617) 542-8300

SHALOV STONE & BONNER LLP
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone:  (212) 239-4340

CAULEY BOWMAN CARNEY & WILLIAMS PLLC
Allen Carney
11001 Executive Center Drive, Suite 200
P.O. Box 25438
Little Rock, Arkansas 722125438
Telephone:  (501) 312-8500

**CO-LEAD COUNSEL TO LEAD CLASS PLAINTIFFS
HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER**

LOONEY & GROSSMAN LLP
_____ /s/ Richard J. Grahn___
Richard J. Grahn, BBO #206620
(rgrahn@lgllp.com)
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2800

BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP
Max W. Berger
Steven B. Singer
Avi Josefson
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400

**COUNSEL TO PLAINTIFFS STONINGTON PARTNERS,
INC., STONINGTON CAPITAL APPRECIATION 1994
FUND L.P. AND STONINGTON HOLDINGS L.L.C.**

GREGORY P. JOSEPH LAW OFFICES LLC
_____ /s/ Susan M. Davies_____
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

KOTIN, CRABTREE & STRONG
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone:  (617) 227-7031

**COUNSEL TO PLAINTIFFS GARY B. FILLER and
LAWRENCE PERLMAN, Trustees of the TRA Rights Trust**

13

PARTRIDGE, ANKNER & HORSTMAN LLP
    /s/ Terrence K. Ankner
Terrence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone:  (617) 859-9999
BOIES SCHILLER & FLEXNER
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida  32801
Telephone: (407) 425-7118

REED SMITH LLP
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

**COUNSEL TO PLAINTIFFS JANET BAKER, JAMES
BAKER, JKBAKER LLC and JMBAKER LLC,**

14

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on this 8th day of March, 2006, a true and correct copy of the foregoing was served via electronic means, upon counsel listed on the attached service list and also via U.S. Mail on counsel for Dexia Bank Belgium identified on the attached list.

                                                    /s/ George R. Coe

## Service List

**Attorneys for Baker Plaintiffs – 04-CV-10501**

Terence K. Ankner
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street
16th Floor
Boston, MA 02116
Tel: (617) 859-9999
Fax: (617) 859-9998
tka@anknerlaw.com

Alan Cotler
Joan Yue
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-4301
Tel: (215) 851-8100
Fax: (215) 851-1420
acotler@reedsmith.com
jyue@reedsmith.com

**Attorneys for the Class Plaintiffs – 03-CV-11566**

Jeffery C. Block
Patrick T. Egan
BERMAN, DEVALERIO, PEASE, TABACCO, BURT & PUCILLO
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194
jblock@bermanesq.com
pegan@bermanesq.com

Curtis L. Bowman
Allen Carney
CAULEY, BOWMAN CARNEY & WILLIAMS, PLLC
P.O. Box 25438
Little Rock, AR 72221
Tel: (501) 312-8500
Fax: (501) 312-8505
cbowman@cauleybowman.com
acarney@cauleybowman.com

Patrick L. Rocco
SHALOV, STONE & BONNER
485 7th Avenue
Suite 1000
New York, NY 10018
Tel: (212) 239-4340
Fax: (212) 239-4310
procco@lawssb.com

**Attorneys for Filler Plaintiffs – 04CV-10477**

Gregory P. Joseph
Susan M. Davies
GREGORY P. JOSEPH LAW OFFICES, LLC
805 Third Avenue, 31st Floor
New York, NY 10022
Tel: (212) 207-1210
Fax: (212) 407-1274

ujoseph@josephnyc.com
sdavies@josephyc.com

Nicholas Kelley
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114-2925
Tel:  (617) 227-7031
Fax:  (617) 367-2988
kcs@kcslegal.com

**Attorneys for Stonington Plaintiffs – 04-CV-10411**

Steve Singer
Javier Bleichmar
BERNSTEIN, LITOWITZ, BERGER & GROSSMAN, LLP
1285 Avenue of the Americas
New York NY 10019
Tele: (212) 554-1400
Fax:  (212) 554-1444
steven@blbglaw.com
javier@blbglaw.com

Charles P. Kindregan
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
Tel: (617) 951-2800
Fax: (617) 951-2819
ckindregan@lgllp.com

**Attorneys for Defendant Dexia Bank Belgium**

Peter M. Saparoff
Breton T. Leone-Quick
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
psaparoff@mintz.com
bleone-quick@mintz.com

James B. Weidner
Jeff Butler
Amber C. Wessels
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel: 212-878-8000
Fax: 212-878-8375
James.Weidner@cliffordchance.com
Jeff.Butler@cliffordchance.com
Amber.Wessels@cliffordchance.com