**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  03-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  04-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.:  04-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.: 04-10501 (PBS) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL THE RETURN OF INADVERTENTLY PRODUCED DOCUMENTS**

Peter M. Saparoff (BBO#441740)
Breton Leone-Quick (BBO#655571)
MINTZ LEVIN COHN FERRIS
GLOVSKY & POPEO
One Financial Center
Boston, MA 02111
Tel:   (617) 542-6000
Fax:  (617) 542-2241

James B. Weidner
Jeff E. Butler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019-6131
Tel:   (212) 878-8000
Fax:  (212) 878-8375

*Counsel for Dexia Bank Belgium*

**Table of Contents**

Table of Authorities ..................................................................................................................ii

Preliminary Statement...............................................................................................................1

Background ...............................................................................................................................2

Argument ..................................................................................................................................4

I.     THE DOCUMENTS IN QUESTION ARE HIGHLY RELEVANT TO DEXIA'S
STATUTE OF LIMITATIONS DEFENSE ................................................................4

II.    PLAINTIFFS HAVE WAIVED WORK PRODUCT PROTECTION BY PUTTING
THEIR INVESTIGATION AT ISSUE IN THIS LAWSUIT .....................................6

        A.    The Documents in Question Are Non-Opinion Work, Which the Court Has
Already Found to Be Waived ........................................................................6

        B.    Plaintiffs Have Also Waived Opinion Work Product Protection .............7

III.   PLAINTIFFS HAVE ALSO WAIVED WORK PRODUCT PROTECTION
THROUGH THE INADVERTENT PRODUCTION .................................................7

        A.    The "Strict Accountability" Approach...........................................................8

        B.    The "Middle" Test .........................................................................................8

Conclusion ..............................................................................................................................11

**Table of Authorities**

Cases

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
190 F.R.D. 287 (D. Mass. 2000)......................................................................................9, 10

*Ares-Serono, Inc. v. Organon Int'l B.V.,*
160 F.R.D.1 (D. Mass. 1994)..................................................................................................8

*F.D.I.C. v. Singh,*
140 F.R.D. 252 (D. Me. 1992)................................................................................................8

*Fleet Nat'l Bank v. Tonneson & Co.,*
150 F.R.D. 10 (D. Mass. 1993)............................................................................................10

*Int'l Digital Sys. Corp. v. Digital Equip. Corp.,*
120 F.R.D. 445 (D. Mass. 1988)............................................................................................8

*Quaak v. Dexia S.A.,*
357 F. Supp. 2d 330 (D. Mass. 2005) ....................................................................................4

*Texaco P.R., Inc. v. Dep't of Consumer Affairs,*
60 F.3d 867 (1st Cir. 1995).....................................................................................................7

Statutes

Fed. R. Civ. P. 26(b)(3)................................................................................................................6

Defendant Dexia Bank Belgium ("Dexia") respectfully submits this memorandum of law, the Declaration of Jeff E. Butler dated March 22, 2006 ("Butler Decl.") and the Declaration of Breton Leone-Quick dated March 22, 2006 ("Leone-Quick Decl.") in opposition to Plaintiffs' Motion to Compel the Return of Inadvertently Produced Documents.

## Preliminary Statement

Plaintiffs have inadvertently produced at least two "Document Review Issues Lists" to Dexia, each of which contains a list of topics potentially relevant to their lawsuits (the "Issue Lists"). These documents are highly relevant to Dexia's statute of limitations defense. The Court has recognized that Dexia's defense depends in part on whether Plaintiffs conducted a reasonably diligent investigation of potential claims against Dexia following "storm warnings" in late 2000 and early 2001. The two Issue Lists provide strong evidence that Plaintiffs did not conduct *any* investigation of potential claims against Dexia until sometime after August 2002, and possibly as late as June 2003. Dexia will argue on summary judgment and at trial that such procrastination by Plaintiffs cannot be considered reasonably diligent.

Plaintiffs claim that the Issue Lists are protected from disclosure by the work product doctrine. Such protection, however, was waived by Plaintiffs when they placed the diligence of their investigation at issue in this litigation. Plaintiffs maintain that their lawyers conducted an investigation of potential claims against Dexia, and that such investigation included the review of documents produced by other parties in related litigation. The Issue Lists were apparently used in connection with that document review. The Court has already ordered Plaintiffs to produce non-opinion work product concerning their alleged investigation. These Issue Lists, which merely enumerate relevant factual issues, plainly qualify as non-opinion work product. Even if they could be considered "opinion" work product, such protection has also been waived by

Plaintiffs through their affirmative reliance on an alleged diligent investigation conducted by and through their lawyers.

