EXHIBIT K

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>  Plaintiffs,<br><br>   v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>  Defendants. | No.: 03-CV-11566 (PBS) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DOCUMENTS DEFENDANT CLAIMS ARE SUBJECT TO PSLRA DISCOVERY STAY AND TO PREVENT DEFENDANT FROM UNILATERALLY DELAYING TRIAL DATE**

Plaintiffs Hans Quaak, Atilio Po and Karl Leibinger ("Plaintiffs") respectfully submit this memorandum of law in support of their motion: (a) to compel defendant Dexia Bank Belgium ("Dexia") to produce undeniably relevant documents that Dexia contends are subject to the discretionary stay of discovery provided for by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (b) to prevent Dexia from unilaterally delaying the trial date in this action for an indefinite period, and thereby violating the Amended Scheduling Order issued by the Court on December 27, 2005.[1] Rather than serving duplicative discovery upon Dexia and filing duplicative motions with the Court, the plaintiffs in the coordinated "transactional" cases join in this motion.

## PRELIMINARY STATEMENT AND RELEVANT FACTS

This motion concerns Dexia's efforts to selectively impose a stay of discovery regarding matters that are directly relevant to claims that the Court has already sustained. As support for imposing that selective stay of discovery – which eliminates the parties' ability to comply with the Amended Scheduling Order – Dexia invokes the statutory stay of discovery provided for by the PSLRA in cases where a securities fraud defendant has filed a motion to dismiss. *See* 15 U.S.C. § 78u-4(b)(3)(B). The Court has previously ruled, however, that it makes no sense to impose a stay of discovery with respect to claims that have been found sufficient to satisfy the PSLRA's pleading standards. *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 109 (D. Mass. 2002). In light of that ruling, Dexia's latest effort to stall the discovery in this litigation should be summarily rejected.

The instant dispute arises from the Court's recent decision granting Plaintiffs permission to file a Third Amended Complaint ("TAC"), but to permit Dexia to file a motion to dismiss the claims asserted in that pleading. Among other theories of liability, Plaintiffs allege in the TAC that Dexia's predecessors, Artesia Banking Corporation, S.A. ("Artesia Banking") and Artesia Securities, S.A. ("Artesia Securities"), violated § 10(b) of the Securities Exchange Act of 1934

---

[1] The parties met and conferred regarding the issues addressed by this motion on May 10, 2006, but were unable to resolve their differences. *See* Declaration of Patrick L. Rocco ("Rocco Decl.") at ¶ 12.

(the "Exchange Act") by issuing materially false and misleading analyst reports concerning Lernout & Hauspie Speech Products, N.V. ("L&H"). *See* TAC at ¶¶ 149-85.[2]

Discovery is nearing completion. The fact discovery cut-off is June 16, 2006. Expert reports are due on July 11, 2006. *See* Rocco Decl. at ¶ 2. Nevertheless, Dexia has now refused to produce documents concerning the fraudulent analyst reports concerning L&H created by the Artesia Entities (the "L&H Reports"). *See id.* at ¶ 3.[3] Dexia has adopted that stall tactic although, in response to discovery previously propounded by Plaintiffs, Dexia properly produced: (a) the analyst reports that contain the misrepresentations identified in the TAC; and (b) the documents concerning Artesia Banking's participation in the preparation of those reports that underlie Plaintiffs' allegations that the misleading statements in the L&H Reports are attributable to Artesia Banking. *See id.* at ¶ 4.[4]

Dexia's production of those documents was no mere oversight. The documents are highly relevant to the "scheme liability" theory of liability under § 10(b) that Plaintiffs continue to assert in the TAC and which Dexia does not challenge by means of its latest motion to dismiss. The Court previously found Plaintiffs' scheme liability allegations sufficient to establish a claim for violation of § 10(b) against Dexia. *See Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330 (D. Mass. 2005). As the *Quaak* opinion notes, Plaintiffs have alleged that Dexia's predecessor companies engaged in a vast fraudulent scheme designed to advance Artesia Banking's interests by fraudulently inflating the financial results of L&H, one of Artesia Banking's largest clients. *See id.* at 332-34; *see also, e.g.*, TAC at ¶¶ 7-25, 54-148, 257. Issuing

---

[2] Plaintiffs collectively refer to Artesia Banking and Artesia Securities herein as the "Artesia Entities."

