## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated, <br>        Plaintiffs, <br>        v. <br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br>        Defendants. | No.:  03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company, <br>        Plaintiffs, <br>        v. <br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br>        Defendants. | No.:  04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust, <br>        Plaintiffs, <br>        v. <br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br>        Defendants. | No.:  04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC, <br>        Plaintiffs, <br>        v. <br> DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA), <br>        Defendants. | No.:  04-CV-10501 (PBS) |

**DECLARATION OF STEVEN T. VOIGT IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DOCUMENTS WITHHELD OR REDACTED BY DEXIA UNDER IMPROPER CLAIMS OF ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION**

I, Steven T. Voigt, hereby state as follows:

1.    I am a member of the Bars of Pennsylvania and New Jersey and an associate with

Reed Smith LLP.

2.      I am co-counsel for Plaintiffs Janet Baker and James Baker, JKBaker LLC, and JMBaker LLC (collectively, the "Bakers") in the above-captioned action.

3.      I have been admitted *pro hac vice* in this matter, and I work with co-counsel for the Bakers, Terence K. Ankner, Esquire of The Law Offices of Partridge, Ankner & Horstmann, LLP, 200 Berkeley Street, 16th Floor, Boston, MA 02116, an attorney who is a member of the Massachusetts Bar.

4.      I submit this affidavit in support of Plaintiffs' Motion for an Order Compelling Dexia to Produce Documents that it Withheld Under Improper Claims of Attorney-Client Privilege and Work Product Protection.  I have personal knowledge of the facts set forth herein.

**Plaintiffs' Requests for Production of Documents and Dexia's Privilege Logs**

5.      On May 19, 2005, Hans A. Quaak, Attilio Po and Karl Leibinger, on behalf of themselves and those similarly situated ("Class Plaintiffs") served Class Plaintiffs' First Request for Production of Documents from Dexia ("Plaintiffs' First Request for Documents") on Defendants Dexia, S.A. and Dexia Bank Belgium (formerly known as Artesia Banking Corp. SA) (collectively "Dexia").  A true and correct copy of Plaintiffs' First Request for Documents is attached hereto as **Exhibit "1."**

6.      Thereafter, Dexia served Responses and Objections to Plaintiffs' First Request for Documents on Class Plaintiffs.  A copy is annexed hereto as **Exhibit "2."**

7.      On March 31, 2005, Class Plaintiffs served Lead Plaintiffs' Second Request for the Production for Documents ("Plaintiffs' Second Request for Documents") on Dexia.  A copy of Plaintiffs' Second Request for Documents is annexed hereto as **Exhibit "3."**

8.      Thereafter, Dexia served Responses and Objections to Plaintiffs' Second Request for Documents on Class Plaintiffs.  A copy is annexed hereto as **Exhibit "4."**

9.    In the fall of 2005 and continuing through 2006, Dexia produced documents in response to Plaintiffs' First Request for Documents and Plaintiffs' Second Request for Documents.

10.    On January 23, 2006, Dexia produced two privilege logs. One was 328 pages in length and listed documents that Dexia withheld from production. A copy of this 328 page privilege log is attached hereto as **Exhibit "5."** Dexia's second privilege log was 99 pages in length and described documents that Dexia produced, but with redactions. A copy of this 99 page privilege log is attached hereto as **Exhibit "6."**

11.    Recently, on May 22 or May 23, 2006, Dexia produced a 136 page addendum to its 328 page privilege log. A copy of this 136 addendum is attached hereto as **Exhibit "7."**

### Plaintiffs Attempted to Resolve the Dispute over Deficiencies in Dexia's Privilege Logs through a Meet-and-Confer Conference

12.    Plaintiffs attempted to resolve the numerous deficiencies in Dexia's privilege logs through a meet-and-confer conference among counsel for Plaintiffs and Defendants.

13.    On Tuesday, May 9, 2006, Plaintiffs served a letter on Dexia that detailed deficiencies in Dexia's privilege logs. A true and correct copy of this letter is attached hereto as **Exhibit "8."** Plaintiffs attached to their May 9, 2006 letter a list of the names from Dexia's 328 page privilege log whom they did not recognize from Dexia's disclosures and interrogatory responses or otherwise ("The May 9, 2006 Unidentified Name Chart").

