# ReedSmith

**Steven T. Voigt**
Direct Phone: 215.241.7995
Email: svoigt@reedsmith.com

Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
215.851.8100
Fax 215.851.1420

May 9, 2006

**VIA ELECTRONIC MAIL**
Jeff Butler, Esq.
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019-6131

Re:  *Quaak v. Dexia*, S.A., No. 03-CV-11566-PBS
*Stonington Partners, Inc. v. Dexia*, S.A., No. 04-CV-10411-PBS
*Baker v. Dexia*, S.A., No. 04-CV-10501-PBS
*Filler v. Dexia*, S.A., No. 04-CV-10477-PBS

Dear Jeff:

We write on behalf of all plaintiffs in the above-referenced actions to identify particular deficiencies and issues with regard to Dexia's 328-page and 99-page privilege logs served on January 23, 2006. Many of the entries on Dexia's two privilege logs are so vague that we are unable to analyze Dexia's claims of attorney-client privilege and work product protection. But even apart from Dexia's inadequate descriptions, many documents cited in these logs appear to have been improperly withheld.

As you are aware, Dexia has the burden of establishing privilege or protection and to show that it properly withheld the documents on the logs. *See Borase v. M/A Com, Inc.*, 171 F.R.D. 10, 14 (D. Mass. 1997) (U.S.M.J. Collings) ("It is undisputed that the party asserting the attorney-client privilege bears the burden of demonstrating its applicability."). We highlight below global deficiencies that pervade Dexia's privilege logs and prevent us from assessing the propriety of the privilege or protection asserted. We also append three attachments: a list of unknown names that require further identification and two lists with entries corresponding to Dexia's two privilege logs wherein we note our objections to particular entries beyond the global deficiencies. These are explained below.

### Global deficiencies

Nearly every entry in the privilege logs is deficient in one or more of the ways described below. To remedy these deficiencies, Dexia should amend its privilege logs with the necessary detail to demonstrate the existence of an attorney-client privilege or a work-product protection for each entry in the logs. In addition, Dexia must produce all documents that it has improperly withheld.

1. **Unidentified individuals**

We are unable to identify many of the scores of names Dexia lists as author, recipient, or cc of the documents in its privilege logs. These names do not appear in Dexia's Voluntary Disclosures or its

**ReedSmith**

May 9, 2006
Page 2

Responses to Plaintiffs' Interrogatories. Without knowing who these individuals are, including their relationship to and/or role at Dexia, we are unable to evaluate whether Dexia's claims of privilege and protection are proper. For example, we cannot determine in many instances whether an attorney was party to a communication, whether there was an attorney-client relationship with Dexia, or whether the information was shared with a third party. Accordingly, we have appended as Attachment A a list of names for which we require the following information:

i) the individual's full name;

ii) whether the individual is a current or former Dexia employee;

iii) the individual's job title or job description and during what period; and

iv) whether the individual is an attorney; and

v) if the individual is not employed by Dexia, his or her relationship to Dexia (if any) and company affiliation.

2.   **Unidentified attachments**

In many instances, Dexia failed to describe the documents attached to emails and correspondence. For example, on page 226 of the 328-page log, Dexia describes an April 6, 2001 email from "S. Loosveld" as "Email with attachment providing legal advice re: L&H litigation and affidavit." For this entry and others where Dexia's description includes an "attachment," Dexia gives only generic information about the cover letter or email; it does not identify or describe the attachment.

Dexia has an affirmative obligation to describe all responsive documents that it has withheld from production, even if the documents are attachments to emails or letters, and it must supplement the logs with this information.

3.   **Vague descriptions that require further explanation**

Dexia's logs contain numerous instances of vague phrases that require further explanation.

The phrases "loan settlement," "loan security," and "loan insurance" appear many times, but Dexia never describes the "loan" at issue, including the parties to the loan, the amount of the loan, and the date of the loan. (*See, e.g.*, DEXPRIV005041; DEXPRIV005042). We are not certain whether Dexia refers to one loan or to multiple loans and the circumstances of the loan or loans. The absence of this information makes these entries so vague that we are unable to evaluate Dexia's claim of privilege or protection.

Likewise, the word "audit" and the phrase "audit report" appear throughout the logs, but in most instances, Dexia did not provide enough information for Plaintiffs to identify the referenced audit. Dexia must at the very least identify the audit by identifying the subject matter, the date, who or what was being audited, and who authorized and performed the audit.

Dexia variously refers to "litigation," "shareholders litigation," "audit report litigation" (*e.g.* October 16, 2002 memorandum from T. Zink and J. Frattini), "L&H litigation," "US litigation" (*e.g.*

**ReedSmith**

May 9, 2006
Page 3

DEXPRIV 000599), "Belgian shareholders litigation," "Dutch litigation," "credit insurance litigation, bankruptcy litigation," "Belgium litigation," "LHIC litigation," "LHSP litigation," "Dictaphone litigation," etc. With such vague descriptions, we are unable to ascertain the precise litigation that Dexia refers to in these privilege log entries. A more adequate explanation would include the parties to the lawsuit and the venue, or otherwise an identifiable caption and docket number.

