# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 03-Civ-11566 (PBS) |
| v. | ) ) | |
| DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.), | ) ) ) ) | |
| Defendants. | ) ) | |

## DEXIA BANK BELGIUM'S RESPONSES AND OBJECTIONS TO LEAD PLAINTIFFS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Massachusetts, defendant Dexia Bank Belgium ("Dexia") responds as follows to Lead Plaintiffs' Second Set of Interrogatories dated September 15, 2005.

### GENERAL OBJECTIONS

1.  Dexia objects to each Interrogatory, Instruction or Definition to the extent it seeks to impose obligations beyond those required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

2.  Dexia objects to each Interrogatory, Instruction or Definition to the extent that it is overly broad, unduly burdensome, duplicative or seeks information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

3.  Dexia objects to each Interrogatory, Instruction or Definition to the extent that it is vague, ambiguous or does not identify with particularity the information sought.

4.  Dexia objects to each Interrogatory, Instruction or Definition to the extent that it would impose undue burden or expense on Dexia.

5.  Dexia objects to each Interrogatory, Instruction or Definition to the extent that it seeks information in the possession, custody or control of Plaintiffs.

6.  Dexia objects to each Interrogatory, Instruction or Definition to the extent that it seeks documents or information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privileges.

7.  Dexia objects to each Interrogatory, Instruction or Definition to the extent that it calls for information that is obtainable by Plaintiffs from public sources or other sources that are also available to Plaintiffs.

8.  Dexia objects to each Interrogatory, Instruction or Definition to the extent that it calls for a legal opinion or for an opinion on a mixed question of law and fact.

9.  Dexia's investigation of the facts relevant to this action and review of relevant documents is continuing.  Dexia reserves the right to amend, modify, or supplement the Responses set forth herein to the extent required or permitted under Rule 26 of the Federal Rules of Civil Procedure.  Dexia further reserves the right to rely on any facts, documents or other evidence that may develop or come to its attention at a later date.

## SPECIFIC OBJECTIONS AND RESPONSES

Interrogatory No. 5

Identify each of the following persons and state any position(s) each person held at Dexia during the Relevant Time Period, including titles, divisions, office location and years of employment, as well as if such person is currently, or was at any time during the Relevant Period, a director, officer or managing agent of Dexia.

(a)    Paul Bernard;
(b)    Alexis Bogaert;
(c)    Dirk Bruneel;
(d)    Linda Claerhout;

2

(e)    Fernand Cloet;
(f)    Ivan De Coen;
(g)    Geert Costers;
(h)    Luc Coppenolle;
(i)    Christian Decaux;
(j)    Catherine De Coutere;
(k)    Eric De Gyns;
(l)    Dirk De Keuster;
(m)    Carl Esprit;
(n)    Renaud Greindl;
(o)    Lieven Gryp;
(p)    Luc Libbrecht;
(q)    Chris Lonneville;
(r)    Patrick Minjauw;
(s)    Willy Mollaert;
(t)    Marc Ronvaux;
(u)    Patrick Taghon;
(v)    Johan Valcke;
(w)    Willy Van Cauwelaert;
(x)    Joris Van Helleputte;
(y)    Walter Vanderbeken;
(z)    Paul Vanderlinden; and
(aa)   Dirk Vervaeke.

Response to Request No. 5

Dexia objects to this Interrogatory to the extent it seeks information concerning "Paul Bernard," "Fernand Cloet," "Geert Costers," "Dirk De Keuster," and "Patrick Taghon" because Dexia cannot identify any current or former employees having these names. Dexia objects to this Interrogatory to the extent it seeks identification of "managing agents" because the determination of whether an individual is a "managing agent" under Fed. R. Civ. P. 30 is a mixed question of law and fact. Dexia objects to this Interrogatory to the extent it seeks identification of officers, directors or managing agents of entities other than Dexia Bank Belgium or Dexia S.A. Without waiving the foregoing objections or the General Objections, Dexia responds to this Interrogatory as follows:

3

NYA 755607.2

| NAME | TIME PERIOD BEGINNING | POSITION, DEPARTMENT, ENTITY, AND LOCATION | OTHER TITLES |
|---|---|---|---|
| Bogaert, Alexis | June 1996 | Kaderlid, Particulieren, Kleine Ondernemingen & Zelfstandigen, Crédit Communal de Belgique, Brussels | Credit Analyst |
| | June 1997 | Kaderlid, Lease Department, Crédit Communal de Belgique, Brussels | |
| | May 1998 | Kaderlid, Equity Capital Markets, Crédit Communal de Belgique, Brussels | Equity Analyst Technology/Telco |
| | May 1999 | Kaderlid, Equity Capital Markets, Crédit Communal de Belgique, Brussels | Corporate Finance Officer |
| | September 2000 | Kaderlid, Private Equity, Structured & Corporate Finance, Dexia Bank Belgium (DBB), Brussels | Senior Investment Manager |
| Bruneel, Dirk | 1996 | Lid van het Directiecomité, Bacob, Brussels | Member of the Board of Directors, Member of the Management Board, President of the Management Board |
| | September 1997 | Lid van het Directiecomité, Artesia Banking Corporation, Brussels | Member of the Board of Directors, Director, Member of the Management Board, President of the Management Board |
| | August 2001 | Lid van het Directiecomité, DBB, Brussels | Member of the Board of Directors, Member of the Management Board, President of the Management Board |
| | February 2002 | Lid van het Directiecomité, Dexia S.A., Brussels | Member of the Executive Committee |
| | November 2002 | Lid van het Directiecomité, Dexia Bank Nederland, Amsterdam | President of the Board of Directors |
| Claerhout, Linda | January 1996 | Kaderlid, Afdeling Kredieten, Paribas, Kortrijk | Credit Officer, Senior Credit Officer |
| | September 2000 | Kaderlid, Corporate Banking, Artesia Banking Corporation, Kortrijk | Adjunct Corporate Banker |
| De Coen, Ivan | January 1996 | Kaderlid, Corporate Banking, Paribas, Brussels | Senior Corporate Banker |
| | 1997 | Kaderlid, Structured Finance, Paribas, Brussels | Head of Structured Finance |
| | July 1998 | Kaderlid, Artesia Factors S.A., Brussels | Gedelegeerd Bestuurder |
| | December 2003 | Directiekaderlid, Dexia Factors, Brussels | Gedelegeerd Bestuurder |

