# EXHIBIT C

Westlaw.

247 F.Supp.2d 425                                                                    Page 1
247 F.Supp.2d 425, RICO Bus.Disp.Guide 10,436, Fed. Sec. L. Rep. P 92,286
**(Cite as: 247 F.Supp.2d 425)**

▶

Briefs and Other Related Documents

United States District Court,S.D. New York.
Gary B. FILLER and Lawrence Perlman, Trustees of
the TRA Rights Trust Plaintiffs,
v.
HANVIT BANK, Shinhan Bank, and Chohung Bank
Defendants.
**No. 01 Civ. 9510(MGC).**

Feb. 26, 2003.

Investor sued three Korean banks, alleging securities
fraud under § 10(b) and common law, aider and
abettor liability under common law, conspiracy to
commit fraud, and violation of Racketeer Influenced
and Corrupt Organizations Act (RICO), in connection
with alleged sham agreements, between banks and
Korean subsidiary of Belgium parent, that allegedly
inflated earnings of subsidiary and parent, shares of
which were acquired by investor. Banks moved to
dismiss. The District Court, Cedarbaum, J., held that:
(1) banks were immune from suit under Foreign
Sovereign Immunities Act (FSIA); (2) in any event
investor failed to state claim of securities fraud under
§ 10(b) or common law; (3) investor did not state
claim for aider and abettor fraud; (4) investor did not
state claim of conspiracy to commit fraud; and (5)
investor did not state claim under Racketeer
Influenced and Corrupt Organization Act (RICO).

Complaint dismissed.

West Headnotes

**[1] International Law 221 ⌘10.34**

221 International Law
    221k10.29 Actions Against Sovereign or
Instrumentality
        221k10.34 k. Corporations and Other
Instrumentalities. Most Cited Cases
Two Korean banks made prima facie showing that
they were "foreign states," entitled to immunity from
suit under Foreign Sovereign Immunities Act (FSIA),
by establishing they were 70% owned by Korean
Deposit Insurance Corporation (KDIC), an agency of
Republic of Korea. 28 U.S.C.A. § 1603(b).

**[2] International Law 221 ⌘10.33**

221 International Law
    221k10.29 Actions Against Sovereign or
Instrumentality
        221k10.33 k. Extent and Effect of Immunity.
Most Cited Cases
Exception to immunity from suit, afforded by
Foreign Sovereign Immunities Act (FSIA), when
otherwise immune entity engaged in commercial act
outside of United States causing direct effect in
United States, did not apply to Korean banks
supplying false information to auditors in Korea,
allegedly contributing to creation of misleading
financial statements of Belgian corporation, securities
of which were acquired by American investor;
actions of Korean banks were too remote to have
necessary direct effect in United States. 28 U.S.C.A.
§ 1605(a)(2).

**[3] Federal Civil Procedure 170A ⌘636**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and
Particularity
                170Ak636 k. Fraud, Mistake and
Condition of Mind. Most Cited Cases
Investors failed to state with particularity claims of §
10(b) and New York common law fraud, against
three Korean banks alleged to have entered into sham
agreements with Korean subsidiaries, which allowed
Belgian parent to increase price at which its shares
were obtained by American acquirer; fraudulent
nature of transactions was not explained, and many
allegations involved post-acquisition activities that
could not have been relied upon in consummating
transaction. Securities Exchange Act of 1934, §
10(b), 15 U.S.C.A. § 78j; 28 U.S.C.A. 1605(a)(2);
Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⌘636**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and
Particularity
                170Ak636 k. Fraud, Mistake and
Condition of Mind. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Fraud 184** 🗝30

<u>184</u> Fraud
    <u>184I</u> Deception Constituting Fraud, and Liability Therefor
        <u>184k30</u> k. Persons Liable. <u>Most Cited Cases</u>
In order to plead the elements of aiding and abetting fraud under New York law, plaintiffs must allege with particularity facts showing (1) the existence of a fraud, (2) defendants' knowledge of the fraud, and (3) that the defendant provided substantial assistance to advance the fraud's commission.

**[5] Fraud 184** 🗝30

<u>184</u> Fraud
    <u>184I</u> Deception Constituting Fraud, and Liability Therefor
        <u>184k30</u> k. Persons Liable. <u>Most Cited Cases</u>
In order to allege requisite substantial assistance by aider and abettor, for claim of aider and abettor liability for fraud under New York law, complaint must allege that acts of aider and abettor proximately caused harm to plaintiff on which primary liability was predicated.

**[6] Conspiracy 91** 🗝9

<u>91</u> Conspiracy
    <u>91I</u> Civil Liability
        <u>91I(A)</u> Acts Constituting Conspiracy and Liability Therefor
            <u>91k9</u> k. Conspiracy to Defraud. <u>Most Cited Cases</u>
Conspiracy to defraud, under New York law, requires in addition to an underlying fraud claim, (1) agreement among two or more parties, (2) common objective, (3) acts in furtherance of objective and (4) knowledge.

**[7] Banks and Banking 52** 🗝100

<u>52</u> Banks and Banking
    <u>52III</u> Functions and Dealings
        <u>52III(A)</u> Banking Franchises and Powers, and Their Exercise in General
            <u>52k100</u> k. Torts. <u>Most Cited Cases</u>
Investors in securities of Belgian corporation were precluded from bringing claim against three Korean banks, alleging they aided and abetted perpetuation of fraud in New York law, by failing to show banks' alleged contribution to fraudulent earnings statements of corporation's Korean subsidiaries, allegedly causing fraudulent financial statements of corporation upon which American investor acquiring shares of corporation claimed to have relied.

**[8] Conspiracy 91** 🗝18

<u>91</u> Conspiracy
    <u>91I</u> Civil Liability
        <u>91I(B)</u> Actions
            <u>91k18</u> k. Pleading. <u>Most Cited Cases</u>
Investor in securities of Belgian corporation were precluded from bringing suit against three Korean banks, alleging they conspired to commit fraud against investor, by failure to allege any agreement to conspire between banks and corporation, or acts in furtherance of any conspiracy.

**[9]   Racketeer   Influenced   and   Corrupt Organizations 319H** 🗝70

<u>319H</u>   Racketeer   Influenced   and   Corrupt Organizations
    <u>319HI</u> Federal Regulation
        <u>319HI(B)</u> Civil Remedies and Proceedings
            <u>319Hk68</u> Pleading
                <u>319Hk70</u> k. Racketeering or Criminal Activity; Predicate Acts. <u>Most Cited Cases</u>
Failure to plead predicate acts of mail fraud, wire fraud, and aiding and abetting securities fraud, precluded claim that three Korean banks violated Racketeer Influenced and Corrupt Organization Act (RICO) by entering into sham agreements with Korean subsidiary of Belgian parent, inflating subsidiary's earnings and those of parent, whose shares were acquired by American investor. <u>18 U.S.C.A. § 1961</u> et seq.

***427** Gregory P. Joseph Law Offices LLC, New York, NY, By: <u>Gregory P. Joseph</u>, <u>Pamela Jarvis</u>, <u>Honey L. Kober</u>, <u>Sandra M. Lipsman</u>, <u>Susan M. Davies</u>, <u>Douglas J. Pepe</u>, for Plaintiffs.
Squire, Sanders & Dempsey LLP, New York, NY, By:   <u>Daniel L. Brockett</u>, <u>Mark C. Dosker</u>, for Defendant Chohung Bank.
Sidley, Austin, Brown & Wood LLP, New York, NY, By: <u>Steven M. Bierman</u>, <u>Alan M. Unger</u>, <u>Elizabeth Storch</u>, <u>Allen C. Kim</u>, for Defendant Hanvit Bank, (of counsel).
Kelley Drye & Warren LLP, New York, NY, By: <u>Thomas B. Kinzler</u>, <u>William A. Escobar</u>, for Defendant Shinhan Bank.

*OPINION*
<u>CEDARBAUM</u>, District Judge.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

247 F.Supp.2d 425                                                                      Page 3
247 F.Supp.2d 425, RICO Bus.Disp.Guide 10,436, Fed. Sec. L. Rep. P 92,286
(Cite as: 247 F.Supp.2d 425)

Plaintiffs Filler and Perlman are trustees of the TRA Trust, the sole successor in interest to Seagate Technology, Inc. ("Seagate"). This action arises out of the transfer by Seagate of its shares in Dragon Systems, Inc. to Lernout & Hauspie Speech Products NV ("L & H Belgium"), in exchange for shares in L & H Belgium. That transaction took place on June 7, 2000. Defendants are three Korean banks which plaintiffs allege engaged in a scheme to defraud investors in the shares of L & H Belgium by entering into sham agreements with L & H Belgium's Korean subsidiary, Lernout & Hauspie Korea ("L & H Korea"), which enabled L & H Belgium to inflate its revenues and assets. Plaintiffs assert six claims: (1) securities fraud in violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5; (2) racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (3) conspiracy to engage in racketeering in violation of RICO, 18 U.S.C. § 1962(d); (4) common law fraud; (5) aiding and abetting common law fraud; and (6) conspiracy to defraud. All three defendants move to dismiss the claims against them under Fed.R.Civ.P. 12(b)(6) for failure to state a claim and Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. Additionally, defendants Hanvit Bank ("Hanvit") and Chohung Bank ("Chohung") move to dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601, et seq.

