## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,     Plaintiffs,        v. DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),     Defendants. | No.:  04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,     Plaintiffs,        v. DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),     Defendants. | No.:  04-CV-10501 (PBS) |

## DRAGON PLAINTIFFS'
## MEMORANDUM OF LAW IN OPPOSITION TO DEXIA BANK BELGIUM'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

PRELIMINARY STATEMENT ................................................................... 1

   I.  THE DRAGON PLAINTIFFS ARE NOT ESTOPPED FROM
      ASSERTING AIDING AND ABETTING CLAIMS AGAINST DEXIA.......... 2

      1.  The *Hanvit* Decision Does Not Address the Issue
         Presented by Dexia's Fraud .......................................................... 3

      2.  The *Hanvit* Decision Supports the Proposition that
         Dexia is Liable for Aiding and Abetting Common Law Fraud ..................... 4

      3.  Dexia Relies on an Alternate Holding that Was Not Affirmed ................... 5

      4.  Dexia Waived the Defense of Collateral Estoppel ........................................ 6

   II.  BAKER PLAINTIFFS HAVE SUFFICIENTLY PLED
      A CLAIM AGAINST DEXIA FOR COMMON LAW FRAUD........................ 7

CONCLUSION............................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Blonder-Tongue Labs., Inc. v.
    Univ. of Illinois Found.*, 402 U.S. 313 (1971) ...................................................................6

*Davignon v. Clemmey*, 322 F.3d 1 (1st Cir. 2003) ...........................................................6

*Faigin v. Kelley,* 184 F.3d 67 (1st Cir. 1999) ..................................................................2

*Filler v. Hanvit Bank,* No. 01 Civ. 9510 (MGC),
    2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003) ......................................................7n3

*Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004) ................................ passim

*Filler v. Hanvit*, No. 04-6295-cv, slip op. (2d Cir. Dec. 2, 2005) ...............................1, 5

*First Safety Fund Nat'l Bank v. Friel*, 504 N.E. 2d 664
    (Mass. App. 1987) ...........................................................................................................7

*Kane v. Town of Harpswell*, 254 F.3d 325 (1st Cir. 2001) .............................................6

*Lukowsky v. Shalit*, 487 N.Y.S.2d 781 (App. Div., 1st Dep't 1985) ..............................7

*McKinnon v. Kwong Wah Rest.*, 83 F.3d 498 (1st Cir. 1996) .........................................6

*Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 552 F. Supp. 332 (S.D.N.Y. 1982) ......7

*Noved Realty Corp. v. A.A.P. Co.*, 293 N.Y.S. 336 (App. Div., 1st Dep't 1937)............7

*Quaak v. Dexia*, S.A., 357 F. Supp. 2d 330 (D. Mass. 2005) ......................................1, 4

*Quaak v. Dexia*, S.A., No. 03-11566, slip. op. (D. Mass. July 7, 2005).........................1

*In re Ba*ylis, 217 F.3d 66 (1st Cir. 2000) .......................................................................6

*In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161
    (D. Mass. 2003) ...............................................................................................................2

*In re Relafen Antitrust Litig.*, 286 F. Supp. 2d 56 (D. Mass. 2003)................................5

*IRS v. Sunnen*, 333 U.S. 591 (1948) ...............................................................................3

*United States v. Procter & Gamble*, 47 F. Supp. 676 (D. Mass. 1942)...........................7

## Other Authorities

Restatement (Second) of Judgments (1981) .......................................................................6

Restatement (Second) of Judgments (1982) .......................................................................7

18 Moore's Federal Practice (3d ed. 2004) ......................................................................2

18 Alan Wright, Arthur R. Miller, and Edward H. Cooper,
Federal Practice and Procedure: Jurisdiction 2d (200) ...................................................6

Plaintiffs in the above-captioned Filler and Baker actions respectfully submit this Memorandum of Law, and the accompanying Declaration of Susan M. Davies ("Davies Decl."), in opposition to the Motion of Dexia Bank Belgium ("Dexia") for Judgment on the Pleadings.

