## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.)<br><br>Defendants. | Civil Action No.: 04-10501 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.)<br><br>Defendants. | Civil Action No.: 04-10477 (PBS) |

| | |
|---|---|
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>     Plaintiffs,<br><br>  v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., S.A.)<br><br>     Defendants. | Civil Action No.: 04-10411 (PBS) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
DEXIA BANK BELGIUM'S MOTION FOR JUDGMENT ON THE PLEADINGS**

| | |
|---|---|
| CLIFFORD CHANCE US LLP | MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO |
| James B. Weidner<br>Thomas Teige Carroll<br>31 West 52nd Street<br>New York, NY 10019<br>(212) 878-8000<br>(212) 878-8375 fax | Peter M. Saparoff (BBO#441740)<br>Breton Leone-Quick (BBO#655571)<br>One Financial Center<br>Boston, Ma 02111<br>(617) 542-6000<br>(617) 542-2241 fax |

      *Counsel for Dexia Bank Belgium, S.A.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ........................................................................................................................ 1

I.      The Baker Plaintiffs' Fraud Claim Fails As a Matter of Law........................................... 1

II.      The Baker and Filler Plaintiffs Are Collaterally Estopped From Bringing Their Aiding And Abetting Claims .................................................................................. 2

       A.     *Hanvit* Directly Addresses the Claims at Issue in This Case................................ 2

       B.     The Second Circuit Affirmed the *Hanvit* Opinion.................................................. 3

       C.     Dexia Has Not Waived the Defense of Collateral Estoppel ................................. 4

III.      Plaintiffs' Aiding and Abetting Claims Fail As a Matter of Law..................................... 5

       A.     This Court's Prior Holdings and Dexia's Prior Arguments Do Not Bear Upon the Present Motion ........................................................................ 5

       B.     Dexia Could Not Reasonably Foresee that Non-Market Investors Would be Harmed ..................................................................................................... 5

       C.     An Aider and Abettor Must Have Actual Knowledge of the Underlying Fraud ................................................................................................................... 7

IV.      Plaintiffs' Conspiracy Claims Fail as a Matter of Law..................................................... 9

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

### CASES

*Bamberg v. SG Cowen*,
   236 F. Supp. 2d 79 (D. Mass. 2002) .............................................................................7

*In re Baylis*,
   217 F.3d 66 (1st Cir. 2000) ............................................................................................3

*Bedard v. La Bier*,
   20 Misc. 2d 614 (N.Y. Sup. Ct. 1959) ..........................................................................9

*Bigbee v. Pacific Tel. & Tel. Co.*,
   665 P.2d 947 (Cal. 1983) ..............................................................................................6

*Boston Scientific Corp. v. Schneider (Europe) AG*,
   983 F. Supp. 245 (D. Mass. 1997) ................................................................................4

*Carland, Inc. v. United States*,
   No. 84-0195-CV-W-0-1,
   1988 WL 68047 (W.D. Mo. Jan. 29, 1988) ..................................................................4

*Citibank, N.A. v. K-H Corp.*,
   968 F.2d 1489 (2d Cir. 1992) .......................................................................................6

*CPC Int'l, Inc.*,
   507 N.Y.S.2d 984 (N.Y. App. Div. 1986) ................................................................ 7-8

*CPC Int'l Inc. v. McKesson Corp.*,
   70 N.Y.2d 268 (N.Y. 1987) ..................................................................................7, 8, 9

*Dale v. Banque SCS Alliance S.A.*,
   No. 02-CV-3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) .................................6

*Filler v. Hanvit Bank*,
   339 F. Supp. 2d 553 (S.D.N.Y. 2004) ................................................................2, 3, 8, 9

*Filler v. Hanvit Bank*,
   156 Fed. Appx. 413 (2d Cir. 2005) ...............................................................................4

*Filler v. Hanvit Bank*,
   Index Nos. 04-6295-CV, 04-6719 CV,
   2005 WL 3270944 (2d Cir. Dec. 2, 2005) ....................................................................3

## TABLE OF AUTHORITIES
## (continued)

Page

*First Safety Fund Nat'l Bank v. Friel*,
  504 N.E.2d 664 (Mass. App. Ct. 1987) ...................................................................1, 2

*Holmes v. Sec. Inv. Protection Corp.*,
  503 U.S. 258 (1992)..................................................................................................5

