**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.: 03-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.: 04-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.: 04-10477 (PBS) |

| | |
|---|---|
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br><br>    Defendants. | Civil Action No.: 04-10501 (PBS) |

**DEXIA BANK BELGIUM'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON PLAINTIFFS' MOTION TO COMPEL THE RETURN OF INADVERTENTLY PRODUCED DOCUMENTS**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendant Dexia Bank Belgium ("Dexia") respectfully objects to the Electronic Order of Magistrate Judge Collings dated July 13, 2006, granting Plaintiffs' Motion to Compel the Return of Inadvertently Produced Documents (Quaak #178, Stonington #62, Filler #79, Baker #69).

### Preliminary Statement

Plaintiffs have inadvertently produced two "Document Review Issues Lists" to Dexia, each of which contains a list of topics potentially relevant to their lawsuits (the "Issue Lists"). These documents are highly relevant to Dexia's statute of limitations defense. The Court has recognized that Dexia's defense depends in part on whether Plaintiffs conducted a reasonably diligent investigation of potential claims against Dexia following "storm warnings" in late 2000 and early 2001. The two Issue Lists provide strong evidence that Plaintiffs did not conduct *any* investigation of potential claims against Dexia until sometime after August 2002, and possibly as

2

late as June 2003. Dexia will argue on summary judgment and at trial that such procrastination by Plaintiffs cannot be considered reasonably diligent.

Plaintiffs claim that the Issue Lists are protected from disclosure by the work product doctrine. Such protection, however, was waived by Plaintiffs when they placed the diligence of their investigation at issue in this litigation. Plaintiffs have stated that their investigation was conducted through their lawyers, and that such investigation included the review of documents produced by other parties in related litigation. The Issue Lists were used in connection with that document review. Magistrate Judge Collings has already ordered Plaintiffs to produce non-opinion work product concerning their alleged investigation. These Issue Lists, which merely enumerate relevant factual issues, plainly qualify as non-opinion work product. Even if they could be considered "opinion" work product, such protection has also been waived by Plaintiffs through their affirmative reliance on an alleged diligent investigation conducted by and through their lawyers.

Plaintiffs have also waived work product protection over these documents by producing them to Dexia. In cases of inadvertent production, some courts have applied a "strict" rule that such disclosure always waives work product protection as to the documents produced. Other courts have applied a "middle" test, which involves the balancing of various factors, focusing on the precautions taken by Plaintiffs to prevent such disclosure. Even under the "middle" test, Plaintiffs have waived protection over these Issue Lists. The documents themselves indicate that few, if any, precautions were taken to prevent their disclosure. Moreover, the inadvertent production went undiscovered by Plaintiffs for more than six months, and was eventually noticed by Dexia, not the Plaintiffs. Finally, it would be fundamentally unfair to allow Plaintiffs to continue to argue that they reviewed documents as part of a diligent investigation of potential

claims against Dexia, because we now know that claim not to be true. For all of these reasons, the "middle" test implies that work product protection for these documents has been waived.

In sum, Plaintiffs have clearly waived any work product protection that might apply to these documents, either by relying on their alleged investigation or through the act of producing them to Dexia. These documents are highly relevant to Dexia's defense, and Dexia should be permitted to make use of them in this litigation.

## Background

In the initial Scheduling Order entered in this litigation on April 27, 2005, the Court ordered Plaintiffs to produce to Dexia all documents produced by any party in the prior class action proceedings titled *In re Lernout & Hauspie Securities Litigation*, No. 00-CV-11589-PBS. (*See* Butler Decl. Ex. A.)[1] On or about June 30, 2005, Plaintiffs produced to Dexia documents from Brown Rudnick Berlack Israels LLP with Bates numbers BRBI 8564-15059 and documents from a Lernout & Hauspie warehouse with Bates numbers YPR 1-97535.

More than six months later, counsel for Dexia noticed a non-Bates stamped document entitled "Lernout & Hauspie Document Review Issues List" (the "Issue List") inserted among the "BRBI" documents produced by Plaintiffs. (*See* Leone-Quick Decl. Ex. A.)[2] This document appeared to be a coding sheet that would have been used by Plaintiffs to review documents produced by other parties. The fact that this document lacked a Bates number suggested that it might have been produced inadvertently. In full compliance with Massachusetts ethical

---

[1] This refers to the Declaration of Jeff E. Butler dated March 22, 2006, previously filed by Dexia. (Quaak #195-2, Stonington #67-1, Filler #85-1, Baker #74-1.)

