UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br>    Plaintiffs,<br>v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>    Plaintiffs,<br>v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>    Plaintiffs,<br>v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br>    Plaintiffs,<br>v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10501 (PBS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE PORTION OF THE JULY 10, 2006 ORDER DENYING PLAINTIFFS' MOTION TO COMPEL DEXIA BANK BELGIUM TO PRODUCE PIET CORDONNIER FOR DEPOSITION**

Pursuant to Local Rule 7.1, Plaintiffs in the above-captioned actions seek reconsideration of a limited portion of the Memorandum and Order on Plaintiffs' Motion To Compel Depositions of Dexia Bank Belgium issued by Magistrate Judge Collings on July 10, 2006 (the "Order"). Plaintiffs solely seek reconsideration of that portion of the Order which denies Plaintiffs' request to take the deposition testimony of Piet Cordonnier. As demonstrated below, through documents translated and depositions taken since the filing of the Plaintiffs' motion to compel, Plaintiffs have developed additional facts which, Plaintiffs submit, will satisfy this Court's reservations about compelling Mr. Cordonnier's testimony via a Rule 30 notice as a managing agent of Dexia.

## PRELIMINARY STATEMENT

In its Order, this Court denied Plaintiffs' motion to compel the deposition of current Dexia employee Piet Cordonnier. Order at 9-13. In applying the five factor test to determine if Cordonnier qualifies as a managing agent, this Court concluded that "it seems clear that Cordonnier could be relied upon to give testimony at Dexia's request and that he could be expected to identify with the interests of Dexia." Order at p. 10. However, this Court concluded that, based on the then-current record, Plaintiffs had not demonstrated that Cordonnier had discretion over corporate matters central to this litigation. *Id.* at pp. 10-12.

Since filing the initial motion to compel in early November 2005, Plaintiffs have taken several depositions – including the deposition of Cordonnier's supervisor Patrick Van Tiggel – and translated additional documents that answer several of the questions and reservations voiced by this Court. As detailed below, this newly discovered evidence demonstrates that Mr. Cordonnier exercised considerable discretionary authority over several key matters in this litigation, including the suspicious repayment of the LIC, Radial and $20 million

2

Lernout/Hauspie/Willaert loans in December 1999/January 2000. These loans were used to finance the sham Language Development Companies ("LDCs") that were central to the fraudulent scheme alleged here. As such, Plaintiffs submit that they now fully meet their burden for compelling Cordonnier's deposition.

## ARGUMENT

**I.    Standard**

It is well settled that reconsideration is appropriate to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in the law. *See Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir. 1994); *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000); *In re Bank of New England Corp.*, 142 B.R. 584, 587 (D. Mass. 1992); *In re New Seabury Co., Ltd. Partnership*, 03 Civ. 10745 (DPW), 2004 WL 422728, at * 4 (D. Mass. March 5, 2004). Here, reconsideration is warranted based on newly discovered evidence that has been developed through deposition testimony since the filing of Plaintiffs' motion to compel.

**II.   New Evidence Demonstrates That Cordonnier Is A Managing Agent**

    **A.   Cordonnier Exercised Sufficient Authority And Discretion With Respect To The Subject Matter Of The Litigation.**

At the time Plaintiffs filed their motion, there was little available evidence of Cordonnier's role in the key Radial, LIC and Lernout/Hauspie/Willaert loans, a factor this Court highlighted in its Order. Now, it is clear that Cordonnier played a central role in directing the Bank's actions when faced with the default of those loans. Among other things, Cordonnier played a central role in the Bank's effort to prematurely credit the repayment of those loans at the end of December 1999. In an act of deception, Dexia actually credited each of those loan accounts as paid in full prior to year end 1999, even though payment was not received by Dexia

until January 2000. Deposition Testimony of Janssens at pp. 246-47 ("Janssens Dep."), attached as **Exhibit "A,"** to the Declaration of Allison K. Jones ("Jones Decl."). That premature repayment, coinciding with the close of fiscal year 1999, was highly suspect and contrary to the Bank's own procedures for repayment of a loan. Janssens Dep. at p. 170, attached to Jones Decl. as **Exhibit "B."** Most notably, it allowed the Bank to mislead L&H's auditors by falsely confirming that Lernout, Hauspie and Willaert had no outstanding personal loans at the Bank at year end 1999 thereby concealing their role in financing the sham LDCs.

As demonstrated below, Cordonnier can provide key testimony on these core issues. Indeed, when asked why the Bank did not wait until the funds were actually received to credit the loan accounts, Geert Dauwe told the prosecutors: "I cannot give any clarification on this topic. I assume that KGA, particularly Mr. Cordonnier, can provide the information." *See* **Exhibit "C,"** attached to Jones Decl. As Dauwe's statement shows, Dexia placed Cordonnier in a position of trust to represent its interests by making him an important point person at this critical time. A brief description of the development of those key loans and Cordonnier's role in their default further demonstrates this point.

