**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS A. QUAAK, ATTILIO PO and KARL LEIBINGER, on behalf of themselves and those similarly situated,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 03-CV-11566 (PBS) |
| STONINGTON PARTNERS, INC., a Delaware Corporation, STONINGTON CAPITAL APPRECIATION 1994 FUND L.P., a Delaware Partnership and STONINGTON HOLDINGS, L.L.C., a Delaware limited liability company,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10411 (PBS) |
| GARY B. FILLER and LAWRENCE PERLMAN, Trustees of the TRA Rights Trust,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10477 (PBS) |
| JANET BAKER and JAMES BAKER, JKBAKER LLC and JMBAKER LLC,<br>    Plaintiffs,<br>    v.<br>DEXIA, S.A. and DEXIA BANK BELGIUM (formerly known as ARTESIA BANKING CORP., SA),<br>    Defendants. | No.: 04-CV-10501 (PBS) |

**PLAINTIFFS' STATEMENT CONCERNING THE NEED FOR
<u>30(b)(6) DEPOSITION(S) OF DEXIA BANK BELGIUM</u>**

Plaintiffs submit this statement in response to the Court's November 7, 2006 Procedural Order requesting "a statement as to whether [Plaintiffs] still seek a 30(b)(6) deposition of defendants, and if so, on what topics."

Plaintiffs still seek a 30(b)(6) deposition of Dexia on the following topics:

1.  The circumstances of each of Dexia's acquisitions and sales of L&H securities; the bases for Dexia's decisions to enter into each of these transactions including the information considered, and the considerations determining the timing of each of these transactions.

2.  Dexia's underwriting of, participation in, or assistance with any public or private offering of L&H securities.

3.  The relationship between Artesia Banking Corporation, S.A., on the one hand, and Artesia Securities, S.A. and Cordius Asset Management, on the other hand, including (i) the extend to which Artesia Bank Corporation, S.A.'s management exerted any control over either Artesia Securities, S.A. or Cordius Asset Management; and (ii) the extent to which the management, personnel, customers, accounts, e-mail systems, computer systems, office facilities, and business activities of either Artesia Securities, S.A. or Cordius Asset Management were common to or overlapped with those of Artesia Banking Corporation, S.A.

4.  The preparation of, and issuance by, Artesia Securities, S.A. and /or Cordius Asset Management of analysts reports concerning L&H including (i) the initiation of analyst report coverage of L&H securities; (ii) the research and drafting of such analyst reports; (iii) the determination of the recommendation (e.g. buy or sell) to be placed by analysts on any particular security; and (iv) the extent and nature of control over, or coordination of, the content of such analyst reports by Artesia Bank Corporation, S.A.

5.  The policies, practices, processes, plans, guidelines, and procedures used by Artesia Banking Corporation, S.A. (including its predecessors Paribas Banque Belgium and Bacob Bank C.V.) regarding credit default swap transactions for the time period 1997 through 1999.

6.  The due diligence of Artesia Banking Corporation, S.A. performed by or on behalf of Dexia in connection with Dexia's acquisition of Artesia Banking Corporation, S.A. in so far as such due diligence related to loans to, or accounts of, L&H (including L&H Korea), Jo Lernout, Pol Hauspie, Nico Willaert, Gaston Bastiaens, Dictation Consortium, N.V., Brussels Translation Group, Radial Belgium N.V., Language Investment Company, Document Management Partners, or any entity in the "L&H' Group".

      7.        Dexia's statute of limitations defense, including (i) the facts that Dexia contends placed Plaintiffs on notice that they had a valid claim for a violation of Section 10(b) of the Securities and Exchange Act of 1934 including, without limitation, the facts that Dexia contends apprised Plaintiffs in connection with their purchases of L&H securities; (ii) when those facts were available to Plaintiffs; (iii) how Plaintiffs should have discovered those facts; and (iv) Dexia's responses to Class Plaintiffs' Interrogatories Nos. 8 and 9.[1]