Plaintiffs have also waived work product protection over these documents by producing them to Dexia. In cases of inadvertent production, some courts have applied a "strict" rule that such disclosure always waives work product protection as to the documents produced. Other courts have applied a "middle" test, which involves the balancing of various factors, focusing on the precautions taken by Plaintiffs to prevent such disclosure. Even under the "middle" test, Plaintiffs have waived protection over these Issue Lists. The documents themselves indicate that few, if any, precautions were taken to prevent their disclosure. Moreover, the inadvertent production went undiscovered by Plaintiffs for more than six months, and was eventually noticed by Dexia, not the Plaintiffs. Based on these circumstances, the factors of the "middle" test indicate that work product protection for these documents has been waived.

In sum, Plaintiffs have clearly waived any work product protection that might apply to these documents, either by relying on their alleged investigation or through the act of producing them to Dexia. These documents are highly relevant to Dexia's defense, and Dexia should be permitted to retain and make use of them in this litigation.

**Background**

In the initial Scheduling Order entered in this litigation on April 27, 2005, the Court ordered Plaintiffs to produce to Dexia all documents produced by any party in the prior class action proceedings titled *In re Lernout & Hauspie Securities Litigation*, No. 00-CV-11589-PBS. (*See* Butler Decl. Ex. A.) On or about June 30, 2005, Plaintiffs produced to Dexia documents from Brown Rudnick Berlack Israels LLP with Bates numbers BRBI 8564-15059 and documents from a Lernout & Hauspie warehouse with Bates numbers YPR 1-97535.

2

More than six months later, counsel for Dexia noticed a non-Bates stamped document entitled "Lernout & Hauspie Document Review Issues List" inserted among the "BRBI" documents produced by Plaintiffs. (*See* Leone-Quick Decl. Ex. A.) This document appeared to be a coding sheet that would have been used by Plaintiffs to review documents produced by other parties. The fact that this document lacked a Bates number implied that it may have been produced inadvertently. In full compliance with Massachusetts ethical obligations,[1] counsel for Dexia promptly notified counsel for Plaintiffs on January 6, 2005, that the document had been produced, and that it may have been produced inadvertently. (*See* Egan Decl. Ex. A).

Plaintiffs requested the immediate return of the document, but Dexia refused because the document was highly relevant and because Plaintiffs had waived any work product protection over the document. (*See* Egan Decl. Ex. D.) Counsel for Dexia also pointed out to Plaintiffs that Opinion 99-4 of the Massachusetts Bar Association virtually requires counsel to retain and make use of inadvertently produced documents if it is in their client's interest to do so. (*Id.*)

Several weeks later, on January 26, 2006, Plaintiffs informed Dexia that the Issue List was "one of thirteen essentially identical documents Plaintiffs inadvertently produced to Dexia in a portion of the 'BRBI' production." (*See id.* Ex. E.) Counsel for Dexia, however, have not been able to locate the other twelve examples of Issue Lists among the documents produced by Plaintiffs. (Butler Decl. ¶ 3.)

On February 10, 2006, Plaintiffs informed Dexia of yet another inadvertently produced document, this time among the "YPR" documents produced by Plaintiffs. (*See* Egan Decl. Ex.

---

[1] Rule 4.4 of the ABA Model Rules of Professional Conduct, as amended in February 2002, states that a lawyer who receives a document inadvertently must "promptly notify the sender," but does not require the lawyer to refrain from examining the document or to follow the instructions of the sender. *See* ABA Formal Op. 05-437 (October 1, 2005). Consistent with this, Opinion 99-4 of the Massachusetts Bar Association Ethics Opinions states that a lawyer should resist the return of an inadvertently produced document if "it is in his client's best interest to do so."

G.)  Although Plaintiffs refer to a two-page document, counsel for Dexia was only able to find a one-page Issue List similar to the Issue List found among the "BRBI" documents, along with what appears to be a separate one-page document titled "Witness List."  (*See* Leone-Quick Decl. Exs. B & C.)  Because this second version of the Issue List is also relevant to Dexia's statute of limitations defense, Dexia has declined to return it to Plaintiffs.  (*See* Egan Decl. Ex. I.)[2]

## Argument

I.  **THE DOCUMENTS IN QUESTION ARE HIGHLY RELEVANT TO DEXIA'S STATUTE OF LIMITATIONS DEFENSE.**

The documents that Plaintiffs have inadvertently produced to Dexia are highly relevant to Dexia's defense based on inquiry notice under the applicable statute of limitations.  Dexia has argued, and the Court has recognized, that Plaintiffs have the burden of proving that they conducted a reasonably diligent investigation of potential claims against Dexia (or its predecessor, Artesia Banking Corp.) following "storm warnings" in late 2000 and early 2001.  *See Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330, 340 (D. Mass. 2005) ("Thus, the critical inquiry is whether plaintiffs were reasonably diligent in investigating potential claims against this defendant once those storm warnings appeared.").