[3] Plaintiffs' specific follow-up document requests concerning the L&H Reports were set forth in Lead Plaintiffs' Second Request for the Production of Documents from Defendant Dexia Bank Belgium, which is attached to the Rocco Declaration as Exhibit A. Dexia's Responses and Objections to those document requests are attached to the Rocco Declaration as Exhibit B. The relevant requests to which Dexia has refused to respond are Nos. 1 through 25 and 29. *See* Rocco Decl., Ex. B.

[4] Plaintiffs have elected to file their motion only with respect to their detailed "follow-up" document requests concerning the L&H Reports (Lead Plaintiffs' Second Request for the Production of Documents from Defendant Dexia Bank Belgium). As Dexia's conduct demonstrates, however, the requested documents were also responsive to Lead Plaintiffs' First Request for the Production of Documents from Defendant Dexia Bank Belgium.

the fraudulent L&H Reports was unquestionably consistent with and beneficial to the scheme Plaintiffs allege.

Thus, the requested documents are directly relevant to Artesia Banking's scienter and will be critical evidence at the trial in this action, irrespective of the outcome of Dexia's motion to dismiss certain allegations set forth in the TAC. As a result, there is no reason to delay discovery concerning those documents. For example, there may well be documents that discuss the nature of the fraudulent transactions between L&H and Artesia Banking and thereby advance Plaintiffs' efforts to establish that Artesia Banking was well aware of the fraudulent purpose of those transactions. *See, e.g.,* TAC at ¶¶ 243-59. In addition, the requested documents may assist Plaintiffs in demonstrating that Artesia Banking was motivated to inflate L&H's financial results in order to strengthen its relationship with L&H, which was one of the Artesia Entities' largest customers. *See* TAC at ¶¶ 245-49.

The requested documents will also assist Plaintiffs in establishing Artesia Banking's willingness to violate corporate and banking conventions for the benefit of a favored client, L&H. Artesia Banking did so by, among other things: (a) directly participating in the preparation of analyst reports nominally issued by its subsidiary; (b) disregarding the "Chinese Wall" that typically separates commercial banking operations from securities analyst functions; and (c) utilizing its subsidiary to surreptitiously advance Artesia Banking's financial interests. *See* TAC at ¶¶ 149-85. Courts have continually held that departures from firm and industry conventions are strong indicators of fraudulent activity.

The documents concerning the creation and dissemination of the L&H Reports are also directly relevant to Dexia's purported statute of limitations defense to Plaintiffs' § 10(b) claim. Dexia has argued that Plaintiffs' claims are time-barred because Artesia Banking's last fraudulent act occurred in June 1999. *See* Rocco Decl. at ¶ 5. It is now clear that Artesia Banking's fraudulent scheme included issuing the analyst reports until at least as late as January 10, 2000. TAC at ¶ 172. Moreover, it is virtually certain that Artesia Banking continued to issue fraudulent reports long after that date. Accordingly, the direct relevance of the requested

documents to Dexia's supposed statute of limitations defense provides an independent reason why Dexia should be ordered to produce those documents immediately.

In light of these facts, Dexia's refusal to produce the documents is merely a thinly disguised effort to stall this litigation. The requested documents are relevant to claims and defenses that the Court previously sustained and which the parties will have to litigate irrespective of the manner in which the Court resolves Dexia's latest motion to dismiss certain of Plaintiffs' allegations. Dexia knows that is true. Otherwise, it would not previously have produced the documents concerning the creation and publication of the L&H Reports.