14.    During a meet-and-confer conference held on May 19, 2006, Dexia's counsel agreed that Dexia would identify the individuals in its privilege logs whom it had not identified in its interrogatory responses and initial disclosures. Dexia's counsel further agreed that Dexia would identify whether each individual on The May 9, 2006 Unidentified Name Chart is an attorney or is or was employed by Dexia and, with respect to those individuals who were never Dexia

employees, that Dexia would provide the name of each individual's employer, to the best of its knowledge.

15.     Dexia's counsel represented that Dexia would provide the information in Paragraph 14 above regarding the unidentified names by May 31, 2006, at latest.

16.     During the meet-and-confer, Plaintiffs' counsel also discussed Plaintiffs' objections to Dexia's privilege log designations and discussed several examples of problem entries in Dexia's privilege logs.

17.     Plaintiffs' counsel identified particular terms in Dexia's logs that it had failed to identify, such as "Bank Group."

18.     Dexia's counsel stated that Dexia would conduct a second review of the documents that Dexia withheld.

19.     Plaintiffs' counsel explained that – to be reasonable given that depositions are ongoing and many of the documents withheld clearly should have been produced – Dexia should have been willing to produce on a rolling basis any documents that it determined are in fact not privileged or do not fall within the scope of the work product protection.  Dexia's counsel stated that Dexia would consider this request.  Counsel for Dexia has not produced any documents on a rolling basis or otherwise, since the meet and confer.

20.     During the meet-and-confer, Dexia's counsel remarked that the deficiencies in Dexia's privilege logs are not his "top priority."

21.     In addition, during the meet-and-confer, for the first time, Dexia disclosed that it had failed to produce a significant number of additional pages of privilege log entries.  Several days later, on May 22 or 23, 2006, Dexia produced its 136 page addendum to its privilege log.

22.     Dexia's 136 page addendum to its privilege log suffers from the same types of deficiencies and inadequacies as the first 328 pages.

23.     On May 22, 2006, Plaintiffs served a letter on Dexia that confirmed certain representations from the May 19, 2006 meet-and-confer.  A true and correct copy of this letter is attached hereto as **Exhibit "9."**

24.     As of today, June 16, 2006, Plaintiffs have not received a single document from Dexia's purported second review of the documents in its privilege logs.

25.     As of today, Dexia has also failed to identify the unknown individuals in its logs as its counsel had stated he would do by May 31, 2006.

26.     Dexia did not respond to Plaintiffs' May 22, 2006 letter, cited in Paragraph 23 above, which confirmed certain representations from the meet-and-confer.

## Dexia Improperly Withheld Internal Communications Between Non-Attorney Employees

27.     Dexia's privilege logs are laden with internal communications exclusively between Dexia employees who are not attorneys.

28.     Among these non-lawyer employees are Francoise Saverys ("Saverys"), Claude Piret ("Piret"), Jacques Janssens ("Janssens"), Peter Rabaey ("Rabaey"), and Bart Ferrand ("Ferrand").  None of these individuals functioned as a lawyer at the bank.

29.     Saverys was a Director of Corporate Banking.  (Saverys Dep. at Vol. I p. 17, **Exhibit "10"**).  While Saverys was a lawyer, he did not function as an attorney at the Bank.  (*Id.* at 16 ("Q. You are not a lawyer for Dexia or its predecessors?  A. I am not a lawyer, no.")).

30.     Piret was a member of the Management Committee for Dexia and its predecessors from January 1996 through at least January 2004.  *See* Dexia Bank Belgium's Responses and Objections to Lead Plaintiffs' First Set of Interrogatories at p. 8 ("Dexia's Responses to First

Interrogatories")(attached as **Exhibit "11"**). He was not a lawyer. *Id*; (*see also* Piret Dep. at Vol. I p. 31-32, **Exhibit "12"**).