The phrases "SEC investigation" (*e.g.* September 13, 2001 memorandum from K. van Riet), "Belgian criminal investigation" (*e.g.* DEXPRIV003061), and "criminal investigation" (*e.g.* DEXPRIV004764) appear several times in the logs. Dexia should provide additional detail so that we know the entity that the SEC or other authority investigated and the reason therefore. This information is necessary to evaluate whether Dexia properly withheld the documents.

Dexia withheld many documents entitled "minutes of banking consortium." (*See, e.g.*, DEXPRIV000281-82). Unless there is a reason for withholding these meeting minutes that is not apparent from the log, these minutes appear to have a business purpose and should be produced, regardless whether an attorney happened to be present at the meetings. *See Borase*, 171 F.R.D. 10 (ordinary business advice provided by an in-house attorney is not privileged); *National Empl. Serv. Corp. v. Liberty Mut. Ins. Co.*, 3 Mass. L. Rep. 221 (Mass. Super. 1994) ("Documents which do not ordinarily qualify for the privilege are: business correspondence; interoffice reports; file memoranda; and minutes of business meetings") quoting *Oil Chemical & Atomic Workers Int'l Union v. American Home Products*, 790 F. Supp. 39, 41 (D. Puerto Rico 1992). Additionally, the members and objectives of the "banking consortium" are never identified, making it impossible to assess the validity of Dexia's assertion of privilege.

### Deficiencies in specific entries

On Attachments B and C hereto, we list particular privilege log entries that are vague for reasons in addition to those stated above. For example, in many instances, Dexia has withheld "notes" that it claims were drafted by an attorney, yet failed to identify the author. If Dexia does not know the author of a document, it is difficult to conceive how Dexia can be certain that the document was drafted by an attorney. In these instances, unless Dexia is able to identify the author of the "notes" or point to language in the document itself that clearly shows that the note was drafted by an attorney and otherwise meets the criteria for attorney-client protection, Dexia cannot meet its burden and it must produce the notes.

Dexia claims privilege for numerous emails and letters drafted by or sent to third parties. To the extent any privilege existed with any of the documents that Dexia drafted and sent to another person or entity, transmitting the document to a third party acted as a waiver. One example, which also appears in Attachment B, is a document authored by KBC Bank and Artesia which KBC and Artesia faxed to Roel Pieper and John Duerden of L&H, as well as to a "J. Skrypczak." (DEXPRIV005042-45). Thus, based on Dexia's representations, a third party, KBC, authored the document, at least in part. In addition, two third parties – Pieper and Duerden – received it. Even if there could be a claim of privilege, Dexia waived the claim when it sent the document to L&H.

In addition, Dexia has withheld a number of documents under a claim of privilege where the author of a document was not an attorney. For example, Dexia withheld DEXPRIV001105, authored by

**ReedSmith**

May 9, 2006
Page 4

Mr. Saverys, claiming that Saverys was "providing legal advice re loan settlement." Mr. Saverys testified that he has never practiced law and has never acted as a lawyer for Dexia or any of its predecessors. Depositions Transcript of F. Saverys, April 25, 2006 Volume 1 at p. 16. Likewise, Dexia did not produce an email drafted by Mr. Janssens, dated December 19, 2001, stating that Janssens was "transmitting draft letter and providing legal advice re L&H shareholders' litigation in Belgium." And, Dexia withheld DEXPRIV001292, an email from Mr. Piret to Mr. Saverys, claiming that Mr. Piret was "providing legal advice re restructuring of L&H financing and re loan settlement." Plainly, these documents were not drafted by attorneys and must be produced.

Dexia has also withheld numerous "agreements," some with marginalia, without identifying the source of the document or the author of the marginalia. Without this information, Plaintiffs cannot ascertain, for example, whether the document and/or marginalia were created by a Dexia attorney and remained internal to Dexia or whether the document and/or marginalia were created by the other party to the transaction. Without this information, Dexia cannot sustain a claim of privilege.

These are but a few examples of the deficiencies and issues that are more fully illustrated in the attached exhibits.

Accordingly, we must insist that you immediately produce all of the documents listed in Attachments B and C in unredacted form. In addition, we expect you to remedy the deficiencies noted in this letter by identifying the individuals listed in Attachment A and by revising the privilege logs to provide additional detail for all other documents you continue to withhold so that Plaintiffs can fully ascertain whether Dexia's remaining claims of privilege and protection are proper. If you refuse to produce the documents in Attachments B and C and to correct the deficiencies in the logs, we ask for a meet and confer on the issues in this letter for this coming Thursday, May 11, 2006.

Very truly yours,

Steven T. Voigt

STV:jh

cc: Susan M. Davies, Esquire
    Patrick Egan, Esquire
    Patrick Rocco, Esquire
    Steven Singer, Esquire
    Karen Dyer, Esquire