4

NYA 755607.2

| NAME | TIME PERIOD BEGINNING | POSITION, DEPARTMENT, ENTITY, AND LOCATION | OTHER TITLES |
|---|---|---|---|
| Coppenolle, Luc | 1996 | Kaderlid, Paribas, Roeselare | Kantoordirecteur |
| | 1997 | Kaderlid, Private Banking, Roeselare-Ieper, Paribas, Roeselare | Verantwoordelijke private banking |
| | 1999 | Kaderlid, Agentschapsdirecteur Roeselare-Ieper, Artesia Banking Corporation, Roeselare | |
| | 2000 | Kaderlid, Private Banking, Artesia Banking Corporation, Roeselare | |
| | September 2003 | Kaderlid, Private Banking, DBB, Kortrijk | |
| Decaux, Christian | 1996 | Kaderlid, Legal Department, Paribas, Brussels | Legal Advisor |
| | August 1997 | Kaderlid, Commercial Secrétariat, Paribas, Brussels | |
| | November 1998 | Kaderlid, Sales Support Division, Artesia Banking Corporation, Brussels | |
| | April 2002 | Kaderlid, Manager of Accounts and Safes, Operations – Payments & Accounts, DBB, Brussels | |
| Decoutere, Catherine | 1996 | Kaderlid, Legal Department, Paribas, Brussels | |
| | September 1998 | Kaderlid, Risk Management, Paribas, Brussels | |
| | September 1999 | Kaderlid, Audit Department, Artesia Banking Corporation, Brussels | Auditor |
| | April 2002 | Kaderlid, Legal Department, DBB, Brussels | Legal Advisor |
| De Gyns, Eric | January 1996 | Directiekaderlid, Audit Department, Paribas, Brussels | Auditeur-General |
| | April 2002 | Directiekaderlid, Compliance Officer, DBB, Brussels | |
| | August 2004 | Departed | |
| Esprit, Carl | January 1996 | Kaderlid, Corporate Banking, Paribas, Roeselare | Corporate Banker |
| | January 1997 | Kaderlid, General Banking and Middle Market, Paribas, Roeselare | General Banker, Kantoordirecteur |
| | 1999 | Kaderlid, Corporate Banking, Artesia Banking Corporation, Roeselare | Corporate Banker |
| | February 2000 | Kaderlid, Corporate Banking, Artesia Banking Corporation, Kortrijk | Corporate Banker |

NYA 755607.2

| NAME | TIME PERIOD BEGINNING | POSITION, DEPARTMENT, ENTITY, AND LOCATION | OTHER TITLES |
|---|---|---|---|
| Greindl, Renaud | May 1995 | Lid van het Directiecomité, Gestion Privée et Institutionnelle, Paribas, Brussels | Bestuurder-Directeur, Member of the Management Board |
| | April 2002 | Departed | |
| Gryp, Lieven | July 1998 | Kaderlid, Audit Department, Paribas, Brussels | Auditor |
| | November 2000 | Kaderlid, Audit Department, Artesia Banking Corporation, Brussels | Assistant Head Audit Financial Markets |
| | April 2002 | Kaderlid, Audit Department, DBB, Brussels | Head Audit Financial Markets |
| | August 2003 | Departed | |
| Libbrecht, Luc | April 1996 | Kaderlid, Private Banking, Paribas, Roeselare | Private Banker |
| | December 2001 | Deceased | |
| Lonneville, Chris | January 1996 | Kaderlid, Corporate Banking and Middle Market, Paribas, Kortrijk | Corporate Banker |
| | February 2000 | Kaderlid, Corporate Banking, Artesia Banking Corporation, Roeselare | Kantoordirecteur, Senior Corporate Banker |
| | December 2003 | Kaderlid, Corporate Banking, DBB, Kortrijk | Senior Corporate Banker |
| Minjauw, Patrick | September 1998 | Kaderlid, Universitaire Stageploeg, Paribas, Brussels | |
| | March 1999 | Kaderlid, Credit Secretariat Specialised Activities, Paribas, Brussels | |
| | June 2001 | Departed | |
| Mollaert, Willy | September 1996 | Kaderlid, Kredietsecretariaat Oost- en West-Vlaanderen, Paribas, Kortrijk | |
| | July 2000 | Kaderlid, Kredietsecretariaat Oost- en West-Vlaanderen, Artesia Banking Corporation, Brussels | |
| | May 2001 | Departed | |
| Ronvaux, Marc | 1996 | Directiekaderlid, Bank Secretariat, Paribas, Brussels | Assistant to the Secretary General, Strategy and Studies |
| | 1998 | Directiekaderlid, Credit Department, Artesia Banking Corporation, Brussels | Director Risk Management |
| | January 2005 | Directiekaderlid, Coordinator Basel II, DBB, Brussels | Advisor |