For the reasons that follow, defendants' motions to dismiss under Rule 9(b) are granted, with leave to plaintiffs to amend the complaint with respect to Shinhan Bank ("Shinhan") by March 31, 2003. The claims against Hanvit and Chohung are dismissed under the Foreign Sovereign Immunities Act.

### Lack of Jurisdiction Under the FSIA

[1] As an initial matter, defendants Hanvit and Chohung argue that the court lacks jurisdiction over them because they are foreign states within the meaning of the FSIA. 28 U.S.C. § 1604 provides immunity to "foreign state [s]" subject to certain exceptions set forth in sections 1605 through 1607. Section 1603(a) provides, in relevant part, that "[a] 'foreign state' ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." Subsection (b) states:
An 'agency or instrumentality of a foreign state' means any entity-
(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
*428 (3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country. 28 U.S.C. § 1603(b).

A defendant need make only a prima facie showing that it is a foreign state. Once a defendant makes such a showing, it is presumptively immune and the burden shifts to the plaintiff to show that a statutory exception to immunity applies. See Cargill Int'l SA v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir.1993).

Chohung and Hanvit are corporations organized under the laws of the Republic of Korea, as required by the first and third prongs of the definition of a foreign state. The main dispute between the parties with respect to immunity is whether Chohung and Hanvit meet the second prong of the definition because they are owned by the Korean government through the Korean Deposit Insurance Corporation ("KDIC").[FN1] The judges of this court are split on whether such "tiering" of entities is allowed under the FSIA. Compare Musopole v. South African Airways, 172 F.Supp.2d 443, 445-47 (S.D.N.Y.2001) (holding tiering permissible); Lehman Bros. Commercial Corp. v. Minmetals Int'l, Non-Ferrous Metals Trading Co., 169 F.Supp.2d 186, 190-91 (S.D.N.Y.2001) (same); Parex Bank v. Russian Savings Bank, 81 F.Supp.2d 506, 507 (S.D.N.Y.2000) (same); with Bank of China v. NBM, 2002 WL 1072235 (S.D.N.Y.2002) (holding tiering impermissible); In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 198 F.Supp.2d 420 (S.D.N.Y.2002) (same). Determination of this issue turns on whether the term "foreign state" under Section 1603(b)(2) includes "agencies or instrumentalities of a foreign state" or is limited to foreign nations themselves. The Second Circuit has not yet ruled on this question.

FN1. The KDIC owned more than 70% of the stock of each bank at the time of the allegedly fraudulent conduct of these banks, as well as at the time this action was commenced. Moreover, the KDIC continues to own the same stock interest in both Chohung and Hanvit.

Those judges allowing tiering base this conclusion on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

247 F.Supp.2d 425                                                                                          Page 4
247 F.Supp.2d 425, RICO Bus.Disp.Guide 10,436, Fed. Sec. L. Rep. P 92,286
(Cite as: 247 F.Supp.2d 425)

an analysis of the legislative history and purpose of the FSIA. Judges holding tiering impermissible have attempted to read the ambiguity out of the words of Section 1603, and are also concerned that a foreign government's interest in a defendant might become very remote if tiering is taken to its furthest extremes. It is important to note that in this case, the Korean government owns a large majority of the shares of Chohung and Hanvit.     While this ownership is through an intermediate entity, the KDIC, the government's ownership interest in the banks is not diluted.     The KDIC was established by a Korean statute-the Depositors Protection Act. It performs a function traditionally performed by governments: "to contribute to protecting depositors and maintaining the stability of the financial system by efficiently operating a deposit insurance system in order to cope with a situation in which a financial institution is unable to pay its depositors due to its bankruptcy." Depositors Protection Act, Article 1 (translated). Directors of the KDIC are appointed by the Korean Ministry of Finance and Economy and the president of the KDIC is appointed by the President of the Republic of Korea.     The Ministry of Finance and Economy oversees many of the KDIC's operations. Thus, the KDIC is an "organ" of the Korean government within the meaning of Section 1603(b)(2) and it would appear that the treasury of the Republic of Korea would be affected by a judgment against banks owned by the KDIC.

*429 This is not the hypothetical case in which a foreign government owns only 51% of the intermediate entity and the intermediate entity, in turn, owns 51% of the defendant.     In this case, an organ of the Korean government owns more than 70% of Chohung and Hanvit.   I adopt the reasoning of my colleagues who permit tiering.   Because the statutory language is ambiguous, I do not subscribe to efforts to treat the words as if they were crystals. Defendants have therefore satisfied their burden of making a prima facie showing that they are foreign states within the meaning of Section 1603.

### Exception to Immunity

[2]  Plaintiffs seek to overcome the prima facie showing made by Chohung and Hanvit.   They argue that these banks lose their immunity under the "commercial activity" exception of 28 U.S.C. § 1605(a)(2).   That section provides:
(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-

...
(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state;  or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere;  or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

It is not disputed that the acts of Chohung and Hanvit complained of constitute a "commercial activity." However, it is also undisputed that the commercial activity took place solely in Korea.   Therefore, this action would not fall under the commercial activity exception unless the acts complained of caused a "direct effect" in the United States.  "[A]n effect is direct if it follows as the immediate consequence of the defendant's activity."  _Republic of Argentina v. Weltover, Inc._, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (internal quotations omitted).   In this case, the claims against Chohung and Hanvit as primary wrongdoers arise out of allegedly false statements made by the banks to L & H Belgium's auditors in Korea.   These statements are alleged to have been incorporated into audit reports and transmitted by the auditors to L & H Belgium and later to the plaintiffs in the form of financial statements provided by L & H Belgium to Seagate in connection with Seagate's acquisition of securities in the Belgian company.   These statements did not have a direct effect in the United States where Seagate received the stock of L & H Belgium.   Plaintiffs' financial loss is too remote from the acts of the Korean banks' in Korea to be considered the "immediate consequence" of such acts.   The claims against Chohung and Hanvit of aiding and abetting and conspiracy arise out of allegedly fraudulent banking agreements entered into in Korea between the banks and L & H Korea.   These agreements are even more remote from the acquisition by Seagate of the stock of L & H Belgium, and cannot be said to have had an immediate consequence in the United States.

Because plaintiffs have not shown that the commercial activities of Chohung and Hanvit in Korea had a direct effect in the United States, the claims arising out of those activities do not fall within the commercial activity exception to immunity. Therefore, the claims against Chohung and Hanvit are dismissed for lack of subject matter jurisdiction under the FSIA.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

247 F.Supp.2d 425                                                                Page 5
247 F.Supp.2d 425, RICO Bus.Disp.Guide 10,436, Fed. Sec. L. Rep. P 92,286
(Cite as: 247 F.Supp.2d 425)

### Failure to Plead Fraud with Particularity

[3] Although the claims against Chohung and Hanvit are dismissed for lack of **430** subject matter jurisdiction, the following analysis of the plaintiffs' claims applies to the claims made against all three defendants. Plaintiffs concede that it is appropriate to apply the law of New York to defendants' motions to dismiss. Therefore, I analyze plaintiffs' common law claims under New York law.

### Federal Securities Fraud and Common Law Fraud Claims

To state a claim under Section 10(b) or Rule 10b-5, "plaintiffs must prove that [defendants] (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re Int'l Bus. Machs. Corporate Sec. Litig.,* 163 F.3d 102, 106 (2d Cir.1998). In order to state a common law fraud claim under New York law, a plaintiff must allege: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Boule v. Hutton,* 138 F.Supp.2d 491 (S.D.N.Y.2001).