## PRELIMINARY STATEMENT

The Filler and Baker Plaintiffs (collectively, the "Dragon Plaintiffs") lost hundreds of millions of dollars when they exchanged their interests in Dragon Systems, Inc. ("Dragon") for nearly worthless shares of Lernout & Hauspie Speech Products, N.V. ("L&H"). Dexia is the successor to Artesia Banking Corporation, S.A. ("Artesia"), the former chief commercial banker for L&H, and a substantial and knowing participant in the sham licensing transactions that propped up L&H's faltering revenues.

Dexia seeks to dismiss the common law claims that have been brought against it by the Dragon Plaintiffs and the plaintiffs in *Stonington Partners, Inc. v. Dexia, S.A.*, No. 04-CV-10411 (PBS) (the "Stonington Plaintiffs"), who were similarly defrauded when they sold their company, Dictaphone, for L&H stock. Dexia asserts that (1) the Baker Plaintiffs have failed to allege common law fraud, (2) the Dragon Plaintiffs are collaterally estopped from bringing their aiding and abetting claims by the decision in *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004) ("*Hanvit*") (Carroll Decl. Exh. E), and (3) the Dragon and Stonington Plaintiffs fail to allege aiding and abetting or conspiracy.

Plaintiffs' allegations indisputably state common law claims. This Court has already held that virtually identical allegations by a class of public investors are "sufficient to establish *primary* liability by [Dexia] under Section 10(b)." *Quaak v. Dexia, S.A.*, 357 F. Supp. 2d 330, 342 (Feb. 9, 2005).[1] *See also Quaak v. Dexia*, S.A., No. 03-11566, slip. op. at 7 (July 7, 2005) ("[T]he allegations against Dexia describe a clear case of substantial participation in a manipulative scheme.") (Davies Dec. Exh. C). The Court has also held that "[a]llegations of active participation in a fraudulent scheme, with scienter, sufficient to establish primary liability

---

[1]    Throughout this Memorandum, emphasis has been added to quotations.

1

under § 10(b)-5, will a fortiori suffice to show aiding and abetting common law fraud." *In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 176 (Jan. 13, 2003).

The Dragon Plaintiffs join in the Memorandum of Law in Opposition to Dexia Bank Belgium's Motion for Judgment on the Pleadings to be filed under seal by Stonington Plaintiffs, which addresses the sufficiency of common law aiding and abetting and conspiracy claims against Dexia, and submit, in this Memorandum, that (1) the *Hanvit* decision has no collateral estoppel effect here, and (2) the Baker Plaintiffs state claims for common law fraud.

## I.     THE DRAGON PLAINTIFFS ARE NOT ESTOPPED FROM ASSERTING AIDING AND ABETTING CLAIMS AGAINST DEXIA

Dexia contends that the *Hanvit* decision collaterally estops the Dragon Plaintiffs from asserting aiding and abetting claims against it.  This argument requires Dexia to demonstrate that the pertinent allegations here and in *Hanvit* are "identical in all respects." *Faigin v. Kelley,* 184 F.3d 67, 78 (1st Cir. 1999) ("[T]he reach of collateral estoppel 'must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding.") (quoting *IRS v. Sunnen*, 333 U.S. 591, 599-600 (1948)).  *See also* 18 Moore's Federal Practice § 132.02[2][e] (3d ed. 2005) ("The basic rule, [is] that issue preclusion applies only if the issue in the prior litigation is identical to the issue in the subsequent litigation.")

While the two cases bear the superficial similarity that defendants in both are banks who facilitated their clients' misrepresentation of financial results, they differ in crucial respects— most notably in the fact that Dexia's client, L&H Belgium, was the author and subject of the false financial statements upon which the Dragon Plaintiffs relied, to their detriment.  Hanvit and the other Korean banks, in contrast, were bankers to L&H's <u>Korean</u> <u>subsidiary</u>, and could not be pled with sufficient particularity to have had knowledge of the fraud at L&H <u>Belgium</u> that their actions ultimately facilitated:  "The allegations … do not support an inference that defendants actually knew that L&H <u>Belgium</u> was attempting to defraud its investors." *Hanvit*, 339 F. Supp. 2d at 558.