*Jorgensen v. Massachusetts Port Auth.*,
  905 F.2d 515 (1st Cir. 1990).....................................................................................6

*In re Lernout & Hauspie Sec. Litig.*,
  236 F. Supp. 2d 161 (D. Mass. 2003).......................................................................5

*Levine v. Yokell*,
  685 N.Y.S.2d 296 (N.Y. App. Div. 1999) ................................................................2

*Lukowsky v. Shalit*,
  487 N.Y.S.2d 781 (N.Y. App. Div. 1985) ................................................................1

*Lynch v. Bd. of State Exam'rs of Electricians*,
  218 F. Supp. 2d 3 (D. Mass. 2002) ...........................................................................4

*Minpeco v. Conticommodity Servs., Inc.*,
  552 F. Supp. 332 (S.D.N.Y. 1982)............................................................................1

*Noved Realty Corp. v. A.A.P. Co.*,
  293 N.Y.S. 336 (N.Y. App. Div. 1937) ....................................................................1

*Payton v. Abbott Labs*,
  512 F. Supp. 1031 (D. Mass. 1981) ..........................................................................9

*Primavera Familienstifung v. Askin*,
  130 F. Supp. 2d 450 (S.D.N.Y. 2001).......................................................................7

*In re QLT Inc. Sec. Litig.*,
  312 F. Supp. 2d 526 (S.D.N.Y. 2004).......................................................................6

*Quaak v. Dexia S.A.*,
  357 F. Supp. 2d 330 (D. Mass. 2005)...............................................................5, 6, 8

*In re Relafen Antitrust Litig.*,
  286 F. Supp. 2d 56 (D. Mass. 2003) .........................................................................3

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Sahin v. Sahin*,
    758 N.E.2d 132 (Mass. 2001) ...................................................................................2

*Sebago, Inc. v. Beazer East, Inc.*,
    18 F. Supp. 2d 70 (D. Mass. 1998) ............................................................................5

*Smithkline Beecham Corp v. Copley Pharm., Inc*,
    45 Fed. Appx. 915 (Fed. Cir. 2002) ...........................................................................3

*United States v. Procter & Gamble Co.*,
    47 F. Supp. 676 (D. Mass. 1942) ...............................................................................1

## STATUTES

Fed. R. Civ. P. 8(c) .........................................................................................................4

Dexia Bank Belgium respectfully submits this reply memorandum in further support of its Motion for Judgment on the Pleadings.

**ARGUMENT**

**I.    The Baker Plaintiffs' Fraud Claim Fails As a Matter of Law**

The Baker Plaintiffs ignore the hornbook principle that a misrepresentation is necessary to support a claim for fraud, in order to contend that Dexia's alleged participation in a "Ponzi scheme" should be deemed equivalent to a misrepresentation.  (Dragon Mem. in Opp. at 7.)

First, the Baker Plaintiffs provide no convincing authority for this assertion.  In almost all of the cases cited by the Baker Plaintiffs, the defendants were <u>parties</u> to the transactions involved.[1]  Even where the defendants were not parties to the same transaction, they were alleged at a minimum to have engaged in the same types of transactions in the same market at the same time as the plaintiff.  *See Minpeco v. Conticommodity Servs., Inc.*, 552 F. Supp. 332, 336 (S.D.N.Y. 1982) (duty to speak may arise between parties on opposite sides of the same market).[2]  In contrast, in this case there is no allegation (and there can be none) of any relationship between Dexia and the Baker Plaintiffs, let alone a relationship as counterparties to the same transaction or participants on opposite sides of the same market.

---

[1]    *See First Safety Fund Nat'l Bank v. Friel*, 504 N.E.2d 664, 667 (Mass. App. Ct. 1987) (finding no fraud where lender bank failed to explain to borrower the consequences of that party's signature on promissory note); *Lukowsky v. Shalit*, 487 N.Y.S.2d 781, 784-85 (N.Y. App. Div. 1985) (Lessee/sublessor alleged fraud by sublessee and lessor); *Noved Realty Corp. v. A.A.P. Co.*, 293 N.Y.S. 336, 341 (N.Y. App. Div. 1937) (buyer of mortgage participation defrauded by seller).

[2]    Plaintiffs cite one additional case in this context: *United States v. Procter & Gamble Co.*, 47 F. Supp. 676 (D. Mass. 1942).  This sixty-four-year-old case, which concluded that Procter & Gamble's alleged bribery of a competitor's employees to divulge the competitor's trade secrets to Procter & Gamble constituted fraud, has no relation, by analogy or otherwise, to this case.