[2] This refers to the declaration of Breton Leone-Quick dated March 22, 2006, which attaches the inadvertently produced documents at issue. On March 22, 2006, Dexia moved to file this declaration under seal. The Court granted this motion on May 22, 2006, and Dexia filed the declaration under seal on July 19, 2006. Pursuant to the Magistrate Judge's order, Dexia returned all copies of the inadvertently produced documents to Plaintiffs on July 21, 2006.

4

obligations,[3] counsel for Dexia promptly notified counsel for Plaintiffs on January 6, 2005, that the document had been produced.  (*See* Egan Decl. Ex. A.)[4]

Plaintiffs requested the immediate return of the document, but Dexia refused because the document was highly relevant and because Plaintiffs had waived any work product protection over the document.  (*See* Egan Decl. Ex. D.)  Counsel for Dexia also pointed out to Plaintiffs that Opinion 99-4 of the Massachusetts Bar Association virtually requires counsel to retain and make use of inadvertently produced documents if it is in their client's interest to do so.  (*Id.*)

Several weeks later, on January 26, 2006, Plaintiffs informed Dexia that the Issue List was "one of thirteen essentially identical documents Plaintiffs inadvertently produced to Dexia in a portion of the 'BRBI' production."  (*See id.* Ex. E.)  Counsel for Dexia, however, have not been able to locate the other twelve examples of Issue Lists among the documents produced by Plaintiffs.  (Butler Decl. ¶ 3.)

On February 10, 2006, Plaintiffs informed Dexia of yet another inadvertently produced document, this time among the "YPR" documents produced by Plaintiffs.  (*See* Egan Decl. Ex. G.)  Although Plaintiffs refer to a two-page document, counsel for Dexia was only able to find a one-page Issue List similar to the Issue List found among the "BRBI" documents, along with what appears to be a separate one-page document titled "Witness List."  (*See* Leone-Quick Decl. Exs. B & C.)  Because this second version of the Issue List is also relevant to Dexia's statute of limitations defense, Dexia declined to return it to Plaintiffs.  (*See* Egan Decl. Ex. I.)

---

[3] Rule 4.4 of the ABA Model Rules of Professional Conduct, as amended in February 2002, states that a lawyer who receives a document inadvertently must "promptly notify the sender," but does not require the lawyer to refrain from examining the document or to follow the instructions of the sender.  *See* ABA Formal Op. 05-437 (October 1, 2005).  Consistent with this, Opinion 99-4 of the Massachusetts Bar Association Ethics Opinions states that a lawyer should resist the return of an inadvertently-produced document if "it is in his client's best interest to do so."

[4] This refers to the Declaration of Patrick T. Egan dated March 8, 2006, previously filed by Plaintiffs.  (Quaak #180, Stonington #64, Filler #81, Baker #72.)

Plaintiffs filed a Motion to Compel the Return of Inadvertently Produced Opinion Work Product Documents on March 8, 2006, and the motion was referred to Magistrate Judge Collings. On July 13, 2006, Judge Collings entered a one-paragraph electronic order granting Plaintiffs' motion (the "Order"). The Order states, in relevant part:

> The so-called "middle test" applied by then-Chief Judge Young in the case of Amgen, Inc. v. Hoeschst Marion Roussel, Inc., 190 F.R.D. 287 (D. Mass. 2000) has become the accepted test in this district. The test as to waiver is the same whether the material is protected as opinion work product or "ordinary" work product. Applying that test, the Court finds that the two documents at issue are protected by the work product doctrine and that the inadvertent disclosure of the two documents did not result in a waiver.

(Electronic Order dated June 13, 2006.) The Order does not address the issue, raised by Dexia, of whether Plaintiffs waived work product protection with respect to these documents by placing the diligence of their alleged investigation at issue in this litigation.