The Radial and LIC loans were granted in 1998, and then—when already in default— extended in September of 1999. The extended loans were due to be repaid on December 15, 1999 – the same date that the accompanying CDS guarantees would expire. As that date approached, it became clear that neither Radial, LIC, L&H nor Lernout, Hauspie or Willaert could or would pay back the loans on time. At this moment, Cordonnier became a central point person, directing the Bank's response to the repayment issue. For example, on December 14, 1999, Cordonnier sent email to Geert Dauwe (a former Artesia director, who has been indicted in the Belgian criminal investigation into L&H) and others, outlining his recommendations about

how to handle the impending default on the LIC and Radial loan obligations. *See* **Exhibit "D,"** attached to Jones Decl. In addition to providing a blueprint for the Bank's response, Cordonnier also laced his email with several phrases indicating that he had important and private information on those two transactions, noting "an extremely 'unfortunate' formulation in the confirmation of the" CDS, and the "sensitivity surrounding this dossier." *Id.* The next day, he again wrote to a large group of Dexia employees, further outlining the steps necessary to "safeguard [Dexia's] legal rights" under the CDS. *See* **Exhibit "E,"** attached to Jones Decl. In this email, Cordonnier also referenced that "necessary informal contacts were/are laid via Mr. Dauwe" with Lernout, Hauspie, Willaert. *Id.* Mr. Dauwe, as a former Dexia employee, is not available to be deposed about the circumstances concerning these "informal contacts," but Cordonnier is available. *Id.*[1]

In addition to directing Dexia's internal response, Cordonnier was also a point person with L&H not only on the issue of the default of the Radial and LIC loans, but also on the repayment of the $20 million loan to the principals of L&H, Messrs. Lernout, Hauspie and Willaert. In fact, Cordonnier had direct dealings with L&H's Managing Director Nico Willaert concerning the repayment of all of those loans. On December 27, 1999, Cordonnier again wrote to a group of Dexia employees concerning the loans to Radial, LIC and Lernout, Hauspie and Willaert. *See* **Exhibit "F,"** attached to Jones Decl. This time he referenced a telephone conversation he had with Nico Willaert concerning the repayment of those loans. *Id.* During that call, Willaert purportedly told Cordonnier to expect repayment for the Radial and LIC loans on or about December 29, 1999, but said that the repayment on the private loan (to the principals of L&H) "still needs more time." *Id.* This memo demonstrates that at a critical period when the repayments of three of the loans central to Plaintiffs' Amended Complaint were due, Cordonnier

---

[1] Plaintiffs have filed a letters rogatory request directed, in part, at Mr. Dauwe, but there can be no certainty when, or if, Plaintiffs will be permitted to examine him.

5

was the "go to" person, working with Mr. Dauwe to represent the Bank's interests *vis-a-vis* L&H. Such a critical role could only have been entrusted to a managing agent of the Bank.

    B.    **No-One In Higher Authority At Dexia Possesses The Information Known To Cordonnier**

In its Order, this Court concluded as to Cordonnier that: "the most that can be said is that it is unclear whether there is anyone employed at Dexia in a higher position who would have knowledge of the information sought by the deposition." Order at pp. 12-13. In so holding, the Court noted that Cordonnier had two supervisors: Marc Vankeirsbilck and Patrick Van Tiggel.

As to Mr. Vankeirsbilck, as the Court noted, Plaintiffs to not know whether he is still employed by Dexia, but in any respect, he is extremely unlikely to possess the same information as Cordonnier. Of all the documents produced by Dexia, approximately 160 reference Mr. Vankeirsbilck, as opposed to the almost 2,000 documents that reference Cordonnier. Similarly, while Cordonnier was interviewed on three separate occasions by the Belgian Authorities responsible for the criminal investigation into the collapse of L&H, Mr. Vankeirsbilck was never interviewed. Thus, it is highly unlikely that Mr. Vankeirsbilck (even if he were available) would possess the same information as Cordonnier.

As to Mr. Van Tiggel, Plaintiffs have now taken his deposition and it is clear that while he was nominally Mr. Cordonnier's supervisor, he was not able to testify as to several core matters involving Cordonnier. In fact, Van Tiggel admitted that Cordonnier was the legal specialist in his department and that Cordonnier was relied upon to accurately and appropriately prepare various loan documents in connection with the credits to L&H. *See* Deposition Testimony of Patrick Van Tiggel at p. 62 ("Van Tiggel Dep."), attached to Jones Decl. as **Exhibit "G."** Van Tiggel testified that, in that role, Cordonnier was fully empowered to exercise his own judgment about when to contact the Bank's general Legal Department concerning issues

related to loans and did not need to involve his supervisor when doing this. Van Tiggel Dep. at p. 63. Significantly, because no-one directly supervised the legal aspects of Cordonnier's duties within the specialized credits department, it is crucial that Plaintiffs be allowed to question Cordonnier about these additional aspects of his duties in connection with the L&H-related loans. Van Tiggel Dep. at pp. 62-64. Van Tiggel describes loan decisions as a "team work" process whereby Cordonnier was the legal specialist on par with the credit analyst who worked with the financial aspects (in this case Rabaey, whose deposition the Court has ordered) in putting together loan confirmations. Van Tiggel Dep. at pp. 63-64.