Plaintiffs' need for a 30(b)(6) deposition on each of these topics has already been sufficiently argued in Plaintiffs' original Motion, filed on May 22, 2006, and at the June 2, 2006 motions hearing. Plaintiffs will not repeat those arguments here. Rather, in response to this Court's order, and as demonstrated below, Plaintiffs simply note that the Court-ordered depositions taken to date have not elicited any meaningful testimony on any of these topics, nor have they eliminated Plaintiffs' need for a Rule 30(b)(6) deposition on these topics. While Plaintiffs have a compelling need for all of this information, the Artesia Securities topics are particularly important, given the dearth of discovery on these issues. As the Court is well aware, Dexia refused to provide discovery on Artesia Securities until after this Court rejected the PSLRA-stay objections in June. It was not until August 31, 2006 that Dexia first began producing Artesia Securities documents; long after the close of merits discovery. Moreover, of the four Court-ordered depositions taken to date, none of the deponents have been of employees of Artesia Securities, nor did they have any material involvement in working with Artesia Securities. Thus, the Rule 30(b)(6) witness will be Plaintiffs primary opportunity to examine Dexia on the Artesia Securities documents and issues. Similarly, as shown below, Plaintiffs have yet to obtain adequate testimony on any of the other topics in their Rule 30(b)(6) notice, warranting the granting of a motion to compel as to all of these topics.

---

[1] In Plaintiffs' original moving papers, the topic concerning Dexia's statute of limitations defense was topic number 8. In an effort to resolve disputes, Plaintiffs withdrew their topic directed at Dexia's business records concerning the transactions at issue in this litigation.

**Essentially, Only The Statute Of Limitations Topic Is In Dispute**

At the June 2, 2006 hearing, the Parties made clear that Dexia did not have any opposition to Topics 1 and 6 above, and conceded that its primary objection to Topics 3 and 4 was its now-rejected PSRLA-stay argument. *See* June 2, 2006 Hearing Transcript ("Tr.") at 88, 92-93.[2] In fact, apart from Dexia's opposition to the statute of limitations ("SOL") topic, Dexia indicated that it would be willing to compromise on the remaining items. *Id.* at 94 ("Without those two sticking points [SOL and PSLRA-stay objections], then I really think we should be able to reach agreement on the others.").

Since the June 2, 2006 hearing, the parties have discussed narrowing the scope of the dispute, particularly after this Court's rejection of the PSLRA-stay objection. During these discussions, Dexia's counsel informed Plaintiffs that any Court-ordered Rule 30(b)(6) depositions would involve multiple deponents for the various topics. Plaintiffs then requested that the parties proceed with depositions on the uncontested topics, but Dexia has refused unless the parties are able to eliminate *all* outstanding issues. But, as discussed at the June 2 hearing, the parties are unable to reach agreement on the SOL topic: plaintiffs will not withdraw that topic and Dexia argues that, for privileged reasons, the topic is unacceptable. Accordingly, Dexia has retreated to its overriding objection that because Plaintiffs took at 30(b)(6) deposition concerning Dexia's document retention and production over a year ago, they are not entitled to any further 30(b)(6) depositions.[3]

---

[2] A copy of the June 2, 2006 Transcript Of Motion Hearing is attached to the accompanying Declaration of Patrick T. Egan ("Egan Decl.") at Exhibit A.

[3] Recently, Dexia has expressed an interest in continued negotiations, but has not indicated any willingness to retreat from its all-or-nothing approach or to limit its objections on the SOL topic.

3

**Plaintiffs Are Still Open To A Compromise On The SOL Topic**

At the June 2 hearing, the parties discussed Plaintiffs' need for a 30(b)(6) on the SOL topic in light of Dexia's response to Plaintiffs' Interrogatories Numbered 8 and 9, which were directed at facts underlying Dexia's SOL defense. At that time, this Court suggested that if Dexia would stipulate that its response to these interrogatories contained all of the facts that Dexia would offer as evidence at summary judgment and trial on this issue, then that would eliminate the need for a deposition on this topic. Tr. 100. Dexia refused to enter any such stipulation. *Id.* Plaintiffs remain willing to accept the stipulation proposed by the Court. Absent that stipulation, however, Plaintiffs are entitled to probe in a deposition of Dexia what additional evidence, if any, Dexia plans to submit in its defense on this crucial topic.

**The Court-Ordered Depositions Have Not Elicited Testimony On The Proposed Topics**

Since the filing of this motion, the Court has ordered Dexia to produce six witnesses to testify. Of those six, only four have been deposed: Joris Van Helleputte, Ivan De Coen, Bart Ferrand and Peter Rabaey. None of these four provided any meaningful testimony or had any knowledge or involvement in any of the topics listed above.