In order to meet their burden, Plaintiffs have insisted that they conducted a reasonably diligent investigation of potential claims against Artesia or Dexia.  According to Plaintiffs, that investigation included many activities, including reviewing documents produced by various parties in the prior *L&H Securities Litigation*.  (*See, e.g*, Butler Decl. Ex. B, Response to Interrogatory No. 4.)  If Plaintiffs are going to argue, on summary judgment or at trial, that their

---

[2] It is not clear whether Plaintiffs seek the return of the "Witness List" document.  Plaintiffs do not describe this document in any of their correspondence with Dexia, or in their motion to compel.  In any event, return of this document is not warranted for the same reasons that return of the Issue Lists is not warranted.

4

diligent investigation included the review of documents produced by other parties in the *L&H Securities Litigation*, then Dexia has every right to present evidence to rebut that argument.

The Issue Lists produced to Dexia provide strong evidence that Plaintiffs were *not* investigating Artesia or Dexia when they reviewed documents in connection with the *L&H Securities Litigation*. The first of these documents lists 22 entities and/or issues that Plaintiffs considered relevant, but does not contain any mention of Artesia or Dexia. (*See* Leone-Quick Decl. Ex. A.) Plaintiffs have stated that this document was created in July 2002, and used for review beginning in August 2002. (*See* Josefson Decl. ¶ 6.) Accordingly, this document clearly shows that, as of August 2002 and for some time thereafter, Plaintiffs were not looking for documents that would support potential claims against Artesia or Dexia.

The second document produced by Plaintiffs was created in November 2003, after the lawsuit against Dexia was filed. (*See* Egan Decl. ¶ 8.) This document is substantively identical to the earlier Issue List, except that it adds a 23rd item explicitly referencing Artesia and Dexia. (*See* Leone-Quick Decl. Ex. B.) This confirms that, once Plaintiffs began investigating claims against Artesia or Dexia, they included those entities on their document review issue list. It also plainly indicates that Plaintiffs started investigating potential claims against Artesia or Dexia sometime between the first Issue List (August 2002) and the second (November 2003).

These Issue Lists therefore provide some of the clearest documentary evidence obtained thus far that Plaintiffs did *nothing* to investigate potential claims against Artesia or Dexia for *years* after storm warnings placed them on inquiry notice of such claims. They are exactly the type of evidence that Dexia has been seeking through discovery, and that Plaintiffs have been

5

fighting tooth and nail to avoid producing.[3] These documents are therefore critical to Dexia's defense of this litigation.

## II. PLAINTIFFS HAVE WAIVED WORK PRODUCT PROTECTION BY PUTTING THEIR INVESTIGATION AT ISSUE IN THIS LAWSUIT.

### A. The Documents in Question Are Non-Opinion Work Product, Which the Court Has Already Found to Be Waived.

The two Issue Lists produced to Dexia cannot be considered "opinion" work product. As defined by Rule 26(b)(3), opinion work product consists of "mental impressions, conclusions, opinions or legal theories of an attorney." FED. R. CIV. P. 26(b)(3). This is distinct from "non-opinion" or "fact" work product, which consists of factual information compiled or summarized by an attorney. The documents at issue here plainly fall into the category of non-opinion work product. The documents merely list factual issues potentially relevant to the lawsuits filed by Plaintiffs. (*See* Leone-Quick Decl. Exs. A & B.) These issues do not reflect opinions or mental impressions of lawyers; they merely reflect the factual allegations in Plaintiffs' publicly-filed complaints.

Plaintiffs argue that the documents contain opinion work product because they contain "handwritten attorney notes and comments on particular items." (Pls.' Br. at 5.) Although there is some handwriting on the documents produced to Dexia, the notations are so terse that they do not reflect any significant "mental impressions" concerning the case. (*See* Leone-Quick Decl. Exs. A & B.) Even if Plaintiffs could plausibly argue that these handwritten notations reflect opinion work product, that argument would not suggest that the entire document should be

---

[3] In fact, these documents explain why none of the documents produced pursuant to this Court's previous Orders reflect any investigation of Artesia or Dexia, and why Plaintiffs have resisted producing documents concerning their alleged investigation dated after August 19, 2001. The production of such documents would no doubt confirm that, despite the existence of storm warnings in late 2000 and early 2001, Plaintiffs did not begin any investigation of Artesia or Dexia until after the announcement of the criminal investigation in Belgium in June 2003.