Furthermore, Dexia's efforts to invoke – on a selective basis – the discretionary stay of discovery provided by the PSLRA during the pendency of a motion to dismiss is meritless. *See* 15 U.S.C. § 78u-4(b)(3)(B). That statute provides, "In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *Id.* Thus, plaintiffs who can demonstrate that they will be unduly prejudiced by a stay are entitled to conduct discovery relevant to their claims.

Here, Plaintiffs will be substantially and unfairly prejudiced in the event Dexia is permitted to continue to stall the inevitable production of the documents related to the creation and publication of the L&H Reports. Plaintiffs will travel to Belgium to depose numerous witnesses before the fact discovery cut-off date of June 16, 2006. *See* Rocco Decl. at ¶ 8. Unless Dexia produces the requested documents, Plaintiffs' counsel will be required to recall many of those witnesses after the cut-off date to answer questions regarding the responsive documents. *Id.* Doing so will impose substantial expense upon the parties because Dexia has refused to produce any of its witnesses in the United States. *Id.* In addition, Plaintiffs will be required to produce multiple rounds of expert reports, potentially brief multiple rounds of summary judgment motions and generally engage in piecemeal litigation that could be

completed in a much more efficient manner if Dexia simply produced, in a timely manner, the documents it will eventually have to provide to Plaintiffs.

This case is now nearly three years old. With the exception of completing the discovery Dexia has improperly denied them the opportunity to conduct, Plaintiffs will be ready to proceed to trial on the schedule previously established by the Court.[5] Accordingly, the Court should reject Dexia's efforts to needlessly delay that trial and order Dexia to immediately produce the unquestionably relevant documents concerning Artesia Banking's role in the creation and publication of the fraudulent L&H Reports.

## ARGUMENT

### THE REQUESTED DOCUMENTS CONCERNING THE L&H REPORTS ARE RELEVANT AND SHOULD BE PRODUCED SO THAT THE TRIAL IN THIS ACTION MAY PROCEED AS SCHEDULED

**A.    The Requested Documents Are Relevant And Discoverable**

Pursuant to the broad standards adopted by Fed. R. Civ. P. 26, Plaintiffs are entitled to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Of course, relevant material includes any evidence that could be admissible at trial as well as any discovery "reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *accord, e.g.*, *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir. 1992) ("[T]he scope of discovery under Fed.R.Civ.P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). Courts in this Circuit have repeatedly followed the Supreme Court's lead in *Oppenheimer Fund* by emphasizing that Rule 26 provides for parties to obtain all discovery that displays any possibility of being relevant to a party's

---

[5] To date, Dexia has refused (a) to search its back up tapes for highly relevant e-mails reflecting communications between Artesia Banking and L&H about the loans at issue in this case even though those tapes almost certainly contain relevant e-mails and other documents and (b) to produce for deposition eight managing agents of Dexia who possess critical knowledge of the facts Plaintiffs allege. These efforts to stonewall legitimate discovery are the subject of three other motions to compel that are *sub judice.*

claims. *E.g.*, *Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir. 1998) ("the plain language of this Rule 26(b)(1) contemplates wide-ranging discovery to the fullest possible extent").[6]

Under those liberal standards, there is no question that the documents Plaintiffs seek regarding Artesia Banking's participation in the preparation and dissemination of the L&H Reports are discoverable. In part, the requested documents are relevant because Plaintiffs intend to introduce them into evidence to demonstrate that Artesia Banking acted with scienter, a necessary element of Plaintiffs' claim that Artesia Banking employed a scheme to defraud L&H shareholders. *See, e.g.*, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n.12 (1976); *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 199 (1st Cir. 2004), *reh'g denied*, 424 F.3d 24 (1st Cir. 2005). For example, it may well be that the responsive documents demonstrate that the Artesia Entities had candid communications regarding the inflated nature of L&H's financial statements. Such documents would constitute classic evidence of scienter and are therefore discoverable.[7]