31.     Rabaey and Ferrand were not attorneys. *See* Dexia's Responses to First Interrogatories at p.6, 8. Beginning in January 1996, both Rabaey and Ferrand were executives for Paribas and thereafter for Artesia Banking Corporation. *Id.*

32.     Likewise, Janssens was not an attorney. *See id.* at p. 7. Beginning in January 1996, Janssens was an executive for Paribas, and beginning in September 2000, he became a director of corporate banking for Paribas' successor, Artesia Banking Corporation. *Id.*

33.     In its privilege logs, Dexia also claimed that the attorney-client privilege applied to Bernard Mommens' ("Mommens") communications that occurred after Mommens stopped acting as legal counsel to Dexia. At his deposition, Mommens testified that while he continued to work for Dexia in the year 2000, he ceased serving as Dexia's counsel on January 1, 2000 (*See* Mommens Dep. 300 ("Q. You would have, at least at this point, have been out of the legal department in January 2001, is that correct? A. Yes, since more than one year. I was out of the legal in 1 January 2000.") (**Exhibit "13"**).

### Exhibits Attached to the Memorandum in Support of Motion to Compel

34.     **Exhibits "A"** to **"I"** and **"L"** of Plaintiffs' Memorandum in Support of the Motion to Compel reflect documents that Dexia withheld or redacted under improper claims of attorney-client privilege or work-product protection. For all of the charts in these Exhibits, Plaintiffs copied Dexia's objectionable entries in full and added a final column stating the page on the privilege log where each entry is located. In some of the charts, Plaintiffs bold-faced certain words to highlight part of the reason for Plaintiffs' objections. These bold-faced words include references to third parties and terms that indicate a business purpose.

35.    Dexia's bates number prefix "DEXPRIV" refers to documents that it completely withheld.  The bates prefix "DBB" reflects documents that Dexia produced, but with portions redacted.  **Exhibits "D"** and **"H"** contain objections to Dexia's redactions (*i.e.*, DBB documents with redactions).  **Exhibits "A"** to **"C," "E"** to **"G," "I,"** and **"L"** contain Plaintiffs' objections to privilege designations on the documents that Dexia withheld from production (*i.e.*, DEXPRIV documents).

36.    Dexia improperly withheld numerous communications between Dexia or its predecessors on one hand and third party entities or individuals on the other hand.  **Exhibit "A"** to the Memorandum lists these documents.

37.    Dexia improperly withheld internal communications between non-attorney employees.  **Exhibit "B"** lists these documents.

38.    **Exhibit "C"** reflects the documents that Dexia withheld even though they reflect ordinary business functions, not privileged communications.  Similarly, **Exhibit "D"** reflects the documents that Dexia redacted that reflect ordinary business functions.

39.    **Exhibit "E"** reflects the entries on Dexia's privilege logs that describe documents as "statements," "declarations," or "affidavits" that appear to be statements of witnesses that Dexia should have produced.

40.    Dexia improperly asserted that the attorney-client privilege and work-product doctrine apply to transcripts of court depositions of unnamed parties, a letter to a bailiff, and an excerpt of a mortgage register.  Because these documents are public records or have been delivered to third-parties, they are not subject to the protection of any privilege.  **Exhibit "F"** reflects these documents.

41.    **Exhibit "G"** reflects the documents that Dexia has withheld on the basis of a purported attorney-client and/or work-product privilege for which it has failed to list an author. Similarly, **Exhibit "H"** reflects the documents that Dexia redacted where it failed to list an author.

42.    **Exhibit "I"** reflects the documents that Dexia has withheld on the basis of a purported attorney-client and/or work-product privilege for which it has failed to list a recipient.

43.    Dexia has also employed numerous ambiguous terms in its privilege logs that it refuses to define. The documents that are described utilizing these ambiguous terms are set forth in **Exhibit "J."**

44.    **Exhibit "K"** lists the persons on Dexia's privilege logs whom Plaintiffs have not been able to identify.

45.    Dexia withheld documents in their entirety while claiming that only portions contained privileged information. **Exhibit "L"** lists these documents.

46.    I hereby declare under penalties of perjury that the foregoing is true to the best of my knowledge, information and belief.

Dated this 16th day of June, 2006.

/s/ Steven T. Voigt
Steven T. Voigt, Esquire