6

NYA 755607.2

| NAME | TIME PERIOD BEGINNING | POSITION, DEPARTMENT, ENTITY, AND LOCATION | OTHER TITLES |
|------|------|------|------|
| Valcke, Johan | January 1996 | Zeteldirecteur West-Vlaanderen, Paribas, Kortrijk | Directeur Commerciële Zetel West-Vlaanderen |
| | January 1999 | Head of Private Banking, Paribas, Brussels | |
| | January 2003 | Member of Comité Exécutif, Banque Vernes Artesia, Lille, France | |
| | September 2003 | Responsible, Eénmalige Bevrijdende Aangifte, DBB, Brussels | |
| | June 2005 | Semi-retired | |
| Van Cauwelaert, Willy | January 1996 | Hoofdprocuratiehouder, Crédit Communal de Belgique, Brussels | |
| | April 2002 | Directiekaderlid, Legal Department, DBB, Brussels | Assistant Director |
| | January 2004 | Directiekaderlid, Director Legal Department, DBB, Brussels | |
| Van Helleputte, Joris | January 1996 | Kaderlid, Corporate Banking, Paribas, Sint-Niklaas | Account manager |
| | January 1997 | Kaderlid, Gespecialiseerde Kredieten, Paribas, Brussels | Kredietanalyst |
| | March 1998 | Kaderlid, Structured Finance, Artesia Banking Corporation, Brussels | Corporate Banker, Senior Corporate Banker |
| | 2001 | Kaderlid, Head Structured Finance, Artesia Banking Corporation, Brussels | |
| | January 2002 | Directiekaderlid, Hoofd Kredietafdeling, Banque Artesia Nederland, Amsterdam | |
| Vanderbeken, Walter | 1996 | Lid van het Directiecomité, Funds Management and Participations, Bacob, Brussels | Member of Management Board |
| | July 1998 | Departed | |
| Vanderlinden, Paul | January 1996 | Kaderlid, Corporate Banking, Paribas, Kortrijk | Corporate Banker, Senior Corporate Banker |
| | June 2000 | Kaderlid, Head of Corporate Banking, Region West-Vlaanderen, Artesia Banking Corporation, Kortrijk | |
| Vervaeke, Dirk | January 1996 | Kaderlid, Administratief-Commercieel Bediende, Paribas, Roeselare | |
| | December 2003 | Kaderlid, Assistant Personal Banking, DBB, Roeselare | |

NYA 755607.2

In addition, Dexia does not dispute that the following individuals are or were officers, directors or managing agents of Dexia Bank Belgium or Dexia S.A. during the relevant time period:

> Dirk Bruneel
> Eric De Gyns
> Renaud Greindl
> Willy Van Cauwelaert
> Walter Vanderbeken

Of these individuals, Dexia does not dispute that Dirk Bruneel and Willy Van Cauwelaert are current officers, directors or managing agents of Dexia Bank Belgium or Dexia S.A.

Interrogatory No. 6

For each of the persons listed in Interrogatory No. 5 who does not currently hold a position at Dexia, state (a) the date of termination, (b) the reason for termination, and (c) the last known business and home address.

Response to Request No. 6

Dexia objects to this Interrogatory because the term "termination" presumes that employees who have departed from the bank were terminated involuntarily. Dexia will respond to this Interrogatory as if the term "departure" were used instead of "termination." Dexia objects to this Interrogatory to the extent it seeks a "reason for termination" for employees who have departed voluntarily because it is impossible for Dexia to know the employee's true reason(s) for leaving the bank. Dexia will respond to this portion of the Interrogatory only to the extent the employee provided the bank with a reason for his or her departure. Subject to and without waiving the General Objections, Dexia responds to this Interrogatory as follows:

| NAME | DEPARTURE DATE | REASON FOR DEPARTURE | LAST KNOWN ADDRESS |
|------|----------------|----------------------|--------------------|
| De Gyns, Eric | August 2004 | No reason given | Rue Steenvelt 24/8, 1180 Bruxelles, Belgium |
| Greindl, Renaud | April 2002 | No reason given | Rue Nisard 59, 1170 Watermael Boitsfort, Belgium |

8

| NAME | DEPARTURE DATE | REASON FOR DEPARTURE | LAST KNOWN ADDRESS |
|------|----------------|----------------------|--------------------|
| Gryp, Lieven | August 2003 | No reason given | Diestsestraat 138/203, 3000 Leuven, Belgium |
| Libbrecht, Luc | December 2001 | Deceased | N/A |
| Minjauw, Partrick | June 2001 | No reason given | Dahliadreef 10, 8550 Zwevegem, Belgium |
| Mollaert, Willy | May 2001 | No reason given | Zeuningenstraat 34, 1570 Galmaarden-Tollembeek, Belgium |
| Vanderbeken, Walter | July 1998 | No reason given | Molenhoek 4, 9340 Smetlede, Belgium |

Interrogatory No. 7

For each of the persons listed in Interrogatory No. 5 whom your response states is not currently, and was not for any time during the Relevant Time Period, a director, officer, or managing agent of Dexia, for each title held during the Relevant Time Period (a) describe in detail the person's job responsibilities, including the nature of corporate matters over which the person exercised discretion or judgment, (b) identify by name and title all persons reporting to the person, and (c) identify by name and title all individuals to whom the individual reported.

Response to Request No. 7

Dexia objects to this Interrogatory to the extent it seeks information about persons who cannot be identified or who no longer work for Dexia. Dexia objects to this Interrogatory to the extent it seeks information about the exercise of "discretion or judgment" that is irrelevant to any of the claims or defenses in this action. Dexia objects to the "Relevant Time Period" as applied to this Interrogatory as overly broad and unduly burdensome. Dexia's responses include information for 1998 and 1999 and, where applicable, current information. Subject to and without waiving the foregoing objections or the General Objections, Dexia responds to this Interrogatory as follows:

(a)    Alexis Bogaert:  In 1998 and 1999, Mr. Bogaert was on staff in the lease department and was responsible for cash management and various restructuring tasks. He then worked as an equity analyst in the Dexia dealing room and was responsible for company and sector analysis for external clients, asset management, project finance, group M&A investments

9

and venture capital investments. He reported to Etienne De Rouck and Françoise Bernard, respectively. No one reported to him. Currently, Mr. Bogaert is a senior investment manager in Dexia's private equity/structured and corporate finance department. He is responsible for investment management for target sectors in the EU and also in the US. He reports to Pascal Wynen and no one reports to him.