Rule 9(b) requires a party averring fraud or mistake to state with particularity "the circumstances constituting [the] fraud or mistake." Fed.R.Civ.P. 9(b). The "particularity requirement" contained in Rule 9(b) is substantial. *Rich v. Maidstone Financial, Inc.,* 2002 WL 31867724, (S.D.N.Y.2002). "[A] complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); see also *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) Additionally, when fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of as to each defendant. *Rich,* 2002 WL 31867724 at *10 (internal quotations omitted). To meet the pleading requirements of Rule 9(b), a complaint may not simply "clump [ ] defendants together in vague allegations." *Id.* (quoting *In re Blech Securities Litigation,* 928 F.Supp. 1279, 1294 (S.D.N.Y.1996). Rule 9(b) also requires a plaintiff to adequately allege that the defendant's statements were the proximate cause of the plaintiff's injuries. *Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.,* 2003 WL 169801, *21 (S.D.N.Y.2003).

In this case, from the allegations of the complaint, it is impossible to tell whether any of the bank transactions vaguely described constitute fraud, and if so, who was the object of the fraud. The acquisition of securities at issue took place on June 7, 2000. For the plaintiffs to allege reliance, as required for actionable fraud under both federal and common law, plaintiffs must allege with particularity that defendants made false statements *prior to* that date. Here, plaintiffs allege that defendants made "false confirmations" in Korea to L & H Belgium's auditors that loans to L & H Korea were without recourse, when in fact they were with recourse. But plaintiffs have not specified a confirmation by any defendant that was made *prior to* the acquisition complained of or shown to Seagate before its acceptance of stock of L & H Belgium.

For the same reasons, the amended complaint does not allege with particularity that defendants made any statements that proximately caused plaintiffs' injuries or made "in connection with" the June 7, **431** 2000 transaction as required by Section 10(b) of the Exchange Act.

### Common Law Aiding and Abetting and Conspiracy Claims

[4][5][6] Plaintiffs' claims of aiding and abetting common law fraud and conspiracy to defraud are subject to the same pleading requirements under Rule 9(b) as their claims of common law fraud. *See Spira v. Curtin,* 2001 WL 611386, *4 (S.D.N.Y.2001); *Renner v. Chase Manhattan Bank,* 2000 WL 781081, *5 (S.D.N.Y.2000). In order to plead the elements of aiding and abetting fraud under New York law, plaintiffs must allege with particularity facts showing (1) the existence of a fraud; (2) defendants' knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission. *Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000). "In alleging the requisite 'substantial assistance' by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm to the [plaintiff] on which the primary liability is predicated." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

247 F.Supp.2d 425                                                                                  Page 6
247 F.Supp.2d 425, RICO Bus.Disp.Guide 10,436, Fed. Sec. L. Rep. P 92,286
**(Cite as: 247 F.Supp.2d 425)**

F.2d 57, 62 (2d Cir.1985). "Allegations of a 'but for' causal relationship are insufficient." *Id.* at 63. Aider and abettor liability will not attach where the injury was not a direct or reasonably foreseeable result of the defendant's conduct. *Id.* Under New York law, an allegation of conspiracy to defraud does not excuse a plaintiff from pleading with particularity facts showing an underlying fraud claim. Additionally, conspiracy to defraud requires: "(1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective and (4) knowledge." *Diamond State Ins. Co. v. Worldwide Weather Trading LLC,* 2002 WL 31819217 (S.D.N.Y.2002).

[7][8] Plaintiffs allege that the primary fraud that defendants aided and abetted and/or conspired to commit was the issuance of false financial statements by L & H Belgium. From the allegations of the complaint, it is impossible to decipher the connection between defendants' agreements with L & H Korea, and the issuance of false financial statements by L & H Belgium. Therefore, with respect to plaintiffs' aiding and abetting claims, plaintiffs have failed to plead with particularity how defendants provided substantial assistance to L & H Belgium in connection with L & H Belgium's issuance of the false financial statements and how that conduct proximately caused plaintiffs' injury. With respect to the conspiracy claims, plaintiffs have failed to allege with particularity any agreement between any of the defendants and L & H Belgium, and have not specified any acts of the defendants that were in furtherance of the objectives of that agreement. Nor does the amended complaint elucidate how that conduct proximately or reasonably foreseeably caused injury to plaintiffs.

**RICO Claims**

[9] The requirements of Rule 9(b) also apply to plaintiffs' RICO claims with predicate acts of mail fraud, wire fraud and aiding and abetting securities fraud. *See Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172 (2d Cir.1999). Apart from other problems pointed to by defendants, plaintiffs' RICO claims are deficient in particularity. Plaintiffs allege that each defendant knew and intended that false confirmations given to L & H Belgium's auditors and agreements defendants entered into with L & H Korea would cause L & H Belgium to misrepresent its financial condition to investors in the United States. Plaintiffs further allege that each defendant knew and intended that L & H Belgium would communicate these

misrepresentations by *432 means of mail and wire. However, all of these allegations are made on information and belief, and plaintiffs do not specify with particularity the basis of their belief for any of these allegations. As discussed above, it is impossible to understand from the vague allegations of this complaint how the alleged false confirmations could serve as the predicate acts, since plaintiffs do not allege with particularity that these confirmations were issued prior to the acquisition of L & H Belgium stock by Seagate. Furthermore, it is difficult to see how any of the defendants intended that L & H Belgium take *any* action, since the relationship between the defendant Korean Banks and L & H Belgium has not been explained with any particularity. Finally, as discussed above, plaintiffs have failed to plead with particularity the elements of aiding and abetting securities fraud. Even if aiding and abetting securities fraud were a predicate act under RICO, plaintiffs' failure to plead its elements with the requisite particularity renders it an insufficient predicate act.

**Conclusion**

Plaintiffs have already been given leave to file an amended complaint. The amended complaint is deficient in particularity and is therefore dismissed under Rule 9(b). A second amended complaint may be filed by March 31, 2003 setting out with the required particularity plaintiffs' claims against Shinhan. As discussed above, the claims against Chohung and Hanvit are dismissed.

SO ORDERED.

S.D.N.Y.,2003.
Filler v. Hanvit Bank
247 F.Supp.2d 425, RICO Bus.Disp.Guide 10,436, Fed. Sec. L. Rep. P 92,286

Briefs and Other Related Documents (Back to top)

• 2004 WL 3577495 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Chohung Bank in Support of Motion to Dismiss the Filler Third Amended Complaint and in Support of Motion to Dismiss the Baker Amended Complaint (Mar. 12, 2004) Original Image of this Document (PDF)
• 2003 WL 24186011 (Trial Motion, Memorandum and Affidavit) Memorandum of Chohung Bank in Support of Motion to Dismiss the Filler Third Amended Complaint and in Support of Motion to Dismiss the Baker Amended Complaint (Dec. 3,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

247 F.Supp.2d 425
247 F.Supp.2d 425, RICO Bus.Disp.Guide 10,436, Fed. Sec. L. Rep. P 92,286
**(Cite as: 247 F.Supp.2d 425)**

2003)
• 2003 WL 24186012 (Trial Motion, Memorandum and Affidavit) Defendant Shinhan Bank's Memorandum of Law in Support of its Motion to Dismiss the Third Amended Complaint (Dec. 3, 2003)
• 2003 WL 24186013 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Hanvit Bank's Motion to Dismiss the Filler Plaintiffs' Third Amended Complaint and the Baker Plaintiffs' First Amended Complaint (Dec. 3, 2003)
• 2003 WL 24186010 (Trial Pleading) Third Amended Complaint (Oct. 16, 2003)
• 2003 WL 23951517 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss the Second Amended Complaint (Jun. 23, 2003)
• 2003 WL 23951515 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Shinhan Bank's Motion to Dismiss the Second Amended Complaint (Jun. 13, 2003)
• 2003 WL 23951514 (Trial Motion, Memorandum and Affidavit) Defendant Shinhan Bank's Memorandum of Law in Support of Its Motion to Dismiss the Second Amended Complaint (May. 15, 2003)
• 2003 WL 23951601 (Trial Pleading) Second Amended Complaint (Mar. 31, 2003)
• 2002 WL 32768772 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Reply Memorandum in Further Support of Its Motion to Dismiss the Amended Complaint (Jul. 18, 2002)
• 2002 WL 32768773 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Hanvit Bank's Motion to Dismiss the Amended Complaint (Jul. 18, 2002)
• 2002 WL 32768774 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss (Jul. 18, 2002)
• 2002 WL 32768768 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Memorandum in Support of Its Motion to Dismiss the Amended Complaint (Jun. 12, 2002)
• 2002 WL 32768769 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismissthe Amended Complaint (Jun. 12, 2002)
• 2002 WL 32768771 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Hanvit Bank's Motion to Dismiss the Amended Complaint (Jun. 12, 2002)
• 2002 WL 32768886 (Trial Pleading) Amended Complaint (May. 16, 2002)
• 2002 WL 32768775 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Reply Memorandum in Support of Its Motion to Dismiss (Apr. 16, 2002)
• 2002 WL 32768763 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Memorandum of Law in Support of Its Motion to Dismiss (Apr. 11, 2002)
• 2002 WL 32768765 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Hanvit Bank's Motion to Dismiss the Complaint (Apr. 11, 2002)
• 2002 WL 32768767 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss (Apr. 11, 2002)
• 2002 WL 32768761 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Mar. 21, 2002)
• 2002 WL 32768752 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss (Feb. 04, 2002)
• 2002 WL 32768757 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Hanvit Bank's Motions to Dismiss the Complaint (Feb. 04, 2002)
• 2001 WL 34727694 (Trial Pleading) Complaint (Oct. 29, 2001)
• 1:01cv09510 (Docket) (Oct. 29, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22110773 (S.D.N.Y.),   RICO Bus.Disp.Guide 10,539
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents

United States District Court,S.D. New York.
Gary B. FILLER and Lawrence Perlman, Trustees of
the Tra Rights Trust Plaintiffs,
v.
HANVIT BANK, Shinhan Bank, and Chohung Bank
Defendants.
Janet BAKER and James Baker, Jkbaker LLC and
Jmbaker LLC, Plaintiffs,
v.
HANVIT BANK, Shinhan Bank, and Chohung Bank
Defendants.
**No. 01 Civ. 9510(MGC), 02 Civ. 8251(MGC).**

Sept. 12, 2003.

Investors brought actions alleging that banks engaged
in scheme to defraud them. On banks' motions to
dismiss, the District Court, Cedarbaum, J., held that:
(1) investors failed to identity person who allegedly
made misrepresentation on part of banks, and (2)
investors failed to plead their fraud claims with
requisite specificity.

Motions granted.

West Headnotes

**[1] Banks and Banking 52 ⚖100**

52 Banks and Banking
   52III Functions and Dealings
     52III(A) Banking Franchises and Powers, and
Their Exercise in General
      52k100 k. Torts. Most Cited Cases
Under New York law, banks' alleged false
confirmation to auditors that banks' loans to company
were without recourse did not constitute common law
fraud on investors, absent identification of person
who purportedly made statement.

**[2] Conspiracy 91 ⚖18**

91 Conspiracy
   91I Civil Liability
     91I(B) Actions
      91k18 k. Pleading. Most Cited Cases

**Federal Civil Procedure 170A ⚖636**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
     170AVII(A) Pleadings in General
      170Ak633 Certainty, Definiteness and
Particularity
        170Ak636 k. Fraud, Mistake and
Condition of Mind. Most Cited Cases
Investors failed to plead claims against parent bank
and its subsidiary for aiding and abetting common
law fraud and conspiracy with requisite specificity,
where investors failed to indicate which party made
which statements at what time, and did not explain
connection between investors' agreements with
subsidiary and issuance of false financial statements
by parent. Fed.Rules Civ.Proc.Rule 9(b), 28
U.S.C.A.

Gregory P. Joseph Law Offices LLC, New York,
NY, By: Gregory P. Joseph, Pamela Jarvis, Honey L.
Kober, Sandra M. Lipsman, Susan M. Davies,
Douglas J. Pepe, for the Filler Plaintiffs.
Boies, Schiller & Flexner, LLP, New York, NY, By:
Steven Ian Froot, Karen C. Dyer, George R. Coe,
Gregory S. Slemp, for the Baker Plaintiffs.
Squire, Sanders & Dempsey LLP, New York, NY,
By: Daniel L. Brockett, Mark C. Dosker, for
Defendant Chohung Bank.
Sidley, Austin, Brown & Wood LLP, New York, NY,
By: Steven M. Bierman, Alan M. Unger, Elizabeth
Storch, Allen C. Kim, for Defendant Hanvit Bank, of
counsel.
Kelley Drye & Warren LLP, New York, NY, By:
Thomas B. Kinzler, William A. Escobar, for
Defendant Shinhan Bank.

*OPINION*

CEDARBAUM, J.
**\*1** Defendants move to dismiss the complaints in
these two related actions under Fed.R.Civ.P. 12(b),
Fed.R.Civ.P. 9(b) and on the ground of *forum non
conveniens*. For the reasons that follow, the motions
to dismiss are granted.

Plaintiffs Filler and Perlman are trustees of the TRA
Trust, the sole successor in interest to Seagate
Technology, Inc. ("Seagate"). Seagate owned
approximately $170 million worth of shares in
Dragon Systems, Inc. Plaintiffs Janet and James

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 22110773 (S.D.N.Y.),   RICO Bus.Disp.Guide 10,539
**(Cite as: Not Reported in F.Supp.2d)**

Baker, JKBaker LLC and JMBaker LLC ("the Bakers") collectively owned a majority of the shares of Dragon Systems, Inc. These actions arise out of the transfers by Seagate and the Bakers of their shares in Dragon Systems to Lernout & Hauspie Speech Products NV ("L & H Belgium"), in exchange for shares in L & H Belgium. Both transactions took place on June 7, 2000. Defendants are three Korean banks which plaintiffs allege engaged in a scheme to defraud investors in the shares of L & H Belgium by entering into sham agreements with L & H Belgium's Korean subsidiary, Lernout & Hauspie Korea ("L & H Korea"). L & H Belgium issues consolidated financial statements that incorporate financial data of its subsidiaries. The complaints allege that sham agreements between defendant banks and L & H Korea enabled L & H Belgium to issue consolidated financial statements containing falsely inflated revenue figures.

The Filler plaintiffs assert six claims: (1) securities fraud in violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5; (2) racketeering in violation of the Racketter Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (3) conspiracy to engage in racketeering in violation of RICO, 18 U.S.C. § 1962(d); (4) common law fraud; (5) aiding and abetting common law fraud; and (6) conspiracy to defraud.

The Baker plaintiffs assert only state law claims: (1) common law fraud; (2) aiding and abetting common law fraud; (3) conspiracy to defraud; and (4) negligent misrepresentation.

On February 27, 2003 I granted the defendants' motion to dismiss the first amended complaint in the Filler action because the Filler plaintiffs failed to plead their claims with the particularity required by Fed. R. Civ. P 9(b). The Filler plaintiffs have filed a second amended complaint.

### Primary Fraud and RICO Claims

On a motion to dismiss, a federal court must accept as true all factual allegations of the complaint, and draw all reasonable inferences in favor of the plaintiffs. King v. Simpson, 189 F.3d 284, 287 (2d Cir.1999). A complaint may be dismissed under Fed.R.Civ.P. 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir.1996) (internal quotes omitted).

In open court on June 26, 2003, I dismissed the Filler plaintiffs' RICO and 10(b) claims. The 10(b) claims were dismissed because the Filler plaintiffs failed to identify a representation made to them by any defendant or a representation made to the them and attributed to any defendant. For the same reason, the Filler and Baker common law fraud claims are dismissed.

*2 Although defendants assert that Korean law applies, the Filler plaintiffs assert that California law applies and the Baker plaintiffs assert that Massachusetts law applies, no party has argued that the laws of any of these jurisdictions differs from the law of New York with respect to the claims at issue. Furthermore, all of the parties have focused on New York law in their briefs.

In order to state a fraud claim under New York law, a plaintiff must allege: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." Boule v. Hutton, 138 F.Supp.2d 491 (S.D.N.Y.2001).

[1] Like the Filler 10(b) claim, the Filler and Baker common law fraud claims fail because the complaints do not allege that any defendant bank made a representation to any plaintiff or that a representation was made to any plaintiff and attributed to any defendant. Plaintiffs rely upon "false confirmations" made by defendants in Korea to L & H Belgium's auditors that certain loans to L & H Korea were without recourse, when in fact they were with recourse. However, it is not alleged that the auditors identified any defendant as the source of such information. The connection between plaintiffs' acquisition of stock in L & H Belgium and the representations by defendants to auditors in Korea is too attenuated to support a claim of common law fraud. Therefore the motions to dismiss the common law fraud claims are granted.

### Aiding and Abetting Common Law Fraud and Conspiracy to Defraud

The essential elements of aiding and abetting fraud under New York law are: (1) the existence of a fraud; (2) a defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission. *Wight v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 22110773 (S.D.N.Y.),   RICO Bus.Disp.Guide 10,539
**(Cite as: Not Reported in F.Supp.2d)**

*Bankamerica Corp.,* 219 F.3d 79, 91 (2d Cir.2000).
"In alleging the requisite 'substantial assistance' by
the aider and abettor, the complaint must allege that
the acts of the aider and abettor proximately caused
the harm to the [plaintiff] on which the primary
liability is predicated." *Bloor v. Carro, Spanbock,
Londin, Rodman & Fass,* 754 F.2d 57, 62 (2d
Cir.1985). "Allegations of a 'but for' causal
relationship are insufficient." *Id.* at 63. Aider and
abettor liability will not attach where the injury was
not a direct or reasonably foreseeable result of the
defendant's conduct. *Id.*

Conspiracy to defraud requires: "(1) an agreement
among two or more parties, (2) a common objective,
(3) acts in furtherance of the objective and (4)
knowledge." *Diamond State Ins. Co. v. Worldwide
Weather Trading LLC,* 2002 WL 31819217
(S.D.N.Y.2002).