1.    **The *Hanvit* Decision Does Not Address the Issue Presented by Dexia's Fraud**

In *Hanvit*, the Dragon Plaintiffs alleged that three Korean banks participated in a scheme to inflate the revenues of L&H's Korean subsidiary.  The Korean banks factored L&H Korea's receivables, purportedly on a "without recourse" basis—meaning that the Korean banks assumed the risk of non-collection and L&H's Korean subsidiary could recognize the receivables as revenue.   In reality, the factoring was "with recourse."  L&H Korea retained the risk of non-payment and there was in actuality no revenue to be recognized by L&H Korea.  *See id.* at 556.

Judge Cedarbaum dismissed the Dragon Plaintiffs' claims of aiding and abetting common law fraud, primarily on the ground that the connection between the Korean banks and the Belgian parent of their Korean client, as pled, was too attenuated to support a finding that the Korean banks were knowledgeable about the Belgian fraud their actions facilitated: "The amended complaints fail to connect defendants with L&H *Belgium* with sufficient particularity to state a claim of aiding and abetting."  *Id.* at 559.

The critical issue for Judge Cedarbaum was the relationship—not between the Korean banks and their client, L&H Korea—but between the Korean banks and their client's Belgian parent, because "L&H Korea's fraudulent inflation of its revenues is not the primary fraud complained of in this case.  Rather, plaintiffs allege they were injured by L&H *Belgium's* fraudulent misrepresentations, which were transmitted to plaintiffs through L&H Belgium's audited financial statements, filings with the Securities and Exchange Commission, press releases, and statements made to plaintiffs by L&H Belgium and by KPMG on L&H Belgium's behalf."  *Id.* at 558.  It was this issue—which does not exist with respect to Dexia—that determined the viability of the Dragon Plaintiffs' aiding and abetting claims against the Korean banks:

> [I]t is not enough for plaintiffs to show that defendants knowingly assisted L&H Korea's fraud; plaintiffs must show that Hanvit, Shinhan and Chohung knowingly and substantially assisted L&H *Belgium's* fraudulent misrepresentations.
> …

> …From defendants' perspective, L&H Belgium could have been the victim or unwitting conduit of L&H Korea's fraud as easily as it could have been the perpetrator of a fraud upon others.… [The] allegations do not support any inference regarding what Hanvit, Shinhan, and Chohung knew about L&H *Belgium's* role. That is the critical issue in determining whether plaintiffs state claims against defendants upon which relief can be granted.

*Id.* at 558.

That issue is plainly absent here, where Dexia was so intimately involved with L&H Belgium and its machinations that this Court has already characterized its role as "integral to the fraudulent scheme" and Dexia as "a primary architect of the scheme to finance the sham entities." *Quaak,* 357 F. Supp. 2d at 342; *see also, e.g.,* Filler Complaint ¶¶ 119-146; Baker Complaint ¶¶ 56-87, 132-61.[2] Consequently, Dexia errs in its premise that the Dragon Plaintiffs have already "litigated and lost the question of whether a third-party bank that allegedly helped L&H issue false financial statements can be liable for aiding and abetting L&H's fraud." Dexia Mem. at 7. The inquiry is inarguably fact-dependant and the pertinent facts of *Hanvit* and this case are not analogous.

### 2. The *Hanvit* Decision Supports the Proposition that Dexia is Liable for Aiding and Abetting Common Law Fraud

The *Hanvit* court refused to base its ruling on the relationship between the Korean banks and their Korean client, since it was the Belgian parent that was at the eye of the fraud. As Dexia points out, however, the relationship between the Korean banks and L&H *Korea* is the correct basis for comparison with the relationship between Dexia and L&H *Belgium*: "the Korean banks played a strikingly similar role to Dexia's in L&H's scheme to defraud.… [S]everal transactions with the Korean banks … enabled L&H Korea to report nonexistent revenue in its financial statements.… Similarly, … loans by Dexia … enabled L&H Belgium to report non-existent revenues in its financial statements." Dexia Mem. at 8.

---

[2] The Filler and Baker Complaints are annexed as Exhibits D and F to the Declaration of Avi Josefson in Opposition to Dexia Bank Belgium's Motion for Judgment on the Pleadings which will be filed under seal in *Stonington Partners, Inc. v. Dexia*, No. 04-CV-10411 (PBS).