Moreover, Dexia cannot be held liable for fraud simply because it did not disclose to Plaintiffs the circumstances surrounding Artesia's loans, because it had no duty to make such disclosures. Under both Massachusetts and New York law, a duty to disclose exists only under limited circumstances, where there is a special relationship between the parties. *See, e.g., Sahin v. Sahin*, 758 N.E.2d 132, 138 n.9 (Mass. 2001) ("Fraud by omission requires both concealment of material information and a duty requiring disclosure."); *Levine v. Yokell*, 685 N.Y.S.2d 296 (N.Y. App. Div. 1999) ("Plaintiff's fraud claim was . . . properly found to have been facially deficient, since plaintiff did not plead that defendant-respondent had a duty to disclose the allegedly withheld information based on a contractual or confidential relationship . . . .").[3]

## II. The Baker and Filler Plaintiffs Are Collaterally Estopped From Bringing Their Aiding And Abetting Claims

### A. *Hanvit* Directly Addresses the Claims at Issue in This Case

Dragon Plaintiffs argue that *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553 (S.D.N.Y. 2004) does not apply and actually supports their position because of the attenuated relationship between the Korean Banks and L&H Belgium. (Dragon Mem. in Opp. at 3-5.) This argument cannot alter the applicability of *Hanvit*'s holding concerning lack of foreseeability to the facts of this case, in which Dexia was simply unaware of the L&H acquisitions of Dragon and Dictaphone at the time it engaged in the conduct alleged in the Complaints. The argument that *Hanvit* actually supports the adequacy of Plaintiffs' allegations (Dragon Mem. in Opp. at 4-5) likewise ignores this lack of awareness. To the contrary, *Hanvit* shows, upon closely analogous facts, that aiding and abetting claims will fail where "the underlying fraud of which defendants were allegedly aware and which they assisted is not the defrauding of these plaintiffs during the

---

[3] *First Safety Fund*, on which Dragon Plaintiffs rely for the proposition that conduct is sufficient to state a claim for fraud, actually <u>fails</u> to find fraud on the basis of the defendant's failure to disclose. 504 N.E.2d at

2

merger, but the defrauding of any investor who would have relied on L&H Belgium's financial statements." *Hanvit*, 339 F. Supp. 2d at 560.

### B. The Second Circuit Affirmed the *Hanvit* Opinion

Plaintiffs next argue that *Hanvit*'s holding on foreseeability lacks preclusive effect because it is an alternate ground not affirmed by the Second Circuit.[4] (Dragon Mem. in Opp. at 5-6.) But Plaintiffs' own cases demonstrate that only those holdings which have been expressly rejected by an appellate court lack preclusive effect. *See, e.g.*, *In re Relafen Antitrust Litig.*, 286 F. Supp. 2d 56, 66 (D. Mass. 2003). The opinion considered by the *Relafen* court, concerning patent invalidity, explicitly reserved as to the issue of inequitable conduct. *See Smithkline Beecham Corp v. Copley Pharm., Inc*, 45 Fed. Appx. 915, 917 (Fed. Cir. 2002) ("Because we affirm the determination that [the patent claims are] invalid for anticipation, we do not reach the inequitable conduct issue."). It was this reservation on which the *Relafen* court relied in withholding preclusive effect. *Relafen*, 286 F. Supp. 2d at 66. *In re Baylis*, 217 F.3d 66 (1st Cir. 2000), on which *Relafen* relies, also demonstrates this. *See id.* at 69, 72 (refusing to apply collateral estoppel in circumstances where lower court "<u>expressly refused</u>" to reach an issue and "<u>not only failed to endorse the correctness of the finding, but it explicitly questioned it</u>.") (emphasis added). In the Second Circuit's affirmation of *Hanvit*, by contrast, the court affirmed the district court's dismissal without any explicit reservations. *Filler v. Hanvit Bank*, Index Nos. 04-6295-CV, 04-6719 CV, 2005 WL 3270944 at *4 (2d Cir. Dec. 2, 2005). Accordingly, there is no reason for refusing to apply collateral estoppel in this case.

---

667-68 ("This is not a case … where silence would reasonably lead a party to a particular conclusion.").