## **Argument**

**I.  THE DOCUMENTS IN QUESTION ARE HIGHLY RELEVANT TO DEXIA'S STATUTE OF LIMITATIONS DEFENSE.**

The documents that Plaintiffs have inadvertently produced to Dexia are highly relevant to Dexia's defense based on inquiry notice under the applicable statute of limitations. Dexia has argued, and the Court has recognized, that Plaintiffs have the burden of proving that they conducted a reasonably diligent investigation of potential claims against Dexia (or its predecessor, Artesia Banking Corp.) following "storm warnings" in late 2000 and early 2001. *See Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330, 340 (D. Mass. 2005) ("Thus, the critical inquiry is whether plaintiffs were reasonably diligent in investigating potential claims against this defendant once those storm warnings appeared.").

In order to meet their burden, Plaintiffs have insisted that they conducted a reasonably diligent investigation of potential claims against Artesia or Dexia. According to Plaintiffs, that

investigation included many activities, including reviewing documents produced by various parties in the prior *L&H Securities Litigation*. (*See, e.g*, Butler Decl. Ex. B, Response to Interrogatory No. 4.) If Plaintiffs are going to argue, on summary judgment or at trial, that their diligent investigation included the review of documents produced by other parties in the *L&H Securities Litigation*, then Dexia should be allowed to present evidence that would rebut that argument.

The Issue Lists produced to Dexia provide strong evidence that Plaintiffs were *not* investigating Artesia or Dexia when they reviewed documents in connection with the *L&H Securities Litigation*. The first of these documents lists 22 entities and/or issues that Plaintiffs considered relevant, but does not contain any mention of Artesia or Dexia. (*See* Leone-Quick Decl. Ex. A.) Plaintiffs have stated that this document was created in July 2002, and used for review beginning in August 2002. (*See* Josefson Decl. ¶ 6.)[5] Accordingly, this document clearly shows that, as of August 2002 and for some time thereafter, Plaintiffs were *not* looking for documents that would support potential claims against Artesia or Dexia.

The second document produced by Plaintiffs was created in November 2003, after the lawsuit against Dexia was filed. (*See* Egan Decl. ¶ 8.) This document is substantively identical to the earlier Issue List, except that it adds a 23rd item explicitly referencing Artesia and Dexia. (*See* Leone-Quick Decl. Ex. B.) This second document confirms that, once Plaintiffs began investigating claims against Artesia or Dexia, they included those entities on their document review issue list. It also plainly indicates that Plaintiffs started investigating potential claims against Artesia or Dexia sometime between the first Issue List (August 2002) and the second (November 2003).

---

[5] This refers to the Declaration of Avi Josefson dated March 8, 2006, previously filed by Plaintiffs. (Quaak #181, Stonington #65, Filler #82, Baker #71.)

These Issue Lists provide some of the clearest documentary evidence obtained thus far that Plaintiffs did *nothing* to investigate potential claims against Artesia or Dexia for *years* after storm warnings placed them on inquiry notice of such claims. They are exactly the type of evidence that Dexia has been seeking through discovery.

## II.    PLAINTIFFS HAVE WAIVED WORK PRODUCT PROTECTION BY PUTTING THEIR INVESTIGATION AT ISSUE IN THIS LAWSUIT.

There is no question that work product protection—including "opinion" work product protection—can be waived.[6] Courts have ordered the production of work product documents in a variety of situations where the work product of lawyers was placed at issue by the client. *See, e.g., Sorenson v. H & R Block, Inc.*, 197 F.R.D. 206, 209 (D. Mass. 2000) (ordering production of attorney's notes where attorney had been deposed about the contents of those notes and would be introduced as a witness at trial); *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 17 (D. Mass. 1997) (recognizing that opinion work product protection is not absolute and ordering production of work product because the mental impressions of the attorney were directly at issue); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 366 (D. Mass. 1995) (asserting advice of counsel as a defense for patent infringement waived work product protection with regard to all documents or information related to the infringement).

Specifically, waiver has been found repeatedly where a party relies on an investigation by counsel in order to avoid a statute of limitations defense. *See In re Imperial Corp. of Am.*, 179

---

[6] Although opinion work product can be waived, the two Issue Lists produced to Dexia are not opinion work product. As defined by Rule 26(b)(3), opinion work product consists of "mental impressions, conclusions, opinions or legal theories of an attorney." FED. R. CIV. P. 26(b)(3). This is distinct from "non-opinion" or "fact" work product, which consists of information compiled or summarized by an attorney. The documents at issue here plainly fall into the category of fact work product. The documents merely list factual issues potentially relevant to the lawsuits filed by Plaintiffs, (*see* Leone-Quick Decl. Exs. A & B), evident from the allegations in Plaintiffs' publicly filed complaints.