Additionally, concerning Cordonnier's central role in the December 1999 repayment and negotiations, Van Tiggel conceded that he did not know the details of these actions and Dexia's steps to preserve its legal rights. To the contrary, Van Tiggel testified that Cordonnier, as the legal specialist involved with these loans, likely can testify to these matters. *See* Van Tiggel Dep. at pp. 112-113, attached to Jones Decl. as **Exhibit "H**. Specifically, when asked about Cordonnier's December 29, 1999 email referenced above, Van Tiggel testified as follows:

> Q: This is an e-mail from Mr. Cordonnier to yourself and others and he opens by saying that he received a telephone call from Mr. Willaert. Then the remainder of the e-mail reports on that conversation?
> A. Yes.
> Q: At this point was Mr. Cordonnier handling himself discussions with Mr. Willaert concerning repayment of the LIC and Radial loans?
> A: I don't know, I cannot answer, but it was a loan as I understand it in the phase of reimbursements of repayment, so it is not unusual that somebody of the Loan Department tries to find out or get in contact with the commercial relationship manager or client to find out about repayment. So for me it is not strange or unusual seeing this.
> Q: You earlier described Mr. Cordonnier's role as primarily involved with loan documentation, is it unusual [he?] would be handling issues of repayment of a loan past its due by date?
> -Objection to Form-
> A: **He was a member of the Loan Department and he took care of everything which is -- legal issues of loans. As I understand it there was a link with some legal issues and the repayment of this loan, so I can imagine that Piet Cordonnier at that time was involved in the discussions, the repayment with Geert Dauwe.**

> Q: So his activity was more expansive than preparing or assisting with loan documentation; is that correct?
> A: He was a legal specialist active in Loan Departments, his main function was loan, everything to do with the legal framework of loans. So this type of activities don't seem extraordinary to me, no.

Van Tiggel Dep. at pp. 122-123 (emphasis added), attached to Jones Decl. as **Exhibit "I**. This testimony demonstrates not only that Cordonnier's responsibilities were far more expansive than just drafting legal documents, but also that Van Tiggel's testimony could not substitute for his more knowledgeable foot-soldier, Cordonnier.

* * * * *

Based on the following, Plaintiffs submit they have adequately met their burden under Rule 30, and, through newly developed evidence, have cured any deficiencies found by the Court in its Order as to Cordonnier. It is well settled that any doubt concerning whether Mr. Cordonnier may properly be characterized as a managing agent must be resolved in favor of Plaintiffs, as the examining parties, because "the ultimate determination – that [Dexia] is or is not bound by the testimony of [Mr. Cordonnier] – 'is to be made by the trial court.'"[2] Moreover, in *Dubai Islamic Bank v Citibank, N.A.*, No. 99 Civ. 1930, 2002 LEXIS U.S. Dist. LEXIS 9794, at *6-7 (S.D.N.Y. May 28, 2002), a case repeatedly cited in the Order, the court was clear that under "modest" burden, any close calls require this court to "permits discovery to proceed, while deferring until trial the ultimate question of whether the witness's testimony is binding on the corporation." *Id.* at *12.

## CONCLUSION

---

[2] *Dorothy McAllister*, 24 F.R.D. at 318 (quoting *Rubin v. General Tire & Rubber Co.*, 18 F.R.D. 51, 56 (S.D.N.Y. 1955)), *quoted in Boston Diagnostics*, 123 F.R.D. at 417. *Accord In re Meta Systems*, Misc. Docket No. 501, 1997 U.S. App. LEXIS 7683, at *8 (Fed. Cir. Mar. 20, 1997); *Founding Church of Scientology Inc. v. Webster*, 802 F.2d 1448, 1452 n.4 (D.C. Cir. 1986); *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985); *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y. 1968). *See also Dubai Islamic Bank*, 2002 U.S. Dist. LEXIS 9794, at *12-13 ("The witness's deposition testimony itself may well provide the best evidence of his or her status.").

For the foregoing reasons, Plaintiffs respectfully request that this Court reconsider, in part, its July 10, 2006 Order in light of the newly presented facts and order Dexia to produce Piet Cordonnier for deposition.

Dated: July 24, 2006

Respectfully submitted,

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

_____/s/ Patrick T. Egan_____
Glen DeValerio, BBO # 122010
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
Allison K. Jones, BBO # 654804
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

**SHALOV STONE & BONNER LLP**
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

**CAULEY BOWMAN CARNEY & WILLIAMS PLLC**
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500

*Co-lead Counsel to Class Plaintiffs*
*Hans A. Quaak, Karl Leibinger and Attilio Po*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Avi Josefson
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)

1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400

**LOONEY & GROSSMAN LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2800

*Counsel to Plaintiffs Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings L.L.C.*

**GREGORY P. JOSEPH LAW OFFICES LLC**

        /s/ Susan M. Davies
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 407-1200

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone: (617) 227-7031

*Counsel to Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust*

**PARTRIDGE, ANKNER & HORSTMAN LLP**

        /s/ Terence K. Ankner
Terence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999

**BOIES SCHILLER & FLEXNER**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118


**REED SMITH LLP**
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

*Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC.*