For example, Joris Van Helleputte, who worked as a credit analyst during the relevant period and testified predominately about the Dictation Consortium and Brussels Translation Group transactions, could not recall working on any equity deals involving L&H or performing any underwriting tasks. *See* Van Helleputte Tr. at 15 and 73.[4] Moreover, Van Helleputte never worked for Artesia Securities and his involvement with Artesia Securities was limited to working on loans (which he could not recall) with investing banking clients of the Bank. *Id.* at 128-29. Beyond that, Mr. Van Helleputte only had "normal colleague relationships" with analysts at

---

[4] Excerpts of the Van Helleputte deposition transcript are attached to the Egan Decl. as Exhibit B.

Artesia Securities, but could not recall any discussions concerning L&H. *Id.* at 129-30. Moreover, when asked about his role, analysis or responsibility related to L&H warrants received by the bank, Mr. Van Helleputte stated: "It is unlikely as I would expect that to be more like an investment-type, investment bank of investment banking department type of issue." *Id.* at 65. As for the credit default swaps, Mr. Van Helleputte testified that he had no involvement in or knowledge about any issues related to the Radial or LIC loans. *Id.* at 127-128. Moreover, when asked by the Belgian Police about a document referencing default swaps, Van Helleputte responded that he was not involved and could not provide any explanation. *See* Van Helleputte Ex. 16 at DBB036694.[5]

Similarly, Ivan De Coen was a commercial banker and head of Structure Finance at the Bank prior to mid-1998 and testified largely about the Dictation Consortium loan. De Coen Tr. at 15-16.[6] Mr. De Coen had no knowledge of or involvement in the Radial/LIC loans, nor did he work at or have any material dealings with Artesia Securities. De Coen Tr. 148-49, 151-52. In fact, Mr. De Coen transferred to a separate division, Artesia Factors, in 1998, after which he had no dealings with anything related to L&H. *Id.* at 15.

As for Mr. Ferrand, he was a corporate banker during the relevant time period and testified that he was not involved in any transactions involving credit default swaps, and did not know if there was a department within the bank responsible for processing such instruments. Ferrand Tr. 57-58.[7] He did not work for Artesia Securities and had little to no involvement with

---

[5] Van Helleputte Ex. 16 has been designated "Confidential" by Dexia and, as such, has not been submitted with this Statement. If the Court would like to review this document, Plaintiffs can provide a copy and translation of the exhibit for the Court's convenience for *in camera* review or filed under seal.

[6] Excerpts of the De Coen deposition transcript are attached to the Egan Decl. as Exhibit C.

[7] Excerpts of the Ferrand deposition transcript are attached to the Egan Decl. as Exhibit D.

5

or knowledge about Artesia Securities and little or no dealings with Artesia Securities analysts. *Id.* 159-61; 164-65. Mr. Ferrand was not involved in, nor did he know about, the Bank's own trading in L&H securities (*Id.* 162-63), and had no role in, nor knowledge about, the Bank's role in L&H's initial public offering. *Id.* at 21.

Lastly, Mr. Rabaey worked as senior credit analyst within the bank's special credits department during the relevant time period. Rabaey Tr., Vol I at 31, 37-42.[8] While Mr. Rabaey did testify concerning the CDS for Radial and LIC, he was not able to testify about the Bank's general policies, procedures and requirements for processing CDSs. Rabaey Tr., Vol III at 157-59; *see also* Rabaey Tr., Vol II at 64 ("…because I work in Corporate Banking, but it on the credit side of Corporate Banking, but Credit Default Swap really is a product of the market, so it is quite alien from me, it is a product by the market room, dealer room."). Similarly, like the other witness, he never worked for Artesia Securities and when asked if he ever consulted with anyone at Artesia Securities, his round-about answer did not identify anyone at Artesia Securities, analyst or otherwise. *See* Rabaey Tr., Vol. III at 92 ("Q: Did you ever consult with anybody at Artesia Securities at any time to talk about the prospects of Lernout & Hauspie Speech Products market value? A: I worked with Bart Ferrand and Piet Cordonnier and the way I approached my file that was before me was from a credit technical perspective which is different from what a Stock Exchange analyst would do. So that's my answer.").