6

protected from disclosure. At most, it would mean that the handwritten notations should be redacted, and the rest of the document retained by Dexia.

The Court has already ruled, in its December 22, 2005, Order, that Plaintiffs must produce non-opinion work product concerning their alleged investigation of Artesia or Dexia. (*See* Butler Decl. Ex. C.) These documents are relevant to the alleged investigation, and they plainly fall into the category of non-opinion work product. Accordingly, Dexia should be allowed to retain the Issue Lists and to use them for purposes of its defense.[4]

### B.     Plaintiffs Have Also Waived Opinion Work Product Protection.

Even if the Issue Lists could be considered opinion work product, Plaintiffs have waived that protection by placing the diligence of their alleged investigation at issue in this lawsuit. Dexia has already argued—in connection with a motion to compel filed on March 8, 2005, and currently pending before the Court—that Plaintiffs have waived opinion work product with respect to documents concerning Plaintiffs' alleged investigation of Artesia or Dexia. There is no need to repeat the arguments for waiver of opinion work product here. Suffice it to say that even opinion work product can be waived, and such waiver has taken place here. Plaintiffs have placed the mental impressions of their lawyers at issue in this case, and they must live with the consequences.

### III.    PLAINTIFFS HAVE ALSO WAIVED WORK PRODUCT PROTECTION THROUGH THE INADVERTENT PRODUCTION.

There is no question that inadvertent disclosure of a document may result in waiver of the attorney client privilege or work product protection. *See Texaco P. R., Inc. v. Dep't of Consumer*

---

[4] Plaintiffs also argue that Dexia should return the documents because they were prepared after the August 19, 2001, date cutoff in the Court's December 22, 2005, Order. (*See* Pls.' Br. at 2, 9.) This does not follow. Even if Plaintiffs were not *required* by court order to produce these Issue Lists, the fact remains that they *have* produced them. The only question now is whether these documents have any protected status that obligates Dexia to return them.

*Affairs*, 60 F.3d 867, 883 (1st Cir. 1995) ("It is apodictic that inadvertent disclosure may work a waiver of the attorney-client privilege."). Courts have disagreed, however, over the proper approach for determining whether inadvertent production results in the waiver of privilege protection. Some courts have applied a "strict accountability" approach, holding that any production, including inadvertent production, waives any privilege protection as to the document produced. Other courts have applied a "middle" test that balances several factors for purposes of determining whether there has been a waiver. Under either test, Plaintiffs have waived any work product protection over the Issue Lists produced to Dexia.

        **A.**      <u>**The "Strict Accountability" Approach**</u>

A number of courts have found that inadvertent disclosure of a privileged document always results in waiver of the privilege as to the document disclosed. *See Ares-Serono, Inc. v. Organon Int'l B.V.*, 160 F.R.D.1, 4 (D. Mass. 1994); *F.D.I.C. v. Singh*, 140 F.R.D. 252, 253 (D. Me. 1992); *Int'l Digital Sys. Corp. v. Digital Equip. Corp.*, 120 F.R.D. 445, 449-450 (D. Mass. 1988). Application of this approach obviously would result in waiver of any protection that the Issue Lists may have had. Regardless of any precautions taken by Plaintiffs to prevent inadvertent disclosure, the fact is that Dexia's counsel have now reviewed the documents. The confidentiality of the documents has been destroyed and cannot be restored by returning the documents to Plaintiffs. Under the strict accountability approach, Plaintiffs have waived any claim that these documents are still protected.

        **B.**      <u>**The "Middle" Test**</u>

Even under the "middle" test for inadvertent waiver, which Plaintiffs argue should apply, Plaintiffs have waived work product protection through their inadvertent production of these documents. Under the "middle" test, five factors are relevant: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the amount of time it took the producing

party to recognize its error; (3) the scope of the production; (4) the extent of the inadvertent disclosure; and (5) the overriding interests of fairness and justice. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 291 (D. Mass. 2000). These factors weigh heavily in favor of waiver in this case.

Regarding the first factor, Plaintiffs claim they took reasonable precautions to prevent disclosure of these documents. The circumstances of their production to Dexia, however, speak for themselves. This was not a production involving the substantive review of documents. Instead, Plaintiffs were simply producing every document that bore Bates numbers (*e.g.*, "BRBI" or "YPR") from the prior productions of other parties in the *L&H Securities Litigation*. Plaintiffs could have taken the precaution of storing a "pristine" set of such productions, and used that set for the production to Dexia. They chose instead to use a working set of documents, which they evidently knew was interspersed with copies of the Issue List. (*See* Josefson Decl. ¶ 6.) Even then, all that Plaintiffs needed to do was to flip through the documents, checking the lower right hand corner to confirm that each page had the correct Bates number, and removing any pages that lacked such a number. Plaintiffs claim that they performed such a review but given the result, it is difficult to believe that they did so with any diligence.