Responsive documents may also demonstrate that the Artesia Entities communicated regarding Artesia Banking's desire to create a positive market outlook regarding L&H in order to strengthen the relationship between the Artesia Entities and L&H and to protect Artesia Banking's substantial equity and debt investments in L&H. Those documents would constitute

---

[6] *Accord, e.g., Atchison Casting Corp. v. Marsh, Inc.,* 216 F.R.D. 225, 227 (D. Mass. 2003) ("The broad scope of the discovery rules reflects a policy that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'") (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)); *Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001) ("As counsel is well aware, the scope of discovery under the Federal Rules is very broad. *See* Fed.R.Civ.P. 26(b)(1). Under the liberal standard set forth in that rule, 'information is discoverable if there is any possibility it might be relevant to the subject matter of the action.'") (quoting *EEOC v. Electro-Term, Inc.,* 167 F.R.D. 344, 346 (D. Mass. 1996)); *United States v. Massachusetts Indus. Finance Agency*, 162 F.R.D. 410, 414 (D. Mass. 1995) ("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action. . . . '[R]elevant information includes any matter that is or may become an issue in the litigation.'") (quoting *Multi-Core, Inc. v. Southern Water Treatment Co.,* 139 F.R.D. 262, 264 n.2 (D. Mass. 1991)).

[7] *E.g., Stone & Webster*, 414 F.3d at 210-11 (allegations that defendants were receiving an accounts payable list showing "accounts overdue by 600-700 days," that executives had to personally approve payments to subcontractors, and that one defendant "received calls from vendors and subcontractors demanding payment and threatening to walk off their projects" were "clearly sufficient to support a strong inference of scienter" with respect to liquidity problems company was suffering); *Aldridge v. A.T. Corp.*, 284 F.3d 72, 83 (1st Cir. 2002) ("the fact that the defendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter"). Alternatively, even if these documents do not directly reflect Artesia Banking's intentional participation in the fraudulent scheme, the documents concerning the Artesia Entities' analysis of L&H's financial statements are highly relevant to Artesia Banking's scienter because they may demonstrate that Artesia Banking acted in a grossly reckless manner in perpetrating that unlawful scheme. *Stone & Webster,* 414 F.3d at 194 (recklessness is sufficient to establish scienter).

persuasive evidence of the strong motives Artesia Banking possessed to engage in the fraudulent conduct Plaintiffs have alleged. Again, therefore, the documents Plaintiffs have requested are unquestionably relevant and discoverable. *E.g.*, *In re Cabletron Sys., Inc.,* 311 F.3d 11, 41 (1st Cir. 2002) (a "plaintiff may combine various facts and circumstances indicating fraudulent intent – including those demonstrating motive and opportunity – to satisfy the scienter requirement"); *Kafenbaum v. GTECH Holdings Corp.*, 217 F. Supp. 2d 238, 247-48 (D.R.I. 2002) (plaintiffs established defendant company's scienter by alleging that it was motivated to conceal information concerning a software problem by its desire to maintain a $40 million contract and to avoid refunding a substantial portion of the money received in connection with the sale of an investment in another company).

Additionally, the documents concerning the role Artesia Banking played in the creation and publication of the L&H Reports are relevant to the statute of limitations defense that Dexia has pursue in this action. Both in this Court and on appeal, Dexia has argued that Plaintiffs' claims are time barred because, *inter alia*, Artesia Banking's fraudulent conduct terminated no later than June 1999. *See* Rocco Decl. at ¶ 5. The documents concerning the L&H Reports will show that Artesia Banking played a principal role in the publication of the materially misleading reports long after the summer of 1999. *See* TAC at ¶¶ 163-72. Accordingly, the documents concerning the L&H Reports should be produced for the additional reason that they will negate Dexia's purported statute of limitations defense to Plaintiffs' § 10 claims because each act Artesia Banking took in furtherance of its fraudulent scheme commenced a new repose period for Plaintiffs' claims. *See, e.g.*, *Quaak*, 357 F. Supp. 2d at 338; *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 2148919, at *11 (S.D.N.Y. Sep. 6, 2005) (where misrepresentations were repeated in later SEC filings, new repose period began upon each republication).