(b)     Linda Claerhout: In 1998 and 1999, Ms. Claerhout was a credit officer responsible for the analysis of credit files. She reported to Willy Mollaert and no one reported to her. Currently Ms. Claerhout is an adjunct corporate banker in the Corporate Banking Department of DBB in Kortrijk. Her job responsibilities include preparing credit files that are provided to the credit department and preparing follow-up documentation with respect to credit openings and credit amendments. She reports to Paul Vanderlinden and no one reports to her.

(c)     Luc Coppenolle: In 1998 and 1999, Mr. Coppenolle was a banker in the private banking department of Artesia Banking Corporation in Roeselare-Ieper. His responsibilities included managing client relationships and managing private banking accounts for the Roeselare-Ieper region. He reported to Johan Valcke. Luc Billiet (partially), Koen Bamelis and Marc Syryn reported to him. Currently, he is a banker in the private banking department of DBB in Kortrijk. He is responsible for various commercial functions within the department, and also for supporting private bankers in Brugge-Roeselare-Ieper region. He reports to Marc Debaveye and no one reports to him.

(d)     Christian Decaux: In 1998 and 1999, Mr. Decaux worked as the Head of the Commercial Secrétariat at Paribas, Brussels and then as the Head of Division Support to Sales Artesia Banking Corporation, Brussels. He reported to Eugène Lemineur, Marc Lauwers, and then Erwin Ruymaekers. Jimmy Daamen, Frederik Aerts, Lowie Hermans, Paul Vanderbiest,

10

Cécile Van Bossuyt, and Christian Van Herck reported to him. Currently, he is the manager of accounts and safes in the Operations – Payments and Accounts department of DBB Brussels. He is responsible for the administrative management of accounts and safes. He reports to Erwin Ruymaekers and Christophe Van Hees. Jimmy Daamen, Bernard Vryens, Michel Van Minnenbruggen, Christine Van Pachterbeke, Christiane Moulin, Lydia Uytterhaegen, and Paul Champagne report to him.

(e)    Ivan De Coen: In 1998 and 1999, Mr. De Coen was a corporate banker in the Structured Finance department of Artesia. His job responsibilities included working with clients to develop credit proposals for large and/or complicated financing transactions. He reported to François Saverys. Peter Vermeiren, J. M. Leroy, Joris Van Helleputte, and Hélène de Coninck reported to him. Currently, he is the head of Dexia Factors. He reports to Stefaan Decraene and manages a team of approximately 40 people.

(f)    Catherine Decoutere: In 1998 and 1999 Ms. Decoutere worked successively in (i) the legal department of Paribas in Brussels, (ii) the Risk Management department of Paribas in Brussels and (iii) the Audit Department of Artesia Banking Corporation in Brussels. In the legal department, her job responsibilities included the administration of credit files. She reported to Willy Mollaert and Jan Van der Ven, and about six people reported to her. In the Risk Management department, she reported to Jacques Janssens and no one reported to her. In the Audit Department, she reported to Françoise Dankelman and no one reported to her. Currently, she is an in-house attorney in Brussels. She is responsible for certain recovery and litigation files. She reports to Karel Van Riet and no one reports to her.

(g)    Carl Esprit: In 1998, Mr. Esprit worked as a general banker for the Middle Market at Paribas, Roeselare. He was responsible for client development with respect to smaller

11

companies, managing client relations and administration of the Roeselare office. He reported to

Geert Dauwe and no one reported to him. In 1999, Mr. Esprit worked as a corporate banker at

Artesia Banking Corporation, Roeselare, where he was responsible for commercial relations for a

certain desk of clients. He reported to Vincent Sneyers and no one reported to him. Currently,

he continues to be responsible for commercial relations for a certain desk of clients at DBB,

Kortrijk. He reports to Paul Vanderlinden and no one reports to him.

(h)     Lieven Gryp: In 1998 and 1999, Mr. Gryp was an internal auditor whose job

responsibilities included conducting audits and drafting audit reports. He reported to Eric De

Gyns and no one reported to him.

(i)     Luc Libbrecht: In 1998 and 1999, Mr. Libbrecht was a banker in the private

banking department whose responsibilities included client relations and account management.

He reported to Johan Valcke and Philippe Dandoy. No one reported to him.

(j)     Chris Lonneville: In 1998 and 1999, Mr. Lonneville worked in the Corporate

Banking and Middle Market departments at Paribas, where his responsibilities included client

relations and account management. He reported to Johan Valcke, Philippe Steverlynck, Paul

Vanderlinden and Luc Billiet. No one reported to him. Currently, he is a senior corporate

banker in the Corporate Banking department in Kortrijk where he is responsible for client

relations and account management. He reports to Paul Vandelinden and no one reports to him.

(k)     Patrick Minjauw: In 1998, Mr. Minjauw was an intern in multiple departments of

the bank. In 1999, his job responsibilities included the administration of credit files. He

reported indirectly to Patrick Van Tiggel and no one reported to him.