Rule 9(b) requires a party averring fraud or mistake
to state with particularity "the circumstances
constituting [the] fraud or mistake." Fed.R.Civ.P.
9(b). The "particularity requirement" contained in
Rule 9(b) is substantial. *Rich v. Maidstone Financial,
Inc.,* 2002 WL 31867724, (S.D.N.Y.2002). "[A]
complaint must adequately specify the statements it
claims were false or misleading, give particulars as to
the respect in which plaintiff contends the statements
were fraudulent, state when and where the statements
were made, and identify those responsible for the
statements." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d
Cir.1989)); see also *DiVittorio v. Equidyne Extractive
Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987)
Additionally, when fraud is alleged against multiple
defendants, a plaintiff must set forth separately the
acts complained of as to each defendant. *Rich,* 2002
WL 31867724 at *10 (internal quotations omitted).
To meet the pleading requirements of Rule 9(b), a
complaint may not simply "clump[ ] defendants
together in vague allegations." *Id.* (quoting *In re
Blech Securities Litigation,* 928 F.Supp. 1279, 1294
(S.D.N.Y.1996). Rule 9(b) also requires a plaintiff to
adequately allege that the defendant's statements
were the proximate cause of the plaintiff's injuries.
*Spencer Trask Software and Information Services
LLC v. RPost Intern. Ltd.,* 2003 WL 169801, *21
(S.D.N.Y.2003).

**\*3** Plaintiffs' claims of aiding and abetting common
law fraud and conspiracy to defraud are subject to the
same pleading requirements under Rule 9(b) as their
claims of common law fraud. *See Spira v. Curtin,*
2001 WL 611386, *4 (S.D.N.Y.2001); *Renner v.
Chase Manhattan Bank,* 2000 WL 781081, *5

(S.D.N.Y.2000).

**[2]** Both complaints fail to plead aiding and abetting
common law fraud and conspiracy with the
specificity required by Rule 9(b). First, the
complaints do not make allegations with respect to
each defendant, but instead refer only generally to the
defendants as "the Banks" or "the Korean Banks."
For example, the strongest allegations of aiding and
abetting fraud in the Filler Complaint are as follows:
"The Korean Banks falsely confirmed the existence
of phony receivables that L & H supposedly factored
to the Korean Banks *without* recourse. Contrary to
the Banks' lies to [the auditors], those funds were
held by the Banks *with recourse,* in restricted time
deposits, and in fact reverted to the Banks when L &
H collapsed." Second Amended Filler Complaint, ¶
5.
"The data below ... reveals ... certain transactions
commencing in September 1999 that were the subject
of false confirmations by the Korean Banks to [the
auditors]. Those misrepresentations to [the auditors]
were communicated by [the auditors] orally to
Seagate prior to execution of the Merger Agreement,
and in L & H public statements, reviewed by [the
auditors], both prior to execution of the Merger
Agreement, and during the period between execution
of the Merger Agreement and consummation of the
Merger...." Second Amended Filler Complaint, ¶ 39.
"Absent the Korean Banks' deception ... [the
auditors] never would have approved the false
financial figures contained and disseminated in L &
H's press releases of February 9, 2000 and May 9,
2000, and accompanying SEC filings." Second
Amended Filler Complaint, ¶ 5.
"The Korean Banks' knowing participation in the
fraud in Korea was essential to the success of the
fraud that harmed the plaintiffs ." *Id.*

These allegations specify the "what," but not the
"who, where and when" required for Rule 9(b).
Additionally, it is still impossible to decipher the
connection between defendants' agreements with L &
H Korea, and the issuance of false financial
statements by L & H Belgium. Rhetoric is not a
substitute for specificity.

The complaints are full of conclusory allegations that
the Korean entity acted through the Belgian parent.
The complaints assume that these two corporations
constitute a single entity. However, the complaints
lack any explanation of why these distinct
corporations should be regarded as one. It is
impossible to tell from these complaints whether the
Korean Banks intended to aid the Belgian company

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22110773 (S.D.N.Y.),    RICO Bus.Disp.Guide 10,539
**(Cite as: Not Reported in F.Supp.2d)**

or to mislead it; and whether the Belgian company intended to mislead investors or was itself misled.

If the Korean subsidiary intentionally misrepresented its revenue to the Belgian company, these complaints might state actionable claims by L & H Belgium for aiding and abetting *that* fraud. But that is not the fraud sued on here and is not one of which the plaintiffs can complain.

**\*4** The Baker complaint makes allegations substantially similar to the Filler complaint. Therefore, the motions to dismiss are granted as to aiding and abetting common law fraud and conspiracy. The Baker plaintiffs are given leave to amend to plead these claims with greater specificity, as are the Filler plaintiffs, for the second time.

### Negligent Misrepresentation

The Baker plaintiffs also assert a claim of negligent misrepresentation. "Under *New York law*, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20. The defendant banks had no special relationship of trust with the plaintiffs. Moreover, as discussed in connection with plaintiffs' 10(b) and common law fraud claims, defendants made no representation to the Baker plaintiffs that could serve as the basis of a negligent misrepresentation claim. Therefore, the negligent misrepresentation claim is dismissed.

### Conclusion

The Filler and Baker common law fraud claims are dismissed, as is the Baker negligent misrepresentation claim. The Filler and Baker aiding and abetting common law fraud and conspiracy to defraud claims are also dismissed, with leave to replead only those claims with the requisite specificity. In view of this disposition, it is not necessary to reach the issue of *forum non conveniens.* *See e.g. Marra v. Papandreou,* 59 F.Supp.2d 65, 67 (D.D.C.1999) (declining to reach issue of *forum non*

*conveniens* because court granted summary judgment); *Zeidenberg v. Polly Peck Int'l PLC,* 1992 WL 178626, *4 (S.D.N.Y.1992)* (declining to reach issue of *forum non conveniens* because court granted motion to dismiss).

SO ORDERED.

S.D.N.Y.,2003.
Filler v. Hanvit Bank
Not Reported in F.Supp.2d, 2003 WL 22110773 (S.D.N.Y.), RICO Bus.Disp.Guide 10,539

Briefs and Other Related Documents (Back to top)

- 2004 WL 3577495 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Chohung Bank in Support of Motion to Dismiss the Filler Third Amended Complaint and in Support of Motion to Dismiss the Baker Amended Complaint (Mar. 12, 2004) Original Image of this Document (PDF)
- 2003 WL 24186011 (Trial Motion, Memorandum and Affidavit) Memorandum of Chohung Bank in Support of Motion to Dismiss the Filler Third Amended Complaint and in Support of Motion to Dismiss the Baker Amended Complaint (Dec. 3, 2003)
- 2003 WL 24186012 (Trial Motion, Memorandum and Affidavit) Defendant Shinhan Bank's Memorandum of Law in Support of its Motion to Dismiss the Third Amended Complaint (Dec. 3, 2003)
- 2003 WL 24186013 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Hanvit Bank's Motion to Dismiss the Filler Plaintiffs' Third Amended Complaint and the Baker Plaintiffs' First Amended Complaint (Dec. 3, 2003)
- 2003 WL 24186010 (Trial Pleading) Third Amended Complaint (Oct. 16, 2003)
- 2003 WL 23951517 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss the Second Amended Complaint (Jun. 23, 2003)
- 2003 WL 23951515 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Shinhan Bank's Motion to Dismiss the Second Amended Complaint (Jun. 13, 2003)
- 2003 WL 23951514 (Trial Motion, Memorandum and Affidavit) Defendant Shinhan Bank's Memorandum of Law in Support of Its Motion to Dismiss the Second Amended Complaint (May. 15, 2003)
- 2003 WL 23951601 (Trial Pleading) Second

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 5
Not Reported in F.Supp.2d, 2003 WL 22110773 (S.D.N.Y.), RICO Bus.Disp.Guide 10,539
**(Cite as: Not Reported in F.Supp.2d)**

Amended Complaint (Mar. 31, 2003)

• 1:02cv08251 (Docket) (Oct. 17, 2002)

• 2002 WL 32768772 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Reply Memorandum in Further Support of Its Motion to Dismiss the Amended Complaint (Jul. 18, 2002)