Notably, the *Hanvit* court explicitly found that the relationship between the Korean banks and L&H ***Korea*** evinced substantial and knowing assistance of fraud:

> The complaints allege that shortly after L&H Belgium acquired L&H Korea in September 1999, the subsidiary began executing enormous contracts to license software to Asian companies…. [The Korean banks] were aware that these contracts were essentially shams. Nevertheless [the Korean banks entered into factoring transactions that] … enabled L&H Korea to report nonexistent revenue in its financial statements, which were incorporated into L&H Belgium's financial statements.
> …
> …The allegations of the complaints, if true, demonstrate that defendants aided and abetted ***L&H Korea*** in the falsification of its revenues and knowingly transmitted false information to KPMG ***regarding L&H Korea's accounts***.

339 F. Supp. 2d at 556, 557. Consequently, under *Hanvit*, parallel allegations about the relationship between Dexia and L&H Belgium demonstrate that Dexia aided and abetted L&H Belgium in the falsification of its revenues.

### 3.   Dexia Relies on an Alternate Holding that Was Not Affirmed

Dexia does not even acknowledge Judge Cedarbaum's focus on L&H Korea's role as a barrier between the Korean Banks and L&H Korea's Belgian parent. Instead, Dexia asserts that Judge Cedarbaum's alternate holding—concerning foreseeability of the Filler and Baker Plaintiffs' injuries by the Korean banks—has collateral estoppel effect. Dexia Mem. at 9-10 (quoting 339 F. Supp. 2d at 559-60). But the Second Circuit affirmed Judge Cedarbaum's dismissal of aiding and abetting claims only on the ground that the Dragon Plaintiffs failed to show that the Korean banks knowingly and substantially assisted L&H's—rather than its subsidiary's—fraudulent misrepresentations. *Filler v. Hanvit*, No. 04-6295-cv, slip op. at 7-8 (2d Cir. Dec. 2, 2005) (Davies Decl. Exh. C).

Under these circumstances, federal principles of collateral estoppel deny the alternative ground, on which Dexia relies, any preclusive effect. *See, e.g., In re Relafen Antitrust Litig.*, 286 F. Supp. 2d 56, 66 (D. Mass. 2003) ("The First Circuit has held that when a lower court judgment is based on alternative holdings, that is 'if "the appellate court" affirms on one ground and passes on the other, "the judgment is conclusive [only] as to the first determination"' and the

ground passed over does not receive preclusive effect." (quoting *In re Ba*ylis, 217 F.3d 66, 71 (1st Cir. 2000) (quoting Restatement (Second) of Judgments § 27, cmt. o (1981))); 18 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d §4421 at p. 570 (2002) ("The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision.").

### 4.   Dexia Waived the Defense of Collateral Estoppel

Dexia's argument fails for the final reason that Dexia waived any issue as to the collateral estoppel effect of *Hanvit*.  Dexia never pled collateral estoppel even though it served its answers to the Filler and Baker complaints on or about March 24, 2005, more than four months after Judge Cedarbaum's November 3, 2004 final orders in the *Hanvit* case.  *See* Davies Decl. Exhs. D, E (Dexia Answers); Exhs. A, B (Judge Cedarbaum's orders).  *See, e.g.*, *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971) ("*Res judicata* and collateral estoppel are affirmative defenses that must be pleaded."); *McKinnon v. Kwong Wah Rest.*, 83 F.3d 498, 505 (1st Cir. 1996) ("To avoid waiver, a defendant must assert all affirmative defenses in the answer."); *Davignon v. Clemmey*, 322 F.3d 1, 16 (1st Cir. 2003) (Interposition of affirmative defenses outside the pleadings is "far less tolerable where a defendant … has tendered no justification whatsoever.")

It is irrelevant that the Second Circuit did not affirm the dismissal of the claims against the Korean banks until December 2, 2005.  It is well-settled that the affirmative defense of collateral estoppel arises as soon as the issue to be precluded has been "'determined by a valid and final judgment,'" even if that judgment is the subject of a pending appeal.  *See, e.g., Kane v. Town of Harpswell*, 254 F.3d 325, 328 (1st Cir. 2001) (*citing, inter alia*, Restatement (Second) of Judgments §§ 13, 27 (1982)).

*        *        *

In short, the *Hanvit* decision furnishes no ground for dismissal of the Dragon Plaintiffs' claims that Dexia aided and abetted L&H Belgium's common law fraud.