[4] Stonington Plaintiffs' assertion that this holding is dicta (Stonington Mem. in Opp. at 14 n.7) is wrong; as the Dragon Plaintiffs concede, at a minimum it is an alternate holding. (Dragon Mem. in Opp. at 5.)

### C. Dexia Has Not Waived the Defense of Collateral Estoppel

Collateral estoppel is not automatically waived if not included in the answer, as the Baker Plaintiffs assert. (Dragon Mem. in Opp. at 6.) For example, in *Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F. Supp. 245, 254 (D. Mass. 1997), the court allowed preclusion arguments despite defendants' failure to raise them in their answer:

> [w]hile res judicata is an affirmative defense ordinarily considered waived unless pleaded, Fed. R. Civ. P. 8(c), there are exceptions. "The First Circuit has held that . . . 'where the substantive rights of parties are not endangered, it is within the discretion of the district court to permit it to be raised by motion.'"

*Id.* (quoting *Hastings v. Union Boiler Co.*, 688 F. Supp. 63, 63-64 (D. Me. 1988) (citations omitted).[5] Preclusion arguments made after the answer are permitted where such argument does not result in prejudice to the plaintiff. *See, e.g.*, *Lynch v. Bd. of State Exam'rs of Electricians*, 218 F. Supp. 2d 3, 6-7 (D. Mass. 2002) (finding no prejudice in considering estoppel arguments in a motion to dismiss rather than an answer to a complaint); *Carland, Inc. v. United States*, No. 84-0195-CV-W-0-1, 1988 WL 68047, at *8 (W.D. Mo. Jan. 29, 1988) ("Although the motion raised the estoppel defense nearly three years after the answer was filed, there was ample opportunity for response in opposition and no substantial prejudice accrued to the plaintiff."). In this case, no prejudice arises to Baker Plaintiffs by addressing estoppel arguments now, and so they should be permitted, without requiring the formality of an amended answer.

---

[5] This rule is certainly applicable in this case, where the *Hanvit* appeal was not decided until December 2, 2005, long after Dexia was constrained to answer the Complaints in these actions, which were filed in early 2004. *Filler v. Hanvit Bank*, 156 Fed. Appx. 413 (2d Cir. 2005). Practically speaking no resolution of the district court decision's preclusive effect could occur until the appeal was decided.

### III. Plaintiffs' Aiding and Abetting Claims Fail As a Matter of Law

#### A. This Court's Prior Holdings and Dexia's Prior Arguments Do Not Bear Upon the Present Motion

Plaintiffs cite the Court's decisions in *Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330, 342 (D. Mass. 2005) and *In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161, 176 (D. Mass. 2003) in support of their assertion that the Court has already found that their aiding and abetting claim is legally sufficient. (Stonington Mem. in Opp. at 4-5.) Further, Plaintiffs argue that Dexia has conceded in prior argument that its conduct as alleged stated a claim for aiding and abetting securities fraud, and thus *a fortiori* common law fraud. But the Court's prior holding and Dexia's previous descriptions of its conduct in the securities law context did not speak to the issue here—whether Dexia's alleged conduct rises to the level of an actionable claim of aiding and abetting under common law standards concerning the Dictaphone and Dragon transactions, in light of the lack of foreseeability of the harm to Plaintiffs from Dexia's conduct. Therefore the prior holdings and argument cited by Plaintiffs do not affect the present motion.

#### B. Dexia Could Not Reasonably Foresee that Non-Market Investors Would be Harmed

Foreseeability is not solely a question for the fact-finder (*see* Stonington Mem. in Opp. at 7-8), but may also be decided as a matter of law. The cases cited by Plaintiffs to support their contrary agreement only assert that questions of proximate cause "'are <u>normally</u> grist for the jury's mill;'" they do not require that all such questions be saved for determination by the fact-finder. *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 85 (D. Mass. 1998) (quoting *Peckham v. Cont'l Casualty Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) ("That causation is <u>ordinarily</u> a fact question does not make it <u>invariably</u> a fact question.")) (emphasis in original); *cf. Holmes v. Sec Inv. Protection Corp.*, 503 U.S. 258, 271 (1992) (finding summary judgment

5

appropriate in RICO claim of securities fraud as "the link [was] too remote between the stock manipulation alleged and the customers' harm.").