F.R.D. 286, 290 (S.D. Cal. 1998) (finding waiver of work product protection as to documents on former attorney's privilege log where plaintiff relied on former attorney's investigation to overcome statute of limitations bar); *Byers v. Burleson*, 100 F.R.D. 436, 439-440 (D.D.C. 1983) (ordering discovery of opinion work product where the statute of limitations issue could only be resolved by "inquiry into the subjective knowledge of the plaintiff and her attorney"); *Am. Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709 (W.D. Mo. 1978) (finding that where the time of the discovery of fraud was at issue, attorney who discovered the fraud could be deposed as to his mental impressions in connection with this matter).

Here, Plaintiffs have affirmatively placed the diligence of their alleged investigation of Artesia or Dexia at issue in this litigation. Plaintiffs admit that their investigation of potential claims against Artesia or Dexia was "conducted by and through their attorneys." (*See* Compl. ¶ 21.) Indeed, all of the individuals identified by Plaintiffs in interrogatory responses as having been involved in the alleged investigation of Artesia or Dexia are either attorneys or consultants working under the direction of attorneys. (*See* Butler Decl. Ex. B, Response to Interrogatory No. 12.) Despite the fact that Plaintiffs' alleged investigation was conducted entirely through their lawyers, Plaintiffs chose to make the diligence of that investigation an issue in this lawsuit in order to avoid Dexia's motion to dismiss. *See Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330, 341 (D. Mass. 2005) ("Plaintiffs allege that they made substantial efforts to investigate their claims, and that they uncovered no evidence demonstrating that the defendant was an active participant in the L&H fraud until June 2003.").

The Issue Lists inadvertently produced to Dexia plainly relate to Plaintiffs' alleged diligent investigation of potential claims against Artesia or Dexia, which Plaintiffs themselves

9

have placed at issue in this litigation. For this reason alone, any work product protection over these documents has been waived.[7]

### III. PLAINTIFFS HAVE ALSO WAIVED WORK PRODUCT PROTECTION THROUGH THE INADVERTENT PRODUCTION.

There is no question that inadvertent disclosure of a document may result in waiver of the attorney client privilege or work product protection. *See Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 883 (1st Cir. 1995). In considering this question, Judge Collings followed recent case law applying the "middle" test, which balances several factors for purposes of determining whether there has been a waiver. Under the "middle" test, five factors are relevant: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the amount of time it took the producing party to recognize its error; (3) the scope of the production; (4) the extent of the inadvertent disclosure; and (5) the overriding interests of fairness and justice. *See Amgen v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 291 (D. Mass. 2000). These factors weigh heavily in favor of waiver in this case.

Regarding the first factor, Plaintiffs claim they took reasonable precautions to prevent disclosure of these documents. The circumstances of their production to Dexia, however, speak for themselves. This was not a production involving the substantive review of documents. Instead, Plaintiffs were simply producing every document that bore Bates numbers (*e.g.*, "BRBI" or "YPR") from the prior productions of other parties in the *L&H Securities Litigation*. Plaintiffs could have taken the precaution of storing a "pristine" set of such productions, and used that set

---

[7] This analysis also establishes Dexia's right to discovery of work product under the "substantial need" and "undue hardship" test articulated in Rule 26(b)(3). The Supreme Court has stated that even opinion work product may be subject to discovery under this provision, though "a far stronger showing of necessity and unavailability" is needed. *See Upjohn Co. v. United States*, 449 U.S. 383, 402 (1981). Here, Dexia plainly has a strong need to obtain documents showing that Plaintiffs still were not investigating Artesia or Dexia in August 2002.

for the production to Dexia.  They chose instead to use a working set of documents, which they evidently knew was interspersed with copies of the Issue List.  (*See* Josefson Decl. ¶ 6.)  Even then, all that Plaintiffs needed to do was to flip through the documents, checking the lower right hand corner to confirm that each page had the correct Bates number, and removing any pages that lacked such a number.  Plaintiffs claim that they performed such a review but, given the result, it is difficult to believe that they did so with any diligence.

Moreover, Plaintiffs did not take the basic precaution that any prudent lawyer would take when creating work product, namely, labeling it prominently with the words "ATTORNEY WORK PRODUCT."  There is no legend on either of the Issue Lists produced to Dexia that indicates the documents were considered privileged, or even confidential, by Plaintiffs.[8]  This fact alone indicates that Plaintiffs did not take reasonable precautions to protect their Issue Lists from inadvertent disclosure, and that the first factor weighs in favor of waiver.