As for Axel Miller and Stefaan DeCraene, to date, the parties have been unable to schedule those depositions.[9] Plaintiffs intend to examine Mr. Miller, in part, concerning Dexia's

---

[8] Excerpts of the Rabaey deposition transcript are attached to the Egan Decl. as Exhibit E-G.

[9] In the month since this Court compelled the Miller and DeCraene depositions, Dexia first offered the day before and day of Thanksgiving as possible deposition dates. Despite the holiday, Plaintiffs tried, but were unable to accommodate those dates. Yesterday, Dexia proposed additional dates for these depositions and Plaintiffs' expect these depositions will be held in early December.

"due diligence" associated with the acquisition of Artesia Banking Corporation, and intend to examine Mr. DeCraene, in part, on issues associated with Artesia Securities. That said, until those depositions are taken, Plaintiffs simply can not know the extent of their knowledge on those topics. Of course, Dexia could always designate these witnesses as bank's Rule 30(b)(6) deponents on those respective topics, but Dexia has never expressed any interest in doing so.

*       *       *       *       *

In summary, Plaintiffs have been unable to procure testimony from Dexia witnesses concerning the core Rule 30(b)(6) topics. Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs leave to conduct a Rule 30(b)(6) deposition of Dexia Bank Belgium on the following topics:

1. Dexia's trading in L&H securities;

2. Dexia's underwriting of public or private offerings of L&H securities;

3. Dexia's control over its subsidiaries Artesia Securities, S.A. and Cordius Asset Management;

4. Dexia's control over the analysts reports concerning L&H issued by those subsidiaries;

5. Dexia's general policies and procedures regarding Credit Default Swaps;

6. Dexia's due diligence in connection with its acquisition of Artesia Banking Corporation, S.A.; and

7. Dexia's statute of limitations defense to Plaintiffs' claims.

| | |
|---|---|
| Dated: November 14, 2006 | Respectfully submitted, |

                                                **BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

                                                /s/ Patrick T. Egan
Glen DeValerio, BBO # 122010
Patrick T. Egan, BBO # 637477
(pegan@bermanesq.com)
Allison K. Jones, BBO # 654804
One Liberty Square
Boston, MA 02109
Telephone:  (617) 542-8300

**SHALOV STONE & BONNER LLP**
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone:  (212) 239-4340

**CAULEY BOWMAN CARNEY & WILLIAMS PLLC**
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone:  (501) 312-8500

*Co-lead Counsel to Class Plaintiffs*
*Hans A. Quaak, Karl Leibinger and Attilio Po*

8

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

_____/s/ Avi Josefson_____
Max W. Berger
Steven B. Singer
Avi Josefson
(avi@blbglaw.com)
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 554-1400

**LOONEY & GROSSMAN LLP**
Richard J. Grahn, BBO #206620
Charles P. Kindregan, BBO #554947
101 Arch Street
Boston, MA 02110
Telephone:  (617) 951-2800

*Counsel to Plaintiffs Stonington Partners, Inc., Stonington Capital Appreciation 1994 Fund L.P. and Stonington Holdings L.L.C.*

**GREGORY P. JOSEPH LAW OFFICES LLC**

_____/s/ Susan M. Davies_____
Gregory P. Joseph, N.Y. Atty Reg. #1645852
Susan M. Davies, N.Y. Atty Reg. #2413508
(sdavies@josephnyc.com)
805 Third Avenue, 31st Floor
New York, NY  10022
Telephone:  (212) 407-1200

**KOTIN, CRABTREE & STRONG**
Amy C. Mainelli, BBO #657201
One Bowdoin Square
Boston, MA 02114
Telephone:  (617) 227-7031

*Counsel to Plaintiffs Gary B. Filler and Lawrence Perlman, Trustees of the TRA Rights Trust*

**PARTRIDGE, ANKNER & HORSTMAN LLP**

    /s/ Terence K. Ankner
Terence K. Ankner, BBO #552469
(tka@anknerlaw.com)
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999

**BOIES SCHILLER & FLEXNER**
Karen C. Dyer
George R. Coe
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118

**REED SMITH LLP**
Alan K. Cotler
Joan A. Yue
2500 One Liberty Place 1650 Market Street
Philadelphia, PA 10103
Telephone: (215) 851-8100

*Counsel to Plaintiffs Janet Baker, James Baker, JKBaker LLC and JMBaker LLC.*

10