Moreover, Plaintiffs did not take the basic precaution that any prudent lawyer would take when creating work product, namely, labeling it prominently with the words "ATTORNEY WORK PRODUCT." There is no legend on either of the Issue Lists produced to Dexia indicating that the documents were considered privileged, or even confidential, by Plaintiffs.[5]

---

[5] Plaintiffs claim that they initially printed the Issue Lists on "brightly colored paper," but later decided to copy them onto plain paper. (*See* Josefson Decl. ¶¶ 6-7.) It should have been obvious to Plaintiffs that this would not be an effective precaution against inadvertent production.

This fact alone demonstrates that Plaintiffs did not take reasonable precautions to protect their Issue Lists from inadvertent disclosure, and that the first factor weighs in favor of waiver.

Regarding the second factor, Plaintiffs did not recognize their inadvertent production; it was pointed out to them by Dexia more than six months after the production. Courts have held that the failure of a producing party to detect an inadvertent production within a short period of time after production weighs in favor of waiver. *See Amgen*, 190 F.R.D. at 292 (finding waiver in part because "it took Hoechst five days to recognize its error and then only after counsel for Amgen drew Hoechst's attention to the privileged documents"); *Fleet Nat'l Bank v. Tonneson & Co.*, 150 F.R.D. 10, 16 n.11 (D. Mass. 1993) (finding no waiver in part because "plaintiffs' counsel realized its mistake within a few days of its occurrence").

Plaintiffs attempt to confuse this factor by claiming that they requested return of the first Issue List "within hours" of learning of the inadvertent production. (*See* Pls.' Br. at 9.) While that may be the case, the amount of time it takes to request return of the document is not a factor under the "middle" test. The relevant consideration is the amount of time it took Plaintiffs to *discover* the error (*see Amgen*, 190 F.R.D. at 291), which in this case never even occurred because it was Dexia that first discovered the Issue List after a period of six months. The second factor thus plainly weighs in favor of waiver.

As for the third and fourth factors, Plaintiffs claim that inadvertently producing less than twenty documents out of 1.8 million pages was a "deminimus [sic] oversight." (Pls.' Br. at 9.) This ratio might seem to bend these factors in Plaintiffs' direction, except that the overwhelming majority of the 1.8 million pages consists of documents produced by other parties in the prior *L&H Securities Litigation*. With respect to these documents, there was no need for an intensive, document-by-document privilege review. All that was needed was a mechanical glance at the

10

lower-right hand corner of each page to verify the presence of a Bates number. For a review of that kind, even an error rate of 1 in 100,000 pages is surprisingly high. For this reason, the third and fourth factors do not weigh significantly against waiver in this case.

The final factor—the overriding interests of fairness and justice—also weighs in favor of waiver. Plaintiffs claim in this litigation that they performed a diligent investigation of potential claims against Dexia, and that their investigation included review of documents produced by other parties in the *L&H Securities Litigation*. The inadvertently produced Issue Lists plainly belie those claims, and therefore are highly relevant to Dexia's statute of limitations defense. If Dexia is forced to return them, then Plaintiffs will no doubt continue to argue that their investigation of Dexia included the review of documents, even though we now know that the Issue Lists directly contradict that assertion. That would be a gross injustice to Dexia.

**Conclusion**

For all of the foregoing reasons, Plaintiffs' Motion to Compel the Return of Inadvertently Produced Documents should be denied in its entirety.

Dated: March 22, 2006

                                        Respectfully submitted,

                                        MINTZ LEVIN COHN FERRIS
                                        GLOVSKY & POPEO

                                        By: /s/ Breton Leone-Quick
                                              Peter M. Saparoff (BBO#441740)
                                              Breton Leone-Quick (BBO#655571)

                                        One Financial Center
                                        Boston, MA 02111
                                        Tel: (617) 542-6000
                                        Fax: (617) 542-2241

                                        James B. Weidner
                                        Jeff E. Butler
                                        CLIFFORD CHANCE US LLP
                                        31 West 52nd Street
                                        New York, NY 10019-6131
                                        Tel: (212) 878-8000
                                        Fax: (212) 878-8375

                                        *Counsel for Dexia Bank Belgium*

**Certificate of Service**

I, Breton Leone-Quick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 22, 2006.

/s/ Breton Leone-Quick                                               Dated: March 22, 2006