Any argument by Dexia that the particular types of documents highlighted above do not exist in its files cannot justify withholding responsive documents from Plaintiffs. Plaintiffs have merely provided examples of the numerous types of relevant and responsive documents that

-7-

Dexia may possess. Of course, Plaintiffs are not required to take Dexia at its word if it contends that particular documents do not support Plaintiffs' claims. Furthermore, Plaintiffs need not anticipate, without obtaining access to the responsive documents, every manner in which those documents may be relevant to their claims. The salient point is that the documents are potentially relevant to claims the Court has already sustained. They are therefore discoverable. Accordingly, Dexia should be compelled to produce those documents immediately so that Dexia's dilatory conduct does not unnecessarily delay the trial in this action.

**B.     Dexia's Refusal To Produce The Responsive And Relevant Documents Plaintiffs Have Requested Is Motivated By Its Desire To Delay The Trial In This Action And Is Not Justified By The PSLRA's Discretionary Discovery Stay**

As Plaintiffs establish above, the requested documents concerning the L&H Reports are both responsive to Plaintiffs' requests and relevant to the claims the Court has already sustained. Thus, withholding those documents from Plaintiffs at this juncture produces no legitimate benefit for Dexia because the documents will inevitably be produced and introduced into evidence at trial.

As a result, Dexia's purported reliance upon the discretionary stay of discovery provided for by the PSLRA in cases where a defendant has filed a motion to dismiss § 10(b) claims is purely a pretext. The Court has previously recognized that the PSLRA stay provision invests trial courts with substantial discretion to permit discovery despite the pendency of motions to dismiss when delaying discovery threatens to impose "undue prejudice" upon a plaintiff. *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107-09 (D. Mass. 2002); *see* 15 U.S.C. § 78u-4(b)(3)(B) (discovery may proceed, despite the pendency of a motion to dismiss, if "the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party").[8] As the Court recognized in *Lernout*,

---

[8] The narrow categories of documents Plaintiffs request, which essentially amount to those concerning the creation and publication of the L&H Reports and Artesia Banking's role in that process, easily satisfy the requirement that discovery be adequately particularized. *See, e.g., In re Royal Ahold N.V. Sec. & Erisa Litig.,* 220 F.R.D. 246, 250 (D. Md. 2004) (request for production of one million pages of documents previously produced to government was adequately particularized); *In re WorldCom, Inc. Sec. Litig.,* 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002) (lifting stay to require the disclosure of a massive document production made to governmental agencies because the request "involves a clearly defined universe of documents, specifically certain documents which

(continued...)

-8-

"Undue prejudice requires a showing of improper or unfair detriment that need not reach the level of irreparable harm." *Lernout*, 214 F. Supp. 2d at 107; *see also, e.g., In re Williams Sec. Litig.*, 2003 WL 22013464, at *2 (N.D. Okla. May 22, 2003) (undue prejudice justified lifting the discovery stay with respect to documents previously produced to governmental agencies where "enforcement of the stay as to the particular information sought would be needless because it would not serve the interest of any party and would vindicate no policy interest").