(l)     Willy Mollaert: In 1998 and 1999, Mr. Mollaert worked in the Kredietsecretariaat

Oost- en West- Vlaanderen and was responsible for the administration of credit files. He

12

reported to François Saverys. At various points, Antoon Baert, Linda Claerhout, Catherine Decoutere, Gan Jacques, and Gino Schepens reported to him

(m)     Marc Ronvaux: In 1998 and 1999, Mr. Ronvaux worked in the credit department where he was responsible for risk management with respect to certain credit files. He reported to Jacques Janssens and François Saverys. Several individuals, including Robert De Maeght and Lucie Capouillez, reported to him. Currently, his responsibilities include coordination of Project Basel II and assisting the CFO of the bank. He reports to Xavier de Walque and no one reports to him.

(n)     Johan Valcke: In 1998, Mr. Valcke was the head manager of the West-Vlaanderen region at Paribas, Kortrijk responsible for managing the different corporate entities located in Zeebrugge, Oostende, Waregem, Roeselare, Ieper, Brugge and Kortrijk. He reported to Jan Van Broeckhoven. Paul Vanderlinden, Sam Sabbe, Francis Callewaert, and Luc Coppenolle reported to him. In 1999, Mr. Valcke became head of private banking at Paribas in Brussels. He reported to Renaud Greindl. Marc Debaveye, Didier Vandenhove, and André Lievens reported to him. Currently, Mr. Valcke is in semi-retirement.

(p)     Joris Van Helleputte: In 1998 and 1999, Mr. Helleputte was a corporate banker whose responsibilities included the negotiation of special credits. He reported successively to Ivan De Coen, Peter Vermeiren, and Vincent Sneyers. At that point, no one reported to him. Currently, he is head of the credit department at Banque Artesia Nederland in Amsterdam, where he is responsible for credit analysis and management. He reports to Vincent Sneyers. He manages a team of approximately 15 people.

(q)     Paul Vanderlinden: In 1998 and 1999, Mr. Vanderlinden was a corporate banker whose responsibilities included account management and development of new clients. He

NYA 755607.2

reported at various points to Geert Dauwe, Johan Valcke, Vincent Sneyers and Philippe Steverlynck. No one reported to him. Currently, he is responsible for corporate banking in the West Flanders region in Kortrijk. He reports to Philippe Steverlynck. Various corporate bankers, office managers and assistants in the West Flanders region report to him.

(r)    Dirk Vervaeke: In 1998 and 1999, Mr. Vervaeke was an administrative assistant at Paribas in Roeselare, where his responsibilities included certain accounting tasks and the management of guaranty files and term deposits. He reported indirectly to Johan Valcke and Philippe Stevelynck and no one reported to him. Currently, he works in the personal banking department where he is responsible for assisting clients with personal banking. He reports to Hans Vande Capelle and no one reports to him.

Interrogatory No. 8

State the following:

(a)    the earliest point in time (*i.e.*, the date) at which a reasonably diligent investor who had purchased Lernout & Hauspie Speech Products, N.V. stock during August 19, 1998 through November 9, 2000 could or should have discovered facts sufficient under applicable law and rules to support the assertion of a good faith claim against Dexia for violation(s) of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, in connection with L&H's improper revenue recognitiion, and state with particularity each such fact;

(b)    the dates(s) a reasonably diligent investor could or should have discovered each such fact;

(c)    the reasons why a reasonably diligent investor could or should have discovered each such fact; and

(d)    any and all actions, and the date(s) of such actions, that a reasonably diligent investor could or should have taken which would have led to the discovery of each such fact.

Response to Request No. 8

Dexia objects to this Interrogatory to the extent it calls for a legal conclusion, or for interpretation of legal terms such as "reasonably diligent investor" and "good faith claim." Dexia assumes, for purposes of its response, that plaintiffs in this action and all related actions

14

are "reasonably diligent investors" and that claims made by such plaintiffs are "good faith claims." Dexia objects to this Interrogatory as premature because Dexia's investigation of relevant facts is continuing. Dexia reserves the right to amend its response based on its continuing investigation and analysis of relevant facts. Without waiving the foregoing objections or the General Objections, Dexia states that a reasonably diligent investor could have or should have discovered the facts alleged by Plaintiffs concerning Dexia's involvement in the Brussels Translation Group ("BTG") transaction on or before January 20, 2001.

The facts supporting this statement are as follows. *First*, Plaintiffs have asserted a claim under Section 10(b) and Rule 10b-5 against Dexia based on alleged improper revenue recognition in connection with the BTG transaction. *See* Class Plaintiffs' Responses and Objections to Dexia Bank Belgium's Second Set of Interrogatories, Response to Interrogatory No. 11. *Second*, the Amended Complaint describes Dexia's conduct with respect to BTG as follows: "Artesia was a key factor in the creation of BTG, providing the initial financing to allow BTG to operate. Artesia loaned a total of $22.9 million to BTG with the intent that L&H would find external investors to repay the loan." Am. Compl. ¶ 81. *Third*, Plaintiffs claim that they "first obtained information in or about December 2000 tending to show that the fraudulent scheme, acts, practices[,] course of business statements and omissions of material facts to artificially inflate the revenue and stock price of L&H included transactions specific to Dictation Consortium and to Brussels Translation Group." *See* Class Plaintiffs' Responses and Objections to Dexia Bank Belgium's Second Set of Interrogatories, Response to Interrogatory No. 13(a). *Fourth*, on January 6, 2001, plaintiffs Janet and James Baker filed an action against KPMG and various other persons and entities alleging violations of Section 10(b) and Rule 10b-5 based on alleged improper revenue recognition from the BTG transaction. *See Baker v. KPMG*, 02-10305

15

(D. Del. Jan. 6, 2001). *Fifth*, a Belgian publication called *L'Echo* published an article on January 20, 2001, describing the BTG transaction and stating that Paribas and Bacob, the predecessors of Artesia Banking Corporation and Dexia, provided a loan of BEF 600 million (approximately $17 million) to BTG. *See* Huwart, Jean-Yves, *Le système de franchises de L&H: un mécanisme bien huilé et rémunérateur*, L'ECHO, Jan. 20, 2001. *Sixth*, Plaintiffs have indicated that they reviewed *L'Echo*, among other Belgian publications, as part of their investigation of potential claims against Dexia. *See* Class Plaintiffs' Amended Responses to Dexia Bank Belgium's First Interrogatories, Response to Interrogatory No. 5.