• 2002 WL 32768773 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Hanvit Bank's Motion to Dismiss the Amended Complaint (Jul. 18, 2002)

• 2002 WL 32768774 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss (Jul. 18, 2002)

• 2002 WL 32768768 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Memorandum in Support of Its Motion to Dismiss the Amended Complaint (Jun. 12, 2002)

• 2002 WL 32768769 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismissthe Amended Complaint (Jun. 12, 2002)

• 2002 WL 32768771 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Hanvit Bank's Motion to Dismiss the Amended Complaint (Jun. 12, 2002)

• 2002 WL 32768886 (Trial Pleading) Amended Complaint (May. 16, 2002)

• 2002 WL 32768775 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Reply Memorandum in Support of Its Motion to Dismiss (Apr. 16, 2002)

• 2002 WL 32768763 (Trial Motion, Memorandum and Affidavit) Chohung Bank's Memorandum of Law in Support of Its Motion to Dismiss (Apr. 11, 2002)

• 2002 WL 32768765 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Hanvit Bank's Motion to Dismiss the Complaint (Apr. 11, 2002)

• 2002 WL 32768767 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss (Apr. 11, 2002)

• 2002 WL 32768761 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Mar. 21, 2002)

• 2002 WL 32768752 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Shinhan Bank's Motion to Dismiss (Feb. 04, 2002)

• 2002 WL 32768757 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Hanvit Bank's Motions to Dismiss the Complaint (Feb. 04, 2002)

• 2001 WL 34727694 (Trial Pleading) Complaint

(Oct. 29, 2001)

• 1:01cv09510 (Docket) (Oct. 29, 2001)

END OF DOCUMENT

## EXHIBIT E

Gary B. FILLER and Lawrence
Perlman, Trustees of the TRA
Rights Trust Plaintiffs,

v.

HANVIT BANK, Shinhan Bank, and
Chohung Bank Defendants.

Janet Baker, James Baker, Jkbaker
LLC, and Jmbaker LLC,
Plaintiffs,

v.

Hanvit Bank, Shinhan Bank, and
Chohung Bank Defendants.

Nos. 01 Civ.9510 MGC,
02 Civ.8251 MGC.

United States District Court,
S.D. New York.

Oct. 13, 2004.

**Background:** Investor sued three Korean banks, alleging securities fraud under federal and common law, aider and abettor liability under common law, conspiracy to commit fraud, and violation of Racketeer Influenced and Corrupt Organizations Act (RICO), in connection with alleged sham agreements, between banks and Korean subsidiary of Belgium parent, that allegedly inflated earnings of subsidiary and parent, shares of which were acquired by investor.

**Holdings:** The District Court, Cedarbaum, J., held that:

(1) banks' alleged constructive knowledge of impact of factoring agreements and false confirmations on corporation's financial statements did not support inference under New York law that banks actually knew that corporation was attempting to defraud its investors;

(2) investors failed to state claim of aiding and abetting common law fraud under New York law against bank;

(3) banks' interaction with subsidiary, which occurred after investors consummated merger with subsidiary, did not show banks' awareness of fraud by subsidiary's corporate parent with sufficient particularity;

(4) banks could not be liable on claim of aiding and abetting common law fraud under New York law to investors, who received their shares through merger with subsidiary, as non-market negotiated transaction, for banks' alleged awareness of fraud in financial statements of subsidiary's corporate parent;

(5) investors stated, on allegations that banks "knew or recklessly disregarded," that banks had constructive knowledge, rather than required actual knowledge, of investors' merger with subsidiary and that investors would have been relying upon false financial statements of corporate parent; and

(6) supposed transfer of funds from subsidiary to bank was insufficient to support inference that bank agreed with corporate parent to defraud purchasers of stock in corporate parent.

Motions granted.

**1. Fraud ⟐30**

To state a claim for aiding and abetting fraud under New York law, a plaintiff must show: (1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud.

**2. Federal Civil Procedure ⟐636**

Claims of aiding and abetting common-law fraud are subject to the rule

which governs pleading special matters. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**3. Fraud ⟐30**

Under New York law, a defendant substantially assists the commission of a fraud when it affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and when its actions proximately cause the harm on which the primary liability is predicated.

**4. Fraud ⟐30**

Under New York law, constructive knowledge of the primary fraud, which is the possession of information which would cause a person exercising reasonable care and diligence to become aware of the fraud, is not sufficient to support an aiding and abetting claim. Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

**5. Banks and Banking ⟐100**

Banks' alleged constructive knowledge of impact of factoring agreements and false confirmations on corporation's financial statements did not support inference under New York law that banks actually knew that corporation was attempting to defraud its investors, for purpose of investors' claim against bank of aiding and abetting common law fraud under New York law. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**6. Banks and Banking ⟐100**

Investors failed to state claim of aiding and abetting common law fraud under New York law against bank, on allegations that bank received money directly from subsidiary's corporate parent, since transaction, at most, was constructive knowledge, rather than actual knowledge, of alleged scheme by parent to artificially inflate its financial statements through activities of subsidiary. Fed.Rules Civ.Proc. Rule 9(b), 28 U.S.C.A.

**7. Federal Civil Procedure ⟐636**

Complaint alleging banks' interaction with subsidiary, which occurred after investors consummated merger with subsidiary, did not show banks' awareness of fraud by subsidiary's corporate parent with sufficient particularity to state claim of aiding and abetting common law fraud under New York law against banks. Fed. Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**8. Banks and Banking ⟐100**

Banks could not be liable on claim of aiding and abetting common law fraud under New York law to investors, who received their shares through merger with subsidiary, as non-market negotiated transaction, for banks' alleged awareness of fraud in financial statements of subsidiary's corporate parent, since fraud was not defrauding of those investors during merger, but defrauding of any investor who would have relied upon parent's financial statements. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**9. Fraud ⟐30**

Under New York law, the requirements for establishing aiding and abetting liability for fraud ensure that entities one step removed from the alleged wrongful acts are not subject to suit for unforeseeable harms in which they had no active role and from which they received no benefit.

**10. Banks and Banking ⟐100**

Investors stated that banks had constructive knowledge, rather than required actual knowledge, of investors' merger with subsidiary and that investors would have been relying upon false financial statements of corporate parent, for purpose of their claim against banks of aiding and abetting common law fraud under New York law, on allegations that banks "knew or recklessly disregarded" those

facts. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**11. Conspiracy ⟨⟩32**

Under New York law, conspiracy to commit fraud requires an agreement among two or more parties, a common objective, acts in furtherance of the objective and knowledge.

**12. Banks and Banking ⟨⟩100**

Supposed transfer of funds from subsidiary to bank was insufficient to support inference that bank agreed with corporate parent to defraud purchasers of stock in corporate parent, for purpose of investors' claim against bank of aiding and abetting common law fraud under New York law, since subsidiary was not primary wrongdoer whose fraudulent activity injured investors. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**13. Federal Civil Procedure ⟨⟩636**

When fraud is alleged, plaintiffs must allege facts with particularity; particularity means the who, what, when, where, and how. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

———

Gregory P. Joseph Law Offices LLC, New York, New York, By: Gregory P. Joseph, Pamela Jarvis, Honey L. Kober, Sandra M. Lipsman, Douglas J. Pepe, for Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust.

Boies, Schiller & Flexner, LLP, New York, New York, By: Steven I. Froot, Karen C. Dyer, George R. Coe, Gregory S. Slemp, for Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC.

Squire, Sanders & Dempsey LLP, New York, New York, By: Daniel L. Brockett,

Mark C. Dosker, Rebecca W. Haverstick, for Defendant Chohung Bank.

Sidley Austin Brown & Wood LLP, New York, New York, By: Steven M. Bierman, Alan M. Unger, Daniel A. McLaughlin, Allen C. Kim, for Defendant Hanvit Bank, of counsel.

Kelley Drye & Warren LLP, New York, New York, By: Thomas B. Kinzler, William A. Escobar, for Defendant Shinhan Bank.

*OPINION*

CEDARBAUM, District Judge.

Defendants move to dismiss the complaints in these two related actions. For the following reasons, the motions are granted.

BACKGROUND

These actions arise from the collapse in November 2000 of Lernout & Hauspie Speech Products N.V. ("L & H Belgium"), a Belgian corporation which developed speech recognition software. Plaintiffs Filler and Perlman ("the Filler plaintiffs") are trustees of the TRA Rights Trust, which is the sole successor in interest to Seagate Technology, Inc. ("Seagate"). Seagate owned shares in Dragon Systems, Inc. which were worth approximately $170 million. Plaintiffs Janet Baker, James Baker, JKBaker LLC, and JMBaker LLC ("the Baker plaintiffs") collectively owned a majority of the shares of Dragon Systems. On March 27, 2000, Dragon Systems, certain of its principal shareholders (including plaintiffs), and L & H Belgium entered an Agreement and Plan of Merger by which Dragon's shareholders received L & H Belgium stock in exchange for the merger of Dragon into a subsidiary of L & H Belgium. The merger closed on June 7, 2000.