6

## II.    BAKER PLAINTIFFS HAVE SUFFICIENTLY PLED
##         A CLAIM AGAINST DEXIA FOR COMMON LAW FRAUD

Dexia contends that that the Baker Plaintiffs' common law fraud claim fails because "Dexia is not alleged to have made any statement or representation, let alone a *mis*representation to the Baker Plaintiffs." Dexia Mem. at 6. That is not the law.

New York and Massachusetts both recognize that non-verbal schemes, conduct, and actions are actionable as fraud, particularly where, as here, Dexia acted to structure a financial Ponzi scheme. *See Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 552 F. Supp. 332, 336 (S.D.N.Y. 1982) (holding under New York law that defendants' actions in conspiring to monopolize the silver market to artificially boost the price of silver constituted fraud because "conduct, even without speech, may be tantamount to a false representation") (internal quotation omitted); *Lukowsky v. Shalit*, 487 N.Y.S.2d 781, 785 (App. Div., 1st Dep't 1985) (in a common law fraud claim under New York law, "a misrepresentation may be the product of the intentional suppression of the truth and may be effected by words, conduct or the exhibition of documents"); *Noved Realty Corp. v. A.A.P. Co.*, 293 N.Y.S. 336 (App. Div., 1st Dep't 1937) (cited in *Minpeco*) (to constitute fraud under New York law, "it is unimportant whether the means of accomplishing [the fraud] are words or acts of the defendant"); *accord First Safety Fund Nat'l Bank v. Friel*, 504 N.E. 2d 664, 667 (Mass. App. 1987) ("As to fraud, it requires a misrepresentation *or, through words or conduct*, the conveyance of half truths which deceive."); *United States v. Procter & Gamble*, 47 F. Supp. 676, 678 (D. Mass. 1942) (under Massachusetts law "[t]he misrepresentation may be as well by deeds or acts, as by words.").[3]

---

[3]    Dexia relies exclusively on *Hanvit*, which is wholly distinguishable on its facts, as previously discussed. In *Hanvit*, the court simply held that "the connection between plaintiffs' acquisition of stock in L&H Belgium and the representations by defendants to auditors in Korea is too attenuated to support a claim of common law fraud." *Filler v. Hanvit Bank*, No. 01 Civ. 9510 (MGC), 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003) (Carroll Exh. D). Indeed, the *Hanvit* court implicitly recognized that deceptive conduct may constitute actionable common law fraud if a defendant could be identified as the source of the misinformation.

In sum, the Baker Plaintiffs' common law fraud claim is predicated on Dexia's fraudulent conduct and actions in directly participating in a scheme to inflate L&H's stock price, which conduct Dexia even acknowledges can provide the predicate for a 10b-5 claim. Not only does permitting a common law claim for such fraudulent conduct accord with well-established precedents under both New York and Massachusetts law, but it also fully comports with this Court's prior ruling that the elements of common law fraud and 10b-5 are substantively similar.

Accordingly, Dexia's motion for judgment on the pleadings with respect to the Bakers' common law fraud claim must be denied.

## CONCLUSION

For all of the foregoing reasons, Dexia's Motion for Judgment on the Pleadings should be denied in its entirety. However, in the event that the Court should grant any of the relief Dexia seeks, the Dragon Plaintiffs respectfully request leave to amend their complaints.

Dated:    July 20, 2006

Respectfully submitted,


GREGORY P. JOSEPH LAW OFFICES LLC
  /s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Sandra M. Lipsman, N.Y. Atty Reg. #1943984
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

KOTIN, CRABTREE & STRONG
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone:  (617) 227-7031

**COUNSEL TO PLAINTIFFS GARY B. FILLER and
LAWRENCE PERLMAN,
Trustees of the TRA Rights Trust**


PARTRIDGE, ANKNER & HORSTMAN LLP
  /s/ Terence K. Ankner
Terence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone:  (617) 859-9999

BOIES SCHILLER & FLEXNER
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida  32801
Telephone:  (407) 425-7118

REED SMITH LLP
Alan K. Cotler
Joan A. Yue
Steven T. Voigt
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone:  (215) 851-8100

**COUNSEL TO PLAINTIFFS JANET BAKER,
JAMES BAKER, JKBAKER LLC and
JMBAKER LLC,**