A court can and should determine whether proximate cause and foreseeability are adequately pled. *See, e.g., Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496-97 (2d Cir. 1992) (affirming 12(b) dismissal of securities and common law claims for insufficient proximate cause allegations); *In re QLT Inc. Sec. Litig.*, 312 F. Supp. 2d 526, 536 (S.D.N.Y. 2004) (12(b) dismissal of federal securities claims *inter alia* for failure to establish that damage was a foreseeable consequence of misrepresentation). Where, as here, the allegations in the complaint are not sufficient as a matter of law to establish liability, even if true, dismissal is appropriate. *See, e.g., Citibank, N.A.*, 968 F.2d at 1496-97.

Plaintiffs next argue that "the general harm suffered by all L&H investors" should be the appropriate standard for foreseeability. (Stonington Mem. in Opp. at 9.) But the cases Plaintiffs cite in support of this contention are inapplicable to the facts of this case.[6] Plaintiffs simply have not alleged sufficient facts to demonstrate that the Dragon and Dictaphone transactions in 2000 were reasonably foreseeable at the time of Dexia's loans in 1998.[7]

---

[6] *See, e.g., Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 523 (1st Cir. 1990) (discussing foreseeability in the context of claim that airport operator was negligent in allowing ice to accumulate on runway); *Bigbee v. Pacific Tel. & Tel. Co.*, 665 P.2d 947, 951-52 (Cal. 1983) (analyzing "relatively simple" issue of whether "the risk that a car might crash into [a] phone booth and injure an individual inside was reasonably foreseeable"); *Dale v. Banque SCS Alliance S.A.*, No. 02-CV-3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) (dismissing fraud and aiding and abetting fraud claims for lack of misrepresentation and instead addressing foreseeability only in the context of money-laundering).

[7] Plaintiffs' claim that "this Court itself has recognized that Dexia continued to participate in the scheme to defraud L&H's investors until June 30, 2000" (Stonington Mem. in Supp. at 13) is wrong. The Court merely identified that date as the "date of L&H's last allegedly false financial statement," not the last date on which Dexia engaged in any allegedly fraudulent conduct. 357 F. Supp. 2d at 338.

### C. An Aider and Abettor Must Have Actual Knowledge of the Underlying Fraud

An aider and abettor must have actual knowledge of the fraud in which it is alleged to have participated. *E.g.*, *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 90-91 (D. Mass. 2002) (Saris, J.) (a defendant must have "'knowledge that the other party is breaching a duty and the intent to assist that party's actions.'") (citation omitted). Contrary to Plaintiffs' assertions, (Stonington Mem. in. Opp. at 15-16), while the Court of Appeals in *CPC International* did reverse the lower court's application of the standard to the factual allegations at issue, it did not alter this standard.[8] The language in *CPC International* cited by Plaintiffs, when read in context, shows that the Court of Appeals disagreed with the Appellate Division's determination that "<u>these defendants</u>" could not be held liable for aiding and abetting. *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 285 (N.Y. 1987) (emphasis added).

The factual allegations on which reversal was based were very different from those at issue here: in *CPC International*, Morgan Stanley and the individual defendants were alleged to have known of defendant McKesson's attempts to sell Mueller, a troubled subsidiary, to a small group of buyers including CPC International. In support of this effort, CPC alleged, Morgan Stanley actually prepared and distributed a set of false financial projections for Mueller to CPC International, which projections in turn became the subject of contractual warranties. *CPC Int'l, Inc.*, 70 N.Y.2d 268, 285-286 (N.Y. 1987); *CPC Int'l, Inc.*, 507 N.Y.S.2d 984 (N.Y. App. Div.

---

[8] Likewise, *Primavera* did nothing to alter the actual knowledge standard, holding only that the heightened scienter requirement does not apply where there is a symbiotic relationship, *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 507-508 (S.D.N.Y. 2001), which is absent in this case.

7

1986).  Nowhere do Plaintiffs in this case allege that Dexia had such a degree of involvement in either the Dragon or Dictaphone deals, because they cannot.[9]