Regarding the second factor, Plaintiffs did not recognize their inadvertent production; it was pointed out to them by Dexia more than six months after the production.  Courts have held that the failure of a producing party to detect an inadvertent production within a short period of time after production weighs in favor of waiver.  *See Amgen*, 190 F.R.D. at 292 (finding waiver in part because "it took Hoechst five days to recognize its error and then only after counsel for Amgen drew Hoechst's attention to the privileged documents"); *Fleet Nat'l Bank v. Tonneson & Co.*, 150 F.R.D. 10, 16 n.11 (D. Mass. 1993) (finding no waiver in part because "plaintiffs' counsel realized its mistake within a few days of its occurrence").

---

[8] Plaintiffs claim that they initially printed the Issue Lists on "brightly colored paper," but later decided to copy them onto plain paper.  (*See* Josefson Decl. ¶¶ 6-7.)  It should have been obvious to Plaintiffs that this would not be an effective precaution against inadvertent production.

11

Plaintiffs attempt to confuse this factor by claiming that they requested return of the first Issue List "within hours" of learning of the inadvertent production. (*See* Pls.' Br. at 9.)[9] That is all well and good, but the amount of time it takes to request return of the document is not a factor under the "middle" test. The relevant consideration is the amount of time it took Plaintiffs to *discover* the error (*see Amgen*, 190 F.R.D. at 291), which in this case never even occurred because it was Dexia that first discovered the production after a period of six months. The second factor thus plainly weighs in favor of waiver.

As for the third and fourth factors, Plaintiffs claim that inadvertently producing less than twenty documents out of 1.8 million pages was a "deminimus [sic] oversight." (Pls.' Br. at 9.) This ratio might seem to bend these factors in Plaintiffs' direction, except that the overwhelming majority of the 1.8 million pages consists of documents produced by other parties in the prior *L&H Securities Litigation*. With respect to these documents, there was no need for an intensive, document-by-document privilege review. All that was needed was a mechanical glance at the lower-right hand corner of each page to verify the presence of a Bates number. For a review of that kind, even an error rate of 1 in 100,000 pages is surprisingly high. For this reason, the third and fourth factors do not weigh significantly against waiver in this case.

The final factor—the overriding interests of fairness and justice—also weighs in favor of waiver. Plaintiffs claim in this litigation that they performed a diligent investigation of potential claims against Dexia, and that their investigation included review of documents produced by other parties in the *L&H Securities Litigation*. The inadvertently produced Issue Lists plainly belie those claims, and therefore are highly relevant to Dexia's statute of limitations defense.

---

[9] This refers to the Memorandum of Law in Support of Plaintiffs' Motion to Compel the Return of Inadvertently Produced Opinion Work Product Documents dated March 8, 2006, previously filed by Plaintiffs. (Quaak #179; Stonington #63; Filler #80; Baker #70.)

If Dexia is forced to return them, then Plaintiffs will no doubt continue to argue that their investigation of Dexia included the review of documents, even though we now know that the Issue Lists directly contradict that assertion. That would be a gross injustice to Dexia.

## Conclusion

For all of the foregoing reasons, the Electronic Order entered by the Magistrate Judge should be reversed, and Plaintiffs' Motion to Compel the Return of Inadvertently Produced Documents should be denied.

Dated: July 27, 2006

                Respectfully submitted,

                MINTZ LEVIN COHN FERRIS
                GLOVSKY & POPEO


                By:   /s/   Breton Leone-Quick
                  Peter M. Saparoff (BBO#441740)
                  Breton Leone-Quick (BBO#655571)

                One Financial Center
                Boston, MA 02111
                Tel:   (617) 542-6000
                Fax:  (617) 542-2241

                James B. Weidner
                Jeff E. Butler
                CLIFFORD CHANCE US LLP
                31 West 52nd Street
                New York, NY 10019-6131
                Tel:   (212) 878-8000
                Fax:  (212) 878-8375

                *Counsel for Dexia Bank Belgium*


## Certificate of Service

I, Breton Leone-Quick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 27, 2006.

   /s/  Breton Leone-Quick                  Dated: July 27, 2006