Applying that standard, this Court held in *Lernout* that the plaintiffs were entitled to obtain unlimited document and interrogatory discovery from any party against whom claims had been sustained, despite the pendency of numerous additional motions to dismiss. *Lernout*, 214 F. Supp. 2d at 108-09 (concluding that the plaintiffs would be unduly prejudiced if discovery were stayed because there had been substantial delay between the relevant events and the time the discovery would be conducted and because the international nature of the litigation presented a distinct possibility of additional delay). Moreover, the Court ruled that the plaintiffs could obtain document discovery from third parties related to any claim sustained against any party. *Id.* at 109. Implicit in the Court's holding was the common sense notion that there is no reason to delay discovery that will inevitably occur. *Accord, e.g.*, *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 352 (S.D.N.Y. Mar. 23, 2004) ("There is no reason under the [PSLRA's] language or its purpose to countenance further delay by preventing discovery from proceeding as to Andersen, against whom this case is now clearly going forward.").

As was true in *Lernout*, Plaintiffs will suffer "undue prejudice" in the event Dexia is not required to produce the responsive documents concerning the creation and distribution of the L&H Reports. For example, Plaintiffs will be forced to conduct substantial discovery prior to the cut-off date of June 16, 2006 without the benefit of documents that are directly relevant to theories of liability that will unquestionably survive Dexia's pending motion to dismiss. Then, at the inevitable point when Dexia produces the responsive documents, Plaintiffs will be required

---

[8](...continued)
WorldCom has already produced in connection with other identified proceedings"); *Lernout*, 214 F. Supp. 2d at 109 (permitting unfettered document discovery from third parties concerning claims against defendants whose motions to dismiss had been denied).

to recall Dexia's witnesses, and perhaps other witnesses as well. Dexia's refusal to produce the responsive documents will also prejudice Plaintiffs because the documents concerning the L&H Reports are relevant to the expert discovery, summary judgment briefing and other events in this litigation that have been scheduled by the Court by means of the Amended Scheduling Order. *See* Rocco Decl. at ¶ 10. In addition, Dexia's stall tactics will undoubtedly further delay the trial date in this action, which even now can only occur years after Plaintiffs and the members of the Class were defrauded by the Artesia Entities.

The international nature of this litigation aggravates the expense, delay and prejudice associated with the inefficient procedure Dexia advocates. Dexia has refused to produce any of its witnesses in the United States, and has previously cited scheduling conflicts as a basis for delaying or cancelling depositions. *See id.* at ¶¶ 6-7. Thus, Plaintiffs will be required to criss-cross the Atlantic, arrange and pay for court reporters, videographers and hotel and meeting accommodations, and spend substantial attorney time to conduct discovery that could be completed more efficiently at a single set of depositions.

In light of these circumstances, there is no question that delaying the inevitable production of the documents concerning the L&H Reports will unduly prejudice Plaintiffs and that the Court should therefore exercise its discretion to require the production of those documents now. Notably, doing so is entirely consistent with the Court's previous immediate denial of Dexia's motion to impose the discretionary stay of discovery provided for by 28 U.S.C. § 1292(b) in cases where a Court of Appeals has certified an interlocutory appeal. *See* Rocco Decl. at ¶ 11.

The conclusion that Dexia should produce the requested documents is also supported by numerous additional precedents concerning the PSLRA discovery stay. *E.g.*, *Seippel v. Sidley, Austin, Brown & Wood LLP*, 2005 WL 388561, at *4 (S.D.N.Y. Feb. 17, 2005) (requiring the defendants to produce documents concerning state law claims that had been sustained by the court although the defendants moved to dismiss a subsequent amended complaint that included, for the first time, securities fraud claims); *Tobias Holdings, Inc. v. Bank United Corp.,* 177 F.

Supp. 2d 162, 168 (S.D.N.Y. 2001) (permitting discovery to proceed concerning state law claims that would overlap discovery required to prove federal securities law claims that the defendants had moved to dismiss because "prohibit[ing] discovery on the state claims would encourage a duplication of effort and serve as a disincentive for efficiency"). The circumstances presented in those cases are closely analogous to the facts at issue here. As was true in *Seippel* and *Tobias*, had Plaintiffs alleged *less* facts than they set forth in the TAC, Dexia would possess no conceivable argument for staying the discovery Plaintiffs seek. Common sense therefore dictates that Plaintiffs should be permitted to conduct discovery concerning the claims that have already survived judicial scrutiny. *Seippel*, 2005 WL 388561, at *4 ("The disgorgement claim will remain, and discovery on it will take place in due course regardless of the outcome of the pending motions. There is therefore no prejudice to defendants in permitting discovery to proceed on the disgorgement claims sooner rather than later.").