Based on these facts, a reasonable investor could or should have been monitoring Belgian news publications, including *L'Echo*, for information concerning BTG beginning in December 2000 and, on January 20, 2001, could or should have read the article describing the BTG transaction and indicating that the predecessors of Dexia provided at least $17 million in funding for the BTG transaction. This information could or should have been sufficient to make the allegations concerning BTG that are contained in the Amended Complaint filed against Dexia.

Dated: October 31, 2005

CLIFFORD CHANCE US LLP

By: _____

James B. Weidner
Jeff E. Butler
31 West 52nd Street
New York, NY 10019-6131
Tel:    (212) 878-8000
Fax:    (212) 878-8375

16

NYA 755607.2

MINTZ LEVIN COHN FERRIS GLOVSKY &
POPEO
      Peter M. Saparoff (BBO#567379)
      Breton Leone-Quick (BBO#391000)
One Financial Center
Boston, MA 02111
Tel:    (617) 542-6000
Fax:    (617) 542-2241

Counsel for Dexia Bank Belgium

17

NYA 755607.2

EXHIBIT D

# C L I F F O R D
# C H A N C E

**CLIFFORD CHANCE US LLP**

31 WEST 52ND STREET
NEW YORK NY 10019 6131

TEL +1 212 878 8000
FAX +1 212 878 8375
www.cliffordchance.com

**Jeff E. Butler**

DIRECT TEL  212-878-8205
DIRECT FAX  212-878-8375
jeff.butler@cliffordchance.com

February 10, 2006

VIA FACSIMILE

Susan M. Davies, Esq.
Gregory P. Joseph Law Offices LLC
805 Third Avenue, 31st Floor
New York, NY 10022

Re:     *Quaak v. Dexia Bank Belgium*
        *Stonington v. Dexia Bank Belgium*
        *Filler v. Dexia Bank Belgium*
        *Baker v. Dexia Bank Belgium*

Dear Susan:

     This responds to your letter dated January 30, 2006, regarding the employment status of Jan van Broeckhoven.  As we informed you prior to the hearing before Judge Collings on December 23, 2005, Mr. Van Broeckhoven retired from Dexia before any complaint was filed against Dexia in the United States.  Specifically, he retired effective December 31, 2002, and was not an employee of Dexia or any of its subsidiaries after that time.

     The last address for Mr. Van Broeckhoven on file with the Dexia is Reepkenslei 50, 2250 Kontich, Belgium.

Sincerely,

Jeff E. Butler

cc:     Patrick T. Egan, Esq.
        Patrick Rocco, Esq.
        Steven B. Singer, Esq.
        Karen Dyer, Esq.
        Alan Cotler, Esq.
        Peter M. Saparoff, Esq.

NYB 1519982.1

# EXHIBIT E

# United States District Court
# District of Massachusetts

HANS A. QUAAK,
ATTILIO PO,
KARL LEIBINGER, on behalf of
     themselves and those similarly situated,
         Plaintiffs,

v.                                     Civil Action No.: 03-11566-PBS

DEXIA, S.A.,
DEXIA BANK BELGIUM
     (formerly known as ARTESIA BANKING
     CORP., SA),
         Defendants.

_____

STONINGTON PARTNERS, INC., a Delaware
     Corporation,
STONINGTON CAPITAL
     APPRECIATION 1994 FUND L.P., a Delaware
     Partnership,
STONINGTON HOLDINGS,
     L.L.C., a Delaware limited liability company,
         Plaintiffs,

v.                                       Civil Action No.: 04-10411-PBS

DEXIA, S.A.,
DEXIA BANK BELGIUM
     (formerly known as ARTESIA BANKING
     CORP., SA),
         Defendants.

_____

GARY B. FILLER,
LAWRENCE PERLMAN, Trustees of the
       TRA Rights Trust,
          Plaintiffs,

v.                                    Civil Action No.: 04-10477-PBS

DEXIA, S.A.,
DEXIA BANK BELGIUM
       (formerly known as ARTESIA BANKING
       CORP., SA),
          Defendants.


_____

JANET BAKER,
JAMES BAKER,
JKBAKER LLC,
JMBAKER LLC,
         Plaintiffs,

v.                                    Civil Action No.: 04-10501-PBS

DEXIA, S.A.,
DEXIA BANK BELGIUM
       (formerly known as ARTESIA BANKING
       CORP., SA),
          Defendants.


# STIPULATION AND ORDER GOVERNING
# THE TREATMENT OF CONFIDENTIAL INFORMATION

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the

parties to the above-captioned actions (the "Action") that, subject to the approval of the

Court, this Stipulation and Proposed Order shall govern the handling of documents and

2

any deposition testimony, deposition exhibits, interrogatory responses, admissions, and any other information produced or given by a party or non-party in connection with discovery in the Action (such information is hereinafter referred to as "Discovery Material").

      1. Discovery Material, or information derived therefrom, shall be used solely for prosecution or defense of the Action (including any appeals) and shall not be used for any other purpose.

      2. "Confidential Information" as used herein means trade secrets or other confidential research, development or commercial information entitled to confidential treatment pursuant to Fed. R. Civ. P. 26(c)(7) and personal information protected under Belgian privacy law or any other relevant law. Use of Confidential Information during pretrial proceedings in the Action shall be governed by this Stipulation and Order.