Defendants Hanvit Bank,[1] Shinhan Bank, and Chohung Bank are three Korean banks which plaintiffs allege assisted L & H Belgium in a scheme to defraud its investors. L & H Belgium issues consolidated financial statements which incorporate the financial data of its subsidiaries, including Lernout & Hauspie Korea ("L & H Korea"). The complaints allege that shortly after L & H Belgium acquired L & H Korea in September 1999, the subsidiary began executing enormous contracts to license software to Asian companies. These companies, plaintiffs contend, were either start-up corporations or entities which were too small to be able to pay what they would owe to L & H Korea under the contracts. The complaints allege that Hanvit, Shinhan, and Chohung were aware that these contracts were essentially shams. Nevertheless, Hanvit and Shinhan contracted with L & H Korea to purchase, or "factor," L & H Korea's accounts receivable—the money owed to L & H Korea by its licensees under these contracts. These factoring agreements stated that defendants agreed to purchase the accounts receivable "without recourse"—that is, Hanvit and Shinhan agreed to assume the full risk of collecting the money owed to L & H Korea. However, according to the complaints, L & H Korea and defendants executed side agreements which changed the terms of the factoring agreements so that the banks' purchase of the accounts receivable would actually be "with recourse," meaning that L & H Korea would retain the risk of collection. To this end, Hanvit and Shinhan retained in restricted accounts the money which they "paid" L & H Korea for its accounts receivable. The complaints allege that the structure of the transaction with defendant Chohung was slightly different. Chohung provided L & H Korea with a phony secured loan agreement but retained the loaned funds in a restricted account. All of these transactions, according to plaintiffs, enabled L & H Korea to report nonexistent revenue in its financial statements, which were incorporated into L & H Belgium's financial statements.

The complaints also allege that during the last quarter of 1999 and the first quarter of 2000, as part of its global audit of L & H Belgium, KPMG sought information from defendants regarding the factoring agreements and L & H Korea funds deposited in defendant banks. According to the complaints, defendants signed documents prepared by individuals at KPMG and L & H Korea which falsely confirmed to KPMG that the money which the banks had paid to L & H Korea pursuant to the factoring agreements (or, in Chohung's case, pursuant to the secured loan) was held in unrestricted accounts of L & H Korea. These representations by defendants, plaintiffs allege, enabled L & H Belgium falsely to inflate its revenues and earnings on its financial statements, and thus defraud its investors, including plaintiffs, who relied on L & H Belgium's financial statements and on assurances from KPMG when consummating the Dragon merger. When L & H Belgium collapsed, as a result of the disclosure of this and other frauds throughout the company, defendants retained the money which they had "paid" to L & H Korea for the accounts receivable (or, in Chohung's case, the money which the bank had purportedly advanced as a loan).

The Filler plaintiffs' original complaint included various federal and state claims based on these allegations. On February 26, 2003, I granted defendants' motion to dismiss the Filler plaintiffs' amended com-

---

1. Hanvit Bank is now known as Woori Bank. Since the complaints continue to refer to Hanvit Bank, that name is used throughout this opinion.

plaint for, among other things, failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). *See Filler v. Hanvit Bank*, 247 F.Supp.2d 425 (S.D.N.Y.), *vacated in part on other grounds*, 01 Civ. 9510 and 02 Civ. 8251, 2003 WL 21729978 (S.D.N.Y. July 25, 2003). The Filler plaintiffs filed a second amended complaint which, with the Baker plaintiffs' complaint (which contained only state-law claims), was dismissed on September 12, 2003, again for failure to plead fraud with particularity. *See Filler v. Hanvit Bank*, 01 Civ. 9510, 02 Civ. 8251, 2003 WL 22110773 (S.D.N.Y. Sept.12, 2003). Plaintiffs were permitted to replead their claims of aiding and abetting common-law fraud and conspiracy to defraud. They have done so, the Filler plaintiffs in a third amended complaint, and the Baker plaintiffs in an amended complaint.

## DISCUSSION

A federal court adjudicating a motion to dismiss must accept as true all facts alleged in the complaint and draw all reasonable inferences in the plaintiffs' favor. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999). A court may dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (quoting *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir.1991)) (internal quotation marks omitted). Fed.R.Civ.P. 9(b) requires a party averring fraud to state with particularity "the circumstances constituting [the] fraud."

### I.  *Aiding and Abetting Common–Law Fraud*

[1, 2]  To state a claim for aiding and abetting fraud under New York law, a plaintiff must show: (1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud. *Wight v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir.2000). Claims of aiding and abetting common-law fraud are subject to Fed.R.Civ.P. 9(b). *See Renner v. Chase Manhattan Bank*, 98 Civ. 926, 2000 WL 781081, at *5 (S.D.N.Y. June 16, 2000).

[3]  A defendant substantially assists the commission of a fraud when it "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed," and when its "actions ... proximately cause[ ] the harm on which the primary liability is predicated." *Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 470 (S.D.N.Y.2001) (citations omitted).

[4]  With regard to the knowledge requirement, courts have held that to state an aiding and abetting claim, the complaint must allege facts which show that the defendant had actual knowledge of the underlying fraud. *See Steed Finance LDC v. Laser Advisers, Inc.*, 258 F.Supp.2d 272, 282 (S.D.N.Y.2003). Constructive knowledge of the primary fraud—the possession of information which would cause a person exercising reasonable care and diligence to become aware of the fraud—is not sufficient to support an aiding and abetting claim. *See Williams v. Bank Leumi Trust Co.*, 96 Civ. 6695, 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997).

[5]  The allegations of the complaints, if true, demonstrate that defendants aided and abetted L & H Korea in the falsification of its revenues and knowingly transmitted false information to KPMG regarding L & H Korea's accounts. However, L & H Korea's fraudulent inflation of its

revenues is not the primary fraud complained of in this case. Rather, plaintiffs allege that they were injured by L & H Belgium's fraudulent misrepresentations, which were transmitted to plaintiffs through L & H Belgium's audited financial statements, filings with the Securities and Exchange Commission, press releases, and statements made to plaintiffs by L & H Belgium and by KPMG on L & H Belgium's behalf. Plaintiffs allege that they relied on these misrepresentations to their detriment when deciding to consummate the merger. While the complaints demonstrate that L & H Korea appears to have played a critical role in those misrepresentations, plaintiffs do not assert that L & H Korea's fraud directly injured them, or that the parent and subsidiary should be regarded as one entity, such that the acts of the latter are attributable to the former. Therefore, it is not enough for plaintiffs to show that defendants knowingly assisted L & H Korea's fraud; plaintiffs must show that Hanvit, Shinhan, and Chohung knowingly and substantially assisted in L & H Belgium's fraudulent misrepresentations.

The complaints allege that Hanvit, Shinhan, and Chohung knew that L & H Korea's financial statements were consolidated with L & H Belgium's financial statements, and that L & H Belgium was a publicly held company which issued public releases of its financial statements upon which prospective investors would rely. The complaints also assert that as L & H Korea's bankers, defendants would have received L & H Belgium's financial statements and press releases, and therefore would have been aware of the effects of their activities on the parent company's public disclosures. Plaintiffs also allege that defendants knew that the purpose of the KPMG audit was to prepare L & H Belgium's financial statements and public disclosures.

These allegations demonstrate, at best, that defendants should have known the impact of the factoring agreements and the false confirmations on L & H Belgium's financial statements. They do not support an inference that defendants actually knew that L & H Belgium was attempting to defraud its investors. From defendants' perspective, L & H Belgium could have been the victim or unwitting conduit of L & H Korea's fraud as easily as it could have been the perpetrator of a fraud upon others. While plaintiffs have alleged other facts indicating that directors of L & H Belgium endorsed and participated in L & H Korea's fraud, those allegations do not support any inference regarding what Hanvit, Shinhan, and Chohung knew about L & H Belgium's role. That is the critical issue in determining whether plaintiffs state claims against defendants upon which relief can be granted.