Plaintiffs have submitted materials concerning Dexia's participation in a $400 million syndicated loan during 2000 in connection with L&H's acquisition of Dictaphone.[10]  Dexia objects to these submissions and respectfully submits that the Court should ignore them, basing its decision only on the allegations in the Complaints.  *Quaak v. Dexia*, 357 F. Supp. 2d 330, 338 (D. Mass. 2005) (striking extraneous materials in consideration of Dexia's 12(b)(6) motion).  In any event, Dexia's participation in the loan syndicate does not show that the Dictaphone transaction was forseeable when Dexia made the LIC and Radial loans during 1998.  Nor does it show that Dexia actually knew the misrepresentations allegedly made by the principals of L&H and KPMG during the Stonington negotiations concerning Dictaphone.  As in *Hanvit*, "[p]laintiffs do not allege that defendants were actually aware of the representations made to plaintiffs by L&H Belgium and KPMG.  While Baker Plaintiffs allege that defendants were aware of the Dragon merger and 'knew or recklessly disregarded' the fact that these plaintiffs would be relying on L&H Belgium's false information, these allegations state constructive, not actual knowledge."  *Hanvit*, 339 F. Supp. 2d at 559-60.[11]

---

[9]  Further, the Court of Appeals actually reversed dismissal of the claim on the ground that it stated a claim for conspiracy to defraud, <u>not</u> aiding and abetting fraud: "Morgan Stanley and the individual defendants, as parties to the underlying fraudulent conspiracy, could, nonetheless, be liable for McKesson's independent actions done in furtherance of it."  *CPC Int'l, Inc.,* 70 N.Y.2d at 286.  Counsel for Dexia apologizes to the Court for not having been clearer in its citation to the case as "reversed on other grounds."

[10]  Contrary to Stonington's argument (Stonington Mem. in Opp. at 11-12), the loan did not relate to the Dragon acquisition.  Dexia is not alleged to have had any connection with the Dragon transaction.

8

### IV. Plaintiffs' Conspiracy Claims Fail as a Matter of Law

Plaintiffs' argument here does not and cannot alter the rule that to be liable for conspiracy, a defendant must have knowledge of the fraud he has conspired to commit. Instead, they ignore most of the cases cited in Dexia's brief in support of this principle. *See, e.g., Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981) (requiring agreement to "achieve the particular result"); *Hanvit*, 339 F. Supp. 2d at 560 (requiring a "common objective"). Rather, Plaintiffs argue that a general conspiracy "to defraud the SEC and the investing public" should encompass liability for acquisitions, for stock, of specific targets, negotiations for which occurred months after the last of the acts Dexia is alleged to have committed. (Stonington Mem. in Opp. at 17-18.) This is simply contrary to law.[12]

---

[11]  The Baker Complaint against Dexia contains (Baker Complaint ¶¶ 126, 141; Josefson Declaration Ex. F) the identical language as that cited by the *Hanvit* court. The Stonington and Filler Complaints do not contain even that language. The Stonington Complaint refers only to the syndicated loan.

[12]  *Bedard v. La Bier*, 20 Misc.2d 614, 616-617 (N.Y. Sup. Ct. 1959), cited by Stonington, is inapposite. That case addressed a plan agreed by several defendants to prevent milk from getting to market, and held all defendants liable for an assault on a milk truck driver in connection with the plan, even though only two of the defendants actually committed the assault while the others looked on. This situation, which involved a clear aim and obviously contemplated acts directly in furtherance of it, could not be further removed from Dexia's situation, where Plaintiffs simply argue that a general plan to defraud L&H investors is sufficient to encompass entire acquisitions, negotiated months after Dexia's alleged participation in a fraud, of which Dexia had no knowledge when it engaged in its actions. *CPC International*, as discussed *supra*, is also inapposite given the difference between the allegations of Morgan Stanley's close involvement in the fraud and the much more attenuated involvement alleged in this case. *See supra* at 7.

## CONCLUSION

For each and all of the foregoing reasons, in addition to those advanced in Dexia's Memorandum in Support, the Baker, Filler and Stonington common law claims should be dismissed with prejudice.

Dated: Boston, Massachusetts
July 26, 2006

          Respectfully submitted,

           /s/ Breton Leone-Quick
          Peter M. Saparoff (BBO#441740)
          Breton Leone-Quick (BBO#655571)

          MINTZ LEVIN COHN FERRIS
          GLOVSKY & POPEO
          One Financial Center
          Boston, MA 02111
          Tel: (617) 542-6000
          Fax: (617) 542-2241

          CLIFFORD CHANCE US LLP
          James B. Weidner
          Thomas Teige Carroll
          31 West 52nd Street
          New York, NY 10019
          Tel:    (212) 878-8000
          Fax:    (212) 878-8375

          *Counsel for Dexia Bank Belgium, S.A.*

### Certificate of Service

I, Breton Leone-Quick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 26, 2006.

 /s/ Breton Leone-Quick                                         Dated: July 26, 2006