Refusing to stay this relevant and inevitable discovery is also supported by numerous decisions in which courts have similarly employed their discretion to permit discovery in § 10(b) cases despite the pendency of motions to dismiss.[9] In sharp contrast to this action, none of those precedents involved circumstances in which complaints had already survived motions to dismiss and the production of the requested discovery was inevitable. Furthermore, as was true in those cases, Dexia will incur no additional discovery expenses in this action if the requested documents are produced at this time because production of those documents is certain to occur eventually. Indeed, for the reasons stated above, producing those documents immediately will actually reduce the discovery expenses that Dexia will incur in this action.

---

[9] *E.g., In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 184 (S.D.N.Y. 2004) (lifting discovery stay to permit plaintiffs to obtain documents previously produced to government agencies because the plaintiffs required access to those documents to determine their "litigation strategy, principally whether or not to seek an early settlement to benefit the class without further expense"); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 319 F. Supp. 2d 634, 635 (D. Md. 2004) (lifting discovery stay with respect to documents produced by *non-parties* to government agencies where the plaintiffs "have shown that a delay in the production of the particularized discovery sought here would cause undue prejudice to their ability to litigate and, most significantly, resolve as expeditiously as possible their claims"); *WorldCom,* 234 F. Supp. 2d at 305 (lifting stay to require non-party to produce documents previously provided to governmental entities because, if the plaintiff were denied access to those documents, it "would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape").

-11-

As an alternative to the obvious solution of producing today the documents Dexia will inevitably have to produce, Dexia has suggested that the parties agree to delay the schedule in this action by three months. *See* Rocco Decl. at ¶ 12. That proposed delay is highly prejudicial to Plaintiffs, however. There are a limited number of depositions that Plaintiffs need to conduct by June 16, 2006. Despite Dexia's unilateral cancellation of depositions in the past because of its supposed scheduling conflicts, Plaintiffs' counsel have cleared their schedules to complete the deposition discovery in this action in a timely manner. *See* Rocco Decl. at ¶ 8. Plaintiffs, the members of the Class and the plaintiffs in the related transactional cases have lost billions of dollars. They have waited years for their day in court. As a result, there is no reason to delay the resolution of this action because of Dexia's obvious preference for a leisurely stroll towards trial.

Delay for the sake of delay is not a legitimate discovery tactic. *See* Fed. R. Civ. P. 1 (the Federal Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"). The Court should therefore dispose of Dexia's latest stall tactic in precisely the same manner the Court resolved Dexia's last request for a stay. That is, Dexia should be ordered to produce the requested documents immediately so that Dexia does not unilaterally and needlessly impose a lengthy postponement of the trial date in this action.

### CONCLUSION

For all of the reasons set forth above, Plaintiffs' motion to compel should be granted in all respects so that the trial in this action may proceed in an expeditious manner.

Dated: May 11, 2006

Respectfully submitted,

BERMAN DEVALERIO PEASE
 TABACCO BURT & PUCILLO

  /s/ Patrick T. Egan
Glen DeValerio, BBO # 122010
Jeffrey C. Block, BBO # 600747
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
Allison K. Jones, BBO # 654804
(ajones@bermanesq.com)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

SHALOV STONE & BONNER LLP
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

CAULEY BOWMAN CARNEY
   & WILLIAMS LLC
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500

**CO-LEAD COUNSEL TO LEAD CLASS PLAINTIFFS HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER**

-13-