      3. All documents produced, given or otherwise disclosed by any party or non-party (hereinafter the "Party" or "Parties"), including documents, responses to document requests, interrogatory answers, answers to requests for admissions and any other document produced pursuant to the Federal Rules of Civil Procedure or Local Rules of this Court, which the producing Party in good faith believes contain Confidential Information, shall be designated as confidential by the producing Party at the time of production by means of a "CONFIDENTIAL" stamp or legend placed on each page containing Confidential Information.

      4.      (a) Deposition testimony that counsel for the producing Party providing such testimony, in good faith, believes contains Confidential Information shall

3

be designated as Confidential by counsel making a statement for inclusion in the

deposition transcript and, within ten (10) business days after receipt of the transcript, by

counsel designating by page and line, the Confidential Information contained in the

deposition transcript by means of a "CONFIDENTIAL" stamp or legend. When

Confidential Information is designated in a deposition transcript, the Party making the

designation shall instruct the reporter to imprint the legend "THIS TRANSCRIPT

CONTAINS CONFIDENTIAL INFORMATION" on the cover page of the transcript and

to include, at the front of the transcript, a page identifying all pages and lines designated

CONFIDENTIAL in the transcript.

        (b) Any magnetic media (e.g., videotape or computer disk) containing

portions of a deposition transcript which have been designated Confidential shall be

labeled with a "CONFIDENTIAL" legend.

     5.    (a) At any proceeding before the Court in connection with the Action,

counsel for the parties to the Action may, subject to the rules of evidence, disclose or

refer to Confidential Information, unless otherwise ordered by the Court.

        (b) Counsel may send courtesy copies of documents containing

Confidential Information to the Court so long as the envelope containing such documents

indicates that the envelope contains Confidential Information subject to this Stipulation

and Order.

     6. Confidential Information shall be used solely for purposes of the Action

(including any appeals), unless otherwise agreed to in advance by the producing Party or

ordered by the Court and shall not be used for any business or competitive purpose

whatsoever.

7. Confidential Information may be disclosed or made available by counsel of record for the party to the Action receiving such information to the following "Qualified Persons" as defined herein. For purposes of this Stipulation and Order, "Qualified Persons" means:

  a. the Court (and any appellate court), including court personnel;

  b. court reporters;

  c. counsel of record to the parties to the Action, including the paralegal, clerical, secretarial, and other persons employed or retained by such counsel;

  d. the parties to the Action;

  e. entities engaged by counsel of record in the Action to perform photocopying, scanning, database, and other document management services for purposes of the Action; outside photocopying services;

  f. experts, advisors or consultants (including their employees and support staff) retained by counsel of record in the Action;

  g. potential, anticipated or actual witnesses; and

  h. any mediator or arbitrator engaged by the parties to the Action.

8. Prior to the disclosure of Confidential Information to any Qualified Person defined in paragraph 7(f) and 7(g), counsel of record for the party to the Action proposing to make such disclosure shall ensure that a copy of this Stipulation and Order has been delivered to such person, and that its terms have been explained to such person and shall require such person to sign an Undertaking in a form substantially identical to

5

Exhibit A hereto, except that witnesses at depositions and trial may be shown confidential information regardless of whether they have signed Exhibit A. The executed Undertaking shall be maintained by counsel making such disclosure and shall not be discoverable except upon order of the Court for good cause shown.

9. Nothing herein shall preclude the dissemination of documents containing Confidential Information among plaintiffs' counsel and their paralegals, clerical and secretarial employees.

10. When affidavits, briefs, memoranda or other documents containing or disclosing Confidential Information are filed with the Court, they shall be placed in sealed envelopes or other appropriately sealed containers which shall bear the caption of the Action and a notation to the effect that the information contained therein is Confidential and is subject to this Stipulation and Order, and may be examined only in accordance with the terms of the Stipulation and Order.

11. Any Party to the Action to whom Confidential Information is produced or disclosed may object at any time to the "Confidential" designation. The objection shall be made in writing to counsel for the producing Party. Counsel shall confer in good faith in an effort to resolve any dispute concerning such designation. If the objection cannot be resolved by agreement within ten (10) business days of the date of service of the written objection, the designating Party shall move the Court to confirm the "Confidential" designation. Failure to make such motion in a timely fashion shall constitute a waiver of the "CONFIDENTIAL" designation.

12. Counsel for any party to the Action shall not be obligated to challenge the

propriety of any Confidential designation. Failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

13. Nothing herein shall prevent any party to the Action who has received Confidential Information pursuant to this Stipulation and Order from producing such Confidential Information in response to a lawful subpoena or other compulsory process; provided that any party receiving such subpoena or process (i) shall as soon as reasonably practical give notice thereof to the producing Party by telephone or facsimile and shall furnish the producing Party with a copy of the subpoena or other compulsory process so as to afford the producing Party a reasonable opportunity to seek a protective order; and (ii) if application for a protective order is made promptly before the return date, shall not produce such Confidential Information prior to receiving a court order or the consent of the producing Party.

14. Compliance with the terms of this Stipulation and Order shall not operate as an admission that any particular document or information is or is not confidential.

15. The entry of this Stipulation and Order does not waive any rights the parties to the Action may have to object on any grounds to the use of any Confidential Information as evidence at any trial or hearing in this Action. Disclosure of any Confidential Information by any person or in any manner not permitted by this Stipulation and Order shall not result in a waiver of or otherwise limit the right of the Parties to enforce the provisions of this Stipulation and Order. Nothing contained herein shall constitute a waiver by any party to the Action of the right to claim that information designated by any Party as Confidential is not, in fact, confidential.

7

16. Nothing contained herein shall operate to prevent any Party to the Action from disclosing its own Confidential Information.