[6] Plaintiffs also argue that two payments of money by L & H Belgium to Hanvit demonstrate that defendants were aware that L & H Belgium was committing fraud. First, the complaints allege that a payment of $25 million from L & H Belgium to the president of L & H Korea, ostensibly an accelerated bonus, was actually intended to bribe defendants into assisting in the fraudulent scheme. This allegation is based on records showing that $15 million of that payment was routed through the Hanvit branch where many of the factoring agreements were executed, and on an e-mail which the president of L & H Korea sent to officers of L & H Belgium, which states: "Thanks for your great assistance extended to me. I well received the remitted amount of 25 million USD. With your prompt action, I could keep my promise to Korean banks and those banks will rely on L & H Korea and will help us much better than before." Second, plaintiffs allege that an entity con-

trolled by L & H Belgium, rather than Korean customers, paid Hanvit on some of the accounts receivable Hanvit had purchased from L & H Korea.

These allegations, which do not implicate Shinhan or Chohung at all, also fail to demonstrate that Hanvit was actually aware of the Belgian fraud. Even if plaintiffs correctly interpret the e-mail on which they premise their contention that the $25 million was a bribe intended for defendants, plaintiffs offer nothing to show that any of the banks knew that this was a bribe from L & H Belgium for participating in an L & H Belgium-run fraud, rather than a bribe from L & H Korea for defendants' assistance to that entity. Plaintiffs do not persuasively explain the significance of the allegation that some of the money was "routed through" the Hanvit Bank branch which participated in many of the allegedly phony factoring agreements. At any rate, this allegation does not establish where the money ended up or what the recipient knew about its source, let alone what Hanvit knew about the Belgian fraud. Similarly, the allegation that Hanvit was paid money by an entity controlled by L & H Belgium is not helpful, since plaintiffs do not allege that Hanvit knew that the entity was controlled by L & H Belgium. Essentially, plaintiffs argue that the fact that Hanvit received money directly from Belgium supports the contention that all of the defendants actually knew about L & H Belgium's scheme to artificially inflate its financial statements through the activities of L & H Korea. This is constructive knowledge, not actual knowledge.

[7] Plaintiffs also contend that certain activities by defendants which occurred after plaintiffs consummated the merger show defendants' awareness of the L & H Belgium fraud. The complaints allege that in the fall of 2000, during an audit of L & H Korea's June 2000 financial statements,

KPMG questioned the collectibility of L & H Korea's accounts receivable. KPMG informed L & H Korea that collection of between ten and twenty percent of the accounts receivable balances would be sufficient to avoid having to record a full reserve of the balances. According to the complaints, defendants helped L & H Korea avoid the negative effects of such a disclosure. L & H Korea directed that certain of its customers' licensing agreements be transferred to third parties. L & H Korea then provided collateral so that the transferees could obtain loans from defendants. The transferees then used those loans to "pay" L & H Korea ten to twenty percent of what they owed the company. Plaintiffs also allege that at the same time, newspapers began questioning L & H Korea's business practices. In response, Hanvit attempted to cover up its role in the fraud by converting its original factoring arrangement into a personal loan to the president of L & H Korea.

Like plaintiffs' other allegations, these allegations show only defendants' interaction with L & H Korea, and show nothing of defendants' possible awareness of L & H Belgium's fraudulent activities. The amended complaints fail to connect defendants with L & H Belgium with sufficient particularity to state a claim of aiding and abetting.

[8–10] An additional problem with plaintiffs' aiding and abetting allegations arises from a lack of clarity regarding the fraud defendants are alleged to have known about and substantially assisted. Plaintiffs were not purchasers of L & H Belgium shares on the open market. Rather, they received their shares through a negotiated transaction, the Dragon merger. In consummating the merger, the complaints allege that plaintiffs relied on the public documents described above, the integrity of the market price of L & H

Belgium stock, and specific oral and written representations by L & H Belgium and by KPMG. Plaintiffs do not allege that defendants were actually aware of the representations made to plaintiffs by L & H Belgium and KPMG. While the Baker plaintiffs allege that defendants were aware of the Dragon merger and "knew or recklessly disregarded" the fact that these plaintiffs would be relying on L & H Belgium's false information, these allegations state constructive, not actual knowledge. In other words, the underlying fraud of which defendants were allegedly aware and which they assisted is not the defrauding of these plaintiffs during the merger, but the defrauding of any investor who would have relied on L & H Belgium's financial statements. Such a broad definition of the underlying fraud is inconsistent with the other requirements of establishing aiding and abetting liability, which seek to ensure that entities already one step removed from the alleged wrongful acts are not subject to suit for unforeseeable harms in which they had no active role and from which they received no benefit. Without any allegation in the complaints which supports an inference that defendants knew that their actions would affect a non-market transaction, there is no justification for holding defendants liable for plaintiffs' injuries.

## II. *Conspiracy to Commit Fraud*

[11] Conspiracy to commit fraud requires "(1) an agreement among two or more parties, (2) a common objective, (3) acts in furtherance of the objective and (4) knowledge." *Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, 02 Civ. 2900, 2002 WL 31819217, at *4 (S.D.N.Y. Dec.16, 2002).

[12] Plaintiffs allege that each defendant agreed with L & H Belgium and L & H Korea to enter into factoring agree-ments and side agreements which materially altered the terms of those factoring agreements. Plaintiffs allege that the common objective of the conspiracy was to permit L & H Belgium to publicly report significantly inflated revenues. The acts plaintiffs allege in furtherance of the conspiracy are the execution of the factoring agreements, surreptitious recourse agreements, and the false confirmations to KPMG. The allegations of knowledge are identical to those offered for the aiding and abetting claim.

In addition to the problems with plaintiffs' allegations of knowledge, plaintiffs have not alleged facts which demonstrate an agreement between each defendant and the primary wrongdoer, L & H Belgium. Plaintiffs contend that the sufficiency of a claim of conspiracy to commit fraud, unlike a fraud claim, should be measured under the general pleading standard of Fed. R.Civ.P. 8(a), rather than Fed.R.Civ.P. 9(b). *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir.1990). Even so, "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Id.* The only actual contact between L & H Belgium and any of the defendants is the supposed transfer of funds from an entity controlled by L & H Belgium to Hanvit. This is insufficient to support an inference that Hanvit agreed with L & H Belgium to defraud purchasers of L & H Belgium stock. Plaintiffs have offered no facts whatsoever which demonstrate a conscious agreement between the other two defendants and L & H Belgium. Again, it is not sufficient for plaintiffs to allege an agreement between each defendant and L & H Korea, because L & H Korea is not the primary wrongdoer whose fraudulent activity injured plaintiffs.

CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted.

[13]  Plaintiffs are granted leave to re-plead their claims of aiding and abetting fraud and conspiracy to commit fraud with greater specificity. "When fraud is alleged, plaintiffs must allege facts with particularity. Particularity 'means the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Initial Public Offering Sec. Litig.*, 241 F.Supp.2d 281, 327 (S.D.N.Y.2003) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)). Specifically, plaintiffs must allege facts which will support an inference that Hanvit, Shinhan, and Chohung *each* had actual knowledge of L & H Belgium's fraudulent activities.

In view of this disposition, it is not necessary to reach defendants' arguments that these cases should be dismissed on the ground of *forum non conveniens*, and that these suits are preempted by the Securities Litigation Uniform Standards Act.

SO ORDERED.



In re WORLDCOM, INC. ERISA
LITIGATION

This Document Relates
to: ALL ACTIONS

No. 02 Civ. 4816(DLC).

United States District Court,
S.D. New York.

Oct. 13, 2004.

**Background:** Participants in bankrupt employer's retirement plan brought class actions against employer/debtor, individual officers, and plan trustee under Employee Retirement Income Security Act (ERISA), alleging, inter alia, breach of fiduciary duty in failing to advise participants against inclusion of employer's stock in individual accounts. Actions were consolidated. Following the District Court's denial in part of motions to dismiss, 263 F.Supp.2d 745, Cote, J., participants and all defendants other than trustee and employer's former chief financial officer (CFO) executed settlement agreement. Participants moved for approval of agreement's judgment-reduction formulae and accompanying bar order.

**Holding:** The District Court held that proportionate-share judgment-reduction formulae and bar order were reasonable even though non-settling trustee's contribution and indemnification credits were reducible according to settling defendants' inability to pay.

Motion granted.

1. **Compromise and Settlement** ⟷57

Federal district court reviews terms of class action settlement for fairness, reasonableness and adequacy of settlement to plaintiff class; when rights of third parties are also at stake, it is necessary to consider fairness of settlement's terms to them as well.

2. **Compromise and Settlement** ⟷56.1

As to federal class action settlement in which not all defendants join, where judgment credit is given to non-settling defendant in amount equal to its proportionate share of liability, its rights are protected even without determination of fairness of settlement.

3. **Labor and Employment** ⟷496

ERISA imposes joint and several liability on defendants. Employee Retire-