17. Nothing contained herein shall impose any restrictions on the use or disclosure by a Party to the Action of documents or information obtained independently of the discovery proceedings in this Action.

18.    (a) All Confidential Information and all copies thereof shall be destroyed or returned to counsel for the producing Party within ninety (90) days after the conclusion of the Action or Actions to which the recipient of the information is a party, including appeals, except that counsel of record may retain for their files copies of any of their own work product, correspondence, pleadings, briefs and exhibits, any other court filings, deposition transcripts and exhibits, or hearing or other official transcripts and exhibits, which contain Confidential Information.

(b) Counsel shall continue to be subject to the terms of this Stipulation and Order with regard to any such retained documents.

19. Nothing herein shall affect the producing Party's obligation to show "good cause" for the protection of information under Fed. R. Civ. P. 26(c) in the event there is a dispute with respect to such producing Party's designation of documents or information as confidential.

20. Any party to the Action may apply to the Court for an order modifying this Stipulation and Order, and nothing in this Stipulation and Order shall be deemed to prevent such application. This Stipulation and Order may also be modified with the consent of all parties hereto or may be modified by the Court on its own motion, and

8

nothing in this Stipulation and Order shall be deemed to prevent such modification.

_____

Dated: May 16, 2005 STIPULATED AND AGREED TO BY:

**LEAD PLAINTIFFS HANS A. QUAAK,**
**ATTILIO PO and KARL LEIBINGER**
By their counsel,
/s/ Glen DeValerio
Glen DeValerio, BBO # 122010 (gdevalerio@bermanesq.com)
Jeffrey C. Block, BBO #600747
Patrick T. Egan, BBO # 637477
Nicole R. Starr, BBO #654848
BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300


SHALOV STONE & BONNER
Lee S. Shalov
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340


CAULEY BOWMAN CARNEY & WILLIAMS
Curtis L. Bowman,
Allen Carney
11001 Executive Center Drive, Suite 200
P.O. Box 25438
Little Rock, Arkansas 722125438
Telephone: (501) 312-8500

9

**DEFENDANT DEXIA BANK BELGIUM**
By its counsel,
/s/ Peter Saparoff
Peter Saparoff, BBO # 441740 (psaparoff@mintz.com)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000


CLIFFORD CHANCE US LLP
James B. Weidner
Jeff E. Butler
31 West 52nd Street
New York, NY 10019
Telephone: (212) 878-8000


**PLAINTIFFS STONINGTON PARTNERS,
INC., STONINGTON CAPITAL
APPRECIATION 1994 FUND L.P. AND
STONINGTON HOLDINGS L.L.C.**
By their counsel,
/s/ Richard J. Grahn
Richard J. Grahn, BBO #206620 (rgrahn@lgllp.com)
Charles P. Kindregan, BBO #554947
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2800


BERNSTEIN LITOWITZ BERGER &
GROSSMAN LLP
Max W. Berger
Steven B. Singer
Erik Sandstedt
Javier Bleichmar
Avi Josefson
1285 Avenue of the Americas
New York, NY 10019

10

Telephone: (212) 554-1400

**PLAINTIFFS GARY B. FILLER and**
**LAWRENCE PERLMAN, Trustees of the**
**TRA Rights Trust**
By their counsel,
/s/ Gregory P. Joseph
Gregory P. Joseph, N.Y. Atty Reg. #1645852
(gjoseph@josephnyc.com)
GREGORY P. JOSEPH LAW OFFICES LLC
Third Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 407-1200

KOTIN, CRABTREE & STRONG
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone: (617) 227-7031

**PLAINTIFFS JANET BAKER, JAMES**
**BAKER, JKBAKER LLC and JMBAKER LLC,**
By their counsel,
/s/ Terrence K. Ankner
Terrence K. Ankner, BBO #552469 (tka@anknerlaw.com)
PARTRIDGE, ANKNER & HORSTMAN LLP
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999

BOIES SCHILLER & FLEXNER
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118

11

REED SMITH LLP
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

*STIPULATION APPROVED AND ENTERED AS AN ORDER OF THE COURT*,

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

May 31, 2005.

12

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER, on behalf of
themselves and those similarly situated,
     Plaintiffs,
v.                                                    Civil Action No.: 03-11566 (PBS)

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),
     Defendants.

_____

STONINGTON PARTNERS, INC., a Delaware
Corporation, STONINGTON CAPITAL
APPRECIATION laware limited liability company,
     Plaintiffs,
v.                                                    Civil Action No.: 04-10411 (PBS)

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),
     Defendants.

_____

GARY B. FILLER and LAWRENCE
PERLMAN, Trustees of the TRA Rights Trust,
     Plaintiffs,
v.                                                    Civil Action No.: 04-10477 (PBS)

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),
     Defendants.

_____

14

JANET BAKER and JAMES BAKER,
JKBAKER LLC and JMBAKER LLC,
     Plaintiffs,

v.                                 Civil Action No.: 04-10501 (PBS)

DEXIA, S.A. and DEXIA BANK BELGIUM
(formerly known as ARTESIA BANKING
CORP., SA),
     Defendants.

## EXHIBIT A

## AGREEMENT TO BE BOUND BY
## CONFIDENTIALITY STIPULATION AND ORDER

1.    My name is _____.(Please print)

2.    I have read, understand and will comply with the terms of the Stipulation and Order entered in this Action.

3.    I will not use any Confidential Information, as defined in the Stipulation and Order, for any purpose other than assisting plaintiffs/defendants (circle one) and their counsel in the preparation and presentation of their case.

4.    I will not in any way disclose, discuss or exhibit any Confidential Information, except to those persons whom I know are authorized to have access to such Confidential Information under the terms of the Stipulation and Order.


                                      _____
                                         Signature

DATED: _____.

15