UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HANS A. QUAAK, ATTILIO PO
and KARL LEIBINGER, on behalf of
themselves and those similarly situated,

        Plaintiffs,

v.

DEXIA BANK BELGIUM (formerly known
as ARTESIA BANKING CORP., SA),

        Defendants.

No.: 03-CV-11566 (PBS)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEXIA BANK BELGIUM'S MOTION TO COMPEL**

Plaintiffs Hans Quaak, Atilio Po and Karl Leibinger ("Plaintiffs") respectfully submit this opposition to Defendant Dexia Bank Belgium's ("Dexia") motion to compel the production of additional documents concerning Plaintiffs' investigation of the fraudulent misconduct of Dexia and its predecessors, including Artesia Banking Corporation, S.A. and Artesia Securities, S.A. (collectively, "Artesia").

## PRELIMINARY STATEMENT

In the immortal words of Yogi Berra, "This is like *deja vu* all over again." In September 2005, Dexia filed a motion nearly identical to this one seeking the disclosure of additional documents concerning Plaintiffs' investigation of their claims related to the massive fraud perpetrated at Lernout & Hauspie Speech Products, N.V. ("L&H"). In particular, Dexia sought – as it now does again – the production of Plaintiffs' counsel's opinion work product and all work product documents in Plaintiffs' custody or control that were dated, created, sent or received after August 19, 2001 (the "Post-August 2001 Documents").

After extensive briefing (including reply and sur-reply briefs) and oral argument, the Court granted Dexia's motion in part, but denied precisely the relief Dexia seeks here. In particular, the Court ruled that Dexia was not entitled to the production of: (a) Plaintiffs' opinion work product; or (b) the Post-August 2001 Documents. *See* December 22, 2005 Order (the "December 2005 Order") at 1-3. The Court also characterized Dexia's request for those documents as "vastly overbroad." *Id.* at 2.

Dexia did not seek reconsideration of that decision. Indeed, Dexia's current motion makes no mention of the standards governing motions for reconsideration, and Dexia explicitly denies that the motion is merely an untimely effort to seek reconsideration of the December 2005 Order. *See* Dexia Mem. at 8 n.2 Nor did Dexia request that Judge Saris review the December 2005 Order within the ten days permitted by Fed. R. Civ. P. 72(a). As a result, Rule 72(a)

dictates that the Court's determinations in the December 2005 Order are final, and non-appealable.

The untimely nature of Dexia's efforts to relitigate these issues is far from the only basis for denying Dexia's motion. As the Court determined in the December 2005 Order, the Post-August 2001 Documents are irrelevant to the statute of limitations issues Dexia invokes as a pretext for invading Plaintiffs' work product. The First Circuit's controlling precedents demonstrate that the relevant issues are whether: (1) Plaintiffs' pre-August 19, 2001 investigation of their claims was reasonable; and (2) a reasonable investigation would have uncovered facts sufficient to establish Plaintiffs' claims against Dexia before that date. Accordingly, as the Court determined in the December 2005 Order, the steps taken by Plaintiffs' counsel post-August 19, 2001 are irrelevant to Dexia's purported statute of limitations defense.

The Court also properly struck a balance between Dexia's efforts to obtain relevant documents and its determined efforts to gratuitously invade Plaintiffs' opinion work product. As Plaintiffs emphasized in the earlier round of briefing, the federal courts have repeatedly recognized the importance of protecting trial counsel's strategies, thought processes and opinions. Moreover, Fed. R. Civ. P. 26(b)(3) provides that, even in cases where disclosure of a party's work product is appropriate, opinion work product nevertheless is entitled to special protection. As a result, numerous courts have found that the protections offered to opinion work product are absolute. The Court need not go so far here, however. Rather, Dexia is not entitled to the production of the opinion work product it now seeks because, as numerous courts have recognized, Dexia cannot obtain unbridled disclosure of the subjective analyses of Plaintiffs' counsel merely because Dexia has asserted a statute of limitations defense.

# ARGUMENT

## I.

## DEXIA'S MOTION IS AN UNTIMELY, IMPERMISSIBLE EFFORT TO RELITIGATE ISSUES THAT THE COURT AUTHORITATIVELY DECIDED IN THE DECEMBER 2005 ORDER

Pursuant to Fed. R. Civ. P. 72(a), objections to a Magistrate Judge's nondispositive order must be filed within ten days of service of the order. Rule 72(a) expressly provides that "a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."

That straightforward rule precludes the principal relief Dexia seeks by means of its motion. Dexia's September 2005 motion to compel sought the production of both: (a) Plaintiffs' opinion work product; and (b) the Post-August 2001 Documents. As noted above, the Court flatly denied that relief. Rather, the Court ordered Plaintiffs to produce only certain specified "categories" of documents that "were dated, created, sent or received before August 19, 2001." 12/22/05 Order at 1-2. In so holding, the Court rejected Dexia's contentions that: (a) "Plaintiffs should be ordered to produce all documents concerning their investigation of L&H, Artesia and Dexia" (Dexia 9/9/05 Mem. at 7); and (b) Plaintiffs had "waived any privilege or work product protection (opinion and non-opinion) that might have applied to their investigation" (Dexia 9/30/05 Reply Mem. at 1).

Dexia never filed a motion seeking reconsideration of the December 22, 2005 Order. Nor did Dexia seek to obtain Judge Saris's review of that non-dispositive Order. Thus, Rule 72(a) unequivocally requires the denial of Dexia's motion, which is well over two months too late.

Substantial case law supports that conclusion. The First Circuit and other courts have consistently held that the failure of a party to file objections to a Magistrate Judge's ruling within the ten days allowed by Rule 72(a) results is the forfeiture of the right to seek the reversal of that ruling, even on appeal. *E.g., Phinney v. Wentworth Douglas Hospital*, 199 F.3d 1, 3-4 (1st Cir. 1999); *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964-65 (1st Cir. 1997); *Lowell v. Drummond, Woodsum & MacMahon Employee Medical Plan*, 2004 WL 1571793, at *5-6 (D. Me. July 13, 2004) ("Lowell did not object to, or otherwise 'request reconsideration' of, my March 4, 2004 order until the filing of her cross-motion on May 14, 2004, *see* Docket, thereby effectively waiving any objection to that order [under Rule 72(a)]."), *adopted*, 2004 WL 1746933 (D. Me. Aug. 03, 2004).

Furthermore, to the extent this motion can be deemed one for reconsideration – a characterization Dexia rejects – Dexia fails to satisfy the exacting requirements necessary to justify revisiting the issues resolved in the December 2005 Order. Prior orders may be reconsidered only in rare instances where the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order. *E.g., Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000).

Because it rejects the notion that this motion is one for reconsideration, Dexia makes no effort to establish that any of those standards are met here.[1] Accordingly, there is no reason for the Court to repeat its previous analysis of the matters addressed in the December 2005 Order.

---

[1] As discussed in further detail below, Dexia does advance the insulting contention that the Court harbored certain misconceptions regarding the scope and nature of Plaintiffs' investigation of their claims at the time the Court issued the December 2005 Order. That assertion is both incorrect (the Court made no findings of fact concerning Plaintiffs' investigation) and irrelevant to whether Dexia has cited the type of "new evidence not previously available" that could theoretically justify a motion for reconsideration.

## II.

## THE COURT CORRECTLY DECIDED THAT DEXIA IS NOT ENTITLED TO THE PRODUCTION OF THE POST-AUGUST 2001 DOCUMENTS

### A. The Controlling Standards That Govern Dexia's Purported Statute Of Limitations Defense

Even had Dexia advanced some conceivable basis for the Court to permit Dexia to relitigate the issues authoritatively decided by the Court just three months ago, the blackletter principles applicable to Dexia's purported statute of limitations defense dictate that this Court was correct in denying Dexia discovery of the Post-August 2001 Documents. Judge Saris has already determined that the Sarbanes-Oxley Act of 2002 ("SOX") provides the limitations period applicable to Plaintiffs' claims for violation of § 10(b) of the Securities and Exchange Act of 1934. *Quaak v. Dexia S.A.*, 357 F.Supp.2d 330, 336 (D. Mass. 2005) (ruling that the "longer statute of limitations period provided by Sarbanes-Oxley applies"). Thus, Plaintiffs' claims are timely as long as they were commenced within the earlier of: "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b).

Dexia's motion implicates the shorter of these periods – SOX's two years statute of limitations, which runs from "the discovery of the facts constituting the violation." The First Circuit's decision in *Young v. Lepone*, 305 F.3d 1 (2002), which concerned the similarly worded, but shorter, limitations periods applicable to § 10(b) claims prior to the enactment of SOX, provides the controlling standards regarding when SOX's two-year limitations period commences. Under *Young*, the limitations period "does not begin to run 'until the time when the plaintiff in the exercise of reasonable diligence discovered or should have discovered the fraud of which he complains.'" *Id.* at 8 (quoting *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 129 F.3d 222, 224 (1st Cir. 1997)).

The First Circuit has established a two-step process for determining when plaintiffs should discover the fraud alleged in a complaint. In the first step of that process, the jury (or the court in the rare circumstances where this factual determination is so obvious that it can be made as a matter of law) must determine whether the defendant has satisfied its burden of demonstrating that there were sufficient "storm warnings" of fraud to cause a reasonable investor to investigate the possibility of fraudulent conduct.[2] If the defendant satisfies that burden, the fact finder must determine in the second step of the analysis "whether, once sufficient storm warnings were apparent, the investor probed the matter in a reasonably diligent manner."[3]

Importantly, SOX's two-year limitations period does not begin to run when "sufficient storm warnings first appear." *Id.* at 9.[4] Rather, the First Circuit held that, "following the receipt

---

[2] *Id.* at 8 ("Because sufficient storm warnings would lead a reasonable investor to check carefully into the possibility of fraud, this step necessarily entails a determination as to whether a harbinger, or series of harbingers, should have alerted a similarly situated investor that fraud was in the wind."); *see also id.* at 9 ("If, however, a defendant seeks to truncate the limitations period by claiming that the plaintiff had advance notice of the fraud through the incidence of storm warnings, then the defendant bears the initial burden of establishing the existence of such warnings."); *id.* ("In the archetypical case, therefore, it is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice.").

[3] *Id.* at 8; *see also id.* at 9 ("Only if the defendant succeeds in this endeavor must the plaintiff counter with a showing that she fulfilled her corresponding duty of making a reasonably diligent inquiry into the possibility of fraudulent activity."); *id.* ("whether a particular plaintiff exercised reasonable diligence in the face of such [storm] warnings" is normally a jury question).

[4] Lest silence be taken as assent, Plaintiffs also note that Dexia's assertion that Plaintiffs were somehow obligated to undertake an investigation that focused narrowly upon Artesia's misconduct by the Fall of 2000 is incorrect. Plaintiffs' obligation is only to undertake a reasonable investigation of the L&H fraud. Whether a reasonable investor faced with particular facts would focus particular attention upon a specific defendant, and the nature of the investigation a reasonable investor would undertake, are questions of fact that must be answered on the basis of a complete record. *E.g., Rothman v. Gregor,* 220 F.3d 81, 98 (2d Cir. 2000) (whether it was reasonable for the plaintiffs to take more than a year to obtain a publicly available report relevant to claims against an issuer's auditor, even after they filed suit against

(continued...)

of sufficient storm warnings, a plaintiff's cause of action is deemed to accrue on the date when, exercising reasonable diligence, she would have unearthed the fraud." *Id.* at 10; *accord, e.g., Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir. 1987) ("[S]torm warnings of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner . . . and his cause of action is deemed to accrue on the date when he *should have discovered* the alleged fraud.") (emphasis in original).[5] Accordingly, to defeat Dexia's statute of limitations defense, Plaintiffs must convince a jury only that: (a) Dexia has failed to establish that sufficient storm warnings of Dexia's fraudulent conduct existed more than two years before Plaintiffs commenced this action; (b) Plaintiffs conducted a reasonable investigation of their claims up until the date two years prior to the commencement of this action; *or* (c) a reasonable investor would not have discovered facts sufficient to establish a § 10(b) claim against Dexia less than two years prior to the commencement of this action. *Young,* 305 F.3d at 10 ("Distilled to bare essence, Deloitte can prevail at this procedural stage only if the trial court properly concluded that the management letters amounted to storm warnings for a shareholder who (like Cape Ann) held a seat on the company's board of directors and audit committee; that Cape Ann failed to

---

[4](...continued)
the issuer, presented factual questions that could not be resolved as a matter of law); *see also, Young,* 305 F.3d at 12 ("In short, the complaint, on its face, permits the inference that NutraMax's board neither knew of nor fully appreciated the true state of NutraMax's finances, much less Deloitte's role in the situation, until after August 1, 1999."). Accordingly, the question of when, if ever, during the period prior to August 19, 2001, Plaintiffs should have taken particular investigatory steps with respect to Artesia is still an open matter in this litigation.

[5] Notably, the *Young* court recognized that, "[d]epending on the individual circumstances, a reasonably diligent investigation following the receipt of storm warnings may consume as little as a few days or as much as a few years to get to the bottom of the matter." *Young,* 305 F.3d at 9.

exercise reasonable diligence in the face of those portents; and that, had Cape Ann investigated, it would have discovered the fraud prior to August 1, 1999.").[6]

### B.   The Standards Outlined In *Young* Compel The Conclusion That The Court Properly Determined That Dexia Is Not Entitled To The Disclosure Of The Post-August 2001 Documents

In light of the *Young* court's holding, documents related to investigatory efforts undertaken less than two years prior to the commencement of this action are not relevant to the statute of limitations issues presented by this litigation. As amended by SOX's extended limitations period, *Young* dictates that Dexia's limitations defense can succeed only if, among other things, Plaintiffs failed to employ reasonable diligence in investigating the L&H fraud *and* Plaintiffs would have discovered facts sufficient to establish § 10(b) claims against Dexia more than two years prior to the commencement of this action (*i.e.*, before August 19, 2001) had they employed reasonable diligence before that date. *Id.*[7]

Thus, if Plaintiffs were reasonably diligent until August 19, 2001, but inexplicably dilatory thereafter, their claims are still timely under the SOX limitations period. *Id.* at 10. Indeed, *Young* dictates that, even if Plaintiffs were lackadaisical throughout the course of their

---

[6] Dexia disregards the first and last of those relevant inquiries in arguing that Plaintiffs can only negate Dexia's purported statute of limitations defense by demonstrating that they "were reasonably diligent in investigating potential claims against Dexia or Artesia before August 19, 2001." Dexia Mem. at 9.

[7] Dexia repeatedly invokes the mantra that, although Plaintiffs obtained over 1.8 million pages of documents related to the L&H fraud by criss-crossing the Atlantic to seek every imaginable source of information regarding that fraud, Plaintiffs' document production reveals that Plaintiffs did not undertake any effort to obtain information relevant to potential claims against Dexia. It is difficult to fathom that Dexia actually believes this bluster. Notably, Dexia suggests no source Plaintiffs could reasonably have been expected to obtain prior to August 19, 2001 that revealed information sufficient to establish securities fraud claims against Dexia. Dexia also omits from its analysis any discussion of its substantial affirmative efforts to conceal its fraudulent conduct. *See* Third Amended Complaint at ¶¶ 102-28; 142-48.

investigation of their claims, Dexia's limitations defense can succeed only if Dexia establishes the impossible – "that, had [Plaintiffs] investigated, [they] would have discovered the fraud prior to August [19, 2001]." *Id.*

Dexia offers no satisfactory explanation of how the Court erred in ruling that the Post-August 19, 2001 Documents are irrelevant to the objective question of whether Plaintiffs were reasonably diligent in investigating their claims before that date. Nor does Dexia explain how the Post-August 19, 2001 Documents are relevant to the objective question of whether, had Plaintiffs investigated, they would have discovered Artesia's fraudulent conduct. The steps Plaintiffs took after August 19, 2001 simply have no bearing on whether their investigation prior to that date was objectively reasonable or whether an objectively reasonable investigation would have yielded the internal Dexia documents that ultimately provided the basis for Plaintiffs' claims. Accordingly, as the Court held in the December 2005 Order, the Post-August 2001 Documents are irrelevant to Dexia's statute of limitations defense and, therefore, not discoverable. *See* December 2005 Order at 1-2.[8]

To support its contention that the Court should reverse itself with respect to the production of the Post-August 2001 documents, Dexia has cited . . . nothing.[9] Specifically,

---

[8] *Accord, e.g., Aloe Vera of America, Inc. v. United States*, 2003 WL 22429082, at *3 (D. Ariz. Sep. 23, 2003) (where defendant asserted statute of limitations defense with respect to a claim that the plaintiff could assert "at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure," only evidence concerning the investigation undertaken more than two years prior to the commencement of the plaintiffs' action was relevant and, therefore, discoverable); *United States v. Urban Health Network, Inc.*, 1993 WL 12811, at *3 (E.D. Pa. Jan. 19, 1993) (recognizing that only documents created by the government prior to the three-year limitations period applicable to its claims could be relevant to the defendants' purported statute of limitations defense).

[9] Instead, Dexia merely repeats the arguments the Court previously rejected. That tactic cannot merit the reversal of the December 2005 Order. *Davis*, 89 F.Supp.2d at 147-48 ("A

(continued...)

Dexia has located no case decided in the long annals of securities litigation (or any other type of litigation) where a court ordered the disclosure of work product related to an investigation undertaken by a plaintiff's counsel, unless that investigation was undertaken before the relevant anniversary of the limitations period applicable to the plaintiff's claims. Here, that relevant anniversary date is August 19, 2001. As decided in the December 2005 Order, *Aloe Vera* and *Urban Health*, therefore, Dexia is not entitled to the production of the Post-August 2001 Documents.

Dexia also asserts that the Court should reverse the December 2005 Order because the Court's ruling was purportedly based upon mistaken assumptions regarding the scope of Plaintiffs' pre-August 19, 2001 investigation. Dexia cites no evidence, however, that the Court made any erroneous suppositions regarding those matters.[10] In opposing the previous motion to compel, Plaintiffs pointed out what they reiterate now: Plaintiffs conducted a massive integrated investigation of the L&H fraud and of Plaintiffs' potential claims. *See* Plaintiffs' 9/23/05 Mem. at 2-3. Furthermore, in support of its previous motion, Dexia argued, as it does now, that it was entitled to the production of all Post-August 19, 2001 Documents. *See* Dexia 9/9/05 Mem. at 7. The contention that the Court made erroneous factual assumptions at the time it rejected Dexia's previous motion therefore lacks any discernible basis.

---

[9](...continued)
comparison of the Commonwealth's memorandum in support of its original motion with that of its motion for reconsideration reveals that the latter simply rehashes the arguments set forth in the former. This is not enough to merit reconsideration.").

[10] Dexia also cites no support for its contention that Plaintiffs' purported failure to produce pre-August 19, 2001 documents concerning an investigation specifically directed at Dexia somehow permits Dexia to relitigate the issues presented to the Court just three months ago. *See* Dexia Mem. at 8 n.2.

Similarly, Dexia cites no support for its assertion that Plaintiffs' refusal, at this early date, to enter stipulations with Dexia regarding the evidence Plaintiffs will introduce at trial permits Dexia to conduct unlimited discovery of Plaintiffs' work product. Needless to say, Plaintiffs are not obligated to enter any such stipulations. Nor was the Court's relevance determination with respect to the Post-August 2001 Documents somehow contingent upon Plaintiffs entering such an unprecedented agreement. This rationalization for Dexia's efforts to relitigate the issues decided in the December 2005 Order is therefore meritless.

### III.

### THE COURT CORRECTLY DECIDED THAT DEXIA IS NOT ENTITLED TO THE PRODUCTION OF PLAINTIFFS' OPINION WORK PRODUCT

Dexia's effort to relitigate the question of whether it is entitled to the production of Plaintiffs' opinion work product is equally unavailing. As Plaintiffs emphasized in connection with the previous motion to compel, Fed. R. Civ. P. 26(b)(3) dictates that counsel's opinion work product is entitled to broad protection from disclosure. Pursuant to Rule 26(b)(3), factual work product is discoverable if an adversary demonstrates that it "has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Even in cases where the discovery of a party's factual work product is permitted, however, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3).

The Supreme Court emphasized the highly protected status of opinion work product in *Upjohn Co. v. United States,* 449 U.S. 383 (1981). In particular, the Court noted that "Rule 26 accords special protection to work product revealing the attorney's mental processes." *Id.* at 400. The Court therefore found that, at a minimum, an adversary must make a "far stronger

-11-

showing of necessity and unavailability by other means" to obtain opinion work product than is necessary to justify the disclosure of fact work product. *Id.* at 401-02.[11]

Perhaps the leading decision concerning the discovery of opinion work product purportedly relevant to a statute of limitations defense in a securities fraud action is *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210 (D. Mass. 2000) (Wolf, J.). As Plaintiffs emphasized in connection with Dexia's previous motion to compel, *Axler* dictates that Plaintiffs' opinion work product is not discoverable here.[12]

*Axler*, like this case, involved a securities class action in which a defendant, Molten Metal, pursued a statute of limitations defense. *Id.* at 211. Molten Metal sought discovery concerning the investigation undertaken by the plaintiffs' counsel. *Id.* at 212. By means of interrogatory responses, the plaintiffs stated that they had not personally conducted any investigation of the alleged fraud, but that their counsel had undertaken investigatory efforts following Molten Metal's disclosure of certain material, adverse information. *Id.*

---

[11] As the *Upjohn* Court noted, some courts have held that opinion work product is entitled to an absolute protection from disclosure. *Id.* at 401; *see, e.g., Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974); *In re Grand Jury Proceedings*, 473 F.2d 840, 842 (8th Cir. 1973). Other courts have ruled that opinion work product is "only" subject to a near absolute protection from discovery. *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("Opinion work product, on the other hand, is virtually undiscoverable."); *In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir. 1988) (holding that a subject matter waiver of fact work product did not apply to opinion work product because "opinion work product [is] to be accorded great protection by the courts" and "the underlying rationale for the doctrine of subject matter waiver has little application in the context of a pure expression of legal theory or legal opinion"). Because Dexia has made no showing that it is entitled to the production of Plaintiffs' opinion work product, the Court need not decide the precise scope of the protections provided to opinion work product here.

[12] Curiously, although Plaintiffs relied heavily upon *Axler* in opposing Dexia's previous motion to compel, Dexia omits any discussion of this indistinguishable District of Massachusetts decision from its memorandum.

The *Axler* court recognized that, in those circumstances, the defendant was entitled to limited disclosure "from plaintiffs' counsel concerning what investigation they conducted, what information they received, and when they received it." *Id.* Nevertheless, the court emphasized that, because the relevant inquiry is when reasonable investors would have discovered facts necessary to establish their claims, "the opinions plaintiffs' counsel actually formed" were only tangentially relevant to Molten Metal's potential statute of limitations defense "as possible evidence of what a reasonable person would have concluded." *Id.*

As a result, the *Axler* court held that Molten Metal had failed to satisfy the exacting test required to justify the disclosure of opinion work product. *Id.* at 213 ("Rule 26(b)(3) admonishes courts ordering the discovery of work-product 'to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'") (quoting Fed. R. Civ. P. 26(b)(3)).[13] Accordingly, the court denied the defendant's motion to compel to the extent it sought the disclosure of "the analysis done or conclusions reached by plaintiffs' counsel," *i.e.*, the plaintiff's opinion work product. *Id.* at 213.[14]

---

[13] This holding, and the similar determinations reached by the decisions cited in note 14, *infra*, belie Dexia's assertion that the subjective opinions of Plaintiffs' counsel are somehow critical to Dexia's ability to prove its meritless statute of limitations defense. *See* Dexia Mem. at 6 ("There is no way to answer that question without inquiring into the mental impressions of the lawyers who conducted the alleged investigation."). Parenthetically, it is worth noting that the supposed statute of limitations "defense" will never see the light of day at trial. Dexia would be hard pressed indeed to explain to a jury the entirely inconsistent arguments that (1) Plaintiffs should have been aware of a massive fraud perpetrated by Dexia, but (2) Dexia actually engaged in no fraudulent conduct whatsoever.

[14] *Accord, e.g., Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 621 & 621 n.1 (N.D. Cal. 2005) (citing *Martin-Marietta* with approval in ruling that waiver of attorney-client privilege and fact work product did not amount to a waiver of opinion work product where plaintiff's attorney's knowledge of particular facts was relevant to defense asserted by

(continued...)

As the foregoing discussion demonstrates, *Axler* is indistinguishable from the facts presented by this motion. Here, as in *Axler*, Plaintiffs' opinion work product has, at best, an attenuated relationship to the facts relevant to Dexia's purported statute of limitations defense – those concerning what an objectively "reasonable" person would have investigated and discovered. *Young*, 305 F.3d at 8. As a result, Dexia cannot make the strong showing of "'necessity and unavailability by other means'" necessary to justify disclosure of Plaintiffs' counsel's opinion work product. *Axler*, 196 F.R.D. 213 (quoting *Upjohn*, 449 U.S. at 402).

Notably, none of the opinions cited by Dexia as support for its contention that Plaintiffs have waived the immunity from disclosure that applies to their opinion work product was decided since Dexia briefed this issue in September 2005. Neither Dexia's reiteration of those decisions it previously cited, nor its citation to authorities it previously disregarded can provide a sufficient basis for reversing the December 2005 Order. *E.g., Davis*, 89 F.Supp.2d at 147 ("'The motion for reconsideration is not an opportunity for a party to improve upon his arguments or try out new arguments; nor is it properly a forum for a party to vent his dissatisfaction with the Court's reasoning.'") (citation omitted); *In re Bank of New England Corp.*, 142 B.R. 584, 587

---

[14](...continued)
defendant); *Aloe Vera of America, Inc. v. United States*, 2003 WL 22429082, at *6 (D. Ariz. Sep. 23, 2003) (citing *Axler* favorably in denying defendant discovery of plaintiffs' opinion work product purportedly relevant to statute of limitations defense because "Plaintiffs' counsel's *actual opinions* are not relevant to the essential question of what *facts* relating to the alleged disclosures Plaintiffs' counsel possessed that were not otherwise provided by Defendant, what similar counsel exercising reasonable diligence would have concluded from such facts, and when counsel arrived at a conclusion and may have communicated it to Plaintiffs."); *Foley v. Juron Assocs.*, 1986 WL 5557, at *5 (E.D. Pa. May 13, 1986) (while defendant in securities fraud action was entitled to discovery of plaintiff's fact work product relevant to statute of limitations defense, plaintiff's opinion work product was not subject to disclosure because "Rule 26(b)(3) is explicit in its provision of a greater level of protection for portions of documents containing mental impressions, conclusions, opinions, or legal theories of either the attorney or the representative of the party concerning the litigation").

(D. Mass. 1992) ("A motion for reconsideration cannot be considered 'a vehicle for rehashing arguments previously made or for refuting the court's prior ruling.'") (citation omitted).

Furthermore, none of the decisions Dexia cites contradicts *Axler*. In particular, none of those cases holds that defendants are entitled to unlimited discovery of opinion work product regarding attorneys' investigation of their clients' claims in actions where a statute of limitations begins to run when an objectively reasonable plaintiff would have discovered facts sufficient to establish its claims. In two decisions Dexia cites, defendants were permitted to discover plaintiffs' opinion work product because the relevant issue was the plaintiffs' *subjective* knowledge of particular information.[15] In sharp contrast, as the *Axler* and *Young* courts recognized, the focus of the statute of limitations inquiry with respect to a § 10(b) claim is the objective factors of what a reasonable plaintiff would have done and when that reasonable plaintiff would have discovered the facts necessary to establish its claims. Dexia has no need to invade Plaintiffs' highly protected opinion work product to establish the facts relevant to those inquiries.[16]

In another case Dexia cites, the defendant's discovery of the plaintiffs' work product was limited to nothing more than **non-opinion** work product reflecting: (1) when the plaintiff's attorneys became aware of facts that would have put them on notice of a cause of action against

---

[15] *See Byers v. Burleson*, 100 F.R.D. 436, 439 (D.D.C. 1983) (subjective knowledge of plaintiff and her attorney were pertinent to determining commencement of limitations period for claim of legal malpractice); *American Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709 (W.D. Mo. 1978) (under Missouri law, defendant was entitled to discovery of opinion work product where trigger of limitations period depended entirely upon the plaintiff's subjective knowledge and the plaintiff, in contrast to this case, had failed to provide the defendant with any meaningful discovery).

[16] *Axler*, 196 F.R.D. at 212; *see also, e.g., Tennison*, 226 F.R.D. at 621 & 621 n.1; *Aloe Vera*, 2003 WL 22429082, at *6; *Foley*, 1986 WL 5557, at *5.

the defendants for legal malpractice; and (2) the specific facts that placed the plaintiff's attorneys on notice. *In re Imperial Corp. of Am.*, 179 F.R.D. 286, 290 (S.D. Cal. 1998). Those basic facts are disclosed in Plaintiffs' pleadings.

Finally, in two opinions Dexia cites, courts found that parties could discover their adversaries' opinion work product because they invoked "advice of counsel" defenses, thereby putting their *subjective* knowledge directly at issue.[17] Even in those circumstances, this Court carefully circumscribed the scope of the opinion work product to which the movant was entitled in the *Micron Separations* case so as not to provide the movant with unfettered access to the opinions and strategies of its opponent's counsel. *Micron Separations*, 159 F.R.D. at 365 (ordering plaintiff to produce work product that was inconsistent with a legal opinion letter on which the plaintiff relied, but not documents that were consistent with the opinion letter). Thus, Dexia has cited no case presenting facts remotely similar to this one in which a plaintiff was forced to disclose opinion work product purportedly relevant to whether the plaintiff conducted a reasonable investigation or could have learned particular facts by a specified date.

### III.

### DEXIA HAS ESTABLISHED NO BASIS FOR THE COURT TO REVIEW PLAINTIFFS' WORK PRODUCT *IN CAMERA*

Parties are not entitled to obtain *in camera* review of documents listed on a privilege log simply because they assert that there is some possibility that their adversary has falsely stated that the documents are protected from disclosure. Rather, the Supreme Court has held that,

---

[17] *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 17 (D. Mass. 1997) (insurer's defense of reliance on advice of counsel in opposing claim of bad faith denial of coverage placed mental impressions of counsel "directly at issue"); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 365 (D. Mass. 1995) (reliance on advice of counsel in opposing claim of willful patent infringement waived attorney opinion work product to the extent communicated to the client).

before a court undertakes *in camera* review of allegedly privileged documents, "the party seeking in camera review must make some threshold showing that such review is appropriate." *United States v. Zolin,* 491 U.S. 554, 572 (1989); *accord, e.g., Newport Pacific Inc. v. County of San Diego,* 200 F.R.D. 628, 633 (S.D. Cal. 2001) (noting that "*in camera* review is generally disfavored and a court should not conduct such a review solely because a party begs it to do so" and that review is appropriate only when "the party seeking the review . . . make[s] a factual showing sufficient to support a reasonable good faith belief that the review will reveal evidence that is not privileged") (citations and internal quotations omitted); *Nishika, Ltd. v. Fuji Photo Film Co., Ltd.,* 181 F.R.D. 465, 467 (D. Nev. 1998) (*in camera* review "is not generally favored" and is appropriate only where there is a "sufficient evidentiary showing which creates a legitimate issue as to the application of the privilege asserted").

Dexia has failed to make the "threshold showing" mandated by the Supreme Court in *Zolin.* Rather, it simply asserts that it believes that Plaintiffs are taking an impermissibly expansive view of what constitutes opinion work product. Dexia Mem. at 7. The purported basis for that assertion is that Plaintiffs have argued that a "Lernout & Hauspie Document Review Issues List" is opinion work product. *See id.* Yet, that list, which reflects one iteration of the particular items Plaintiffs' counsel wished document reviewers to focus upon, undeniably reflects counsel's thought processes. Accordingly, it is quintessential opinion work product. *See, e.g., In re Vitamins Antitrust Litig.,* 211 F.R.D. 1, 4 (D.D.C. 2002) ("Opinion work product contains the 'opinions, judgments, and thought processes of counsel' and receives almost absolute protection from discovery."); *Stone Container Corp. v. Arkwright Mutual Insurance,* 1995 U.S. Dist. LEXIS 2400, at *11 (N.D. Ill. Feb. 28, 1995) (counsel's selection of documents for his client to review prior to a deposition constituted protected opinion work product where

counsel had no intention of revealing those documents, which would reveal his thought processes, to his adversary). Thus, Dexia's request that the Court conduct an *in camera* review of the documents listed on Plaintiffs' privilege log amounts to nothing more than Dexia's grossly inadequate assertion that Plaintiffs' counsel have mischaracterized the nature of the documents listed on their log.

## CONCLUSION

For all of the reasons set forth above, Dexia's motion to compel should be denied in all respects.

Dated: March 22, 2006

Respectfully submitted,

BERMAN DeVALERIO PEASE
   TABACCO BURT & PUCILLO

/s/Patrick T. Egan
Glen DeValerio, #122010
Jeffrey C. Block, #600747
Patrick T. Egan, #637477
(pegan@bermanesq.com)
Allison K. Jones, #654804
(ajones@bermanesq.com)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

SHALOV STONE & BONNER LLP
James P. Bonner
Patrick L. Rocco
485 Seventh Avenue, Suite 10000
New York, New York 10018
Telephone: (212) 239-4340

CAULEY BOWMAN CARNEY
 & WILLIAMS LLC
Allen Carney
11001 Executive Center Drive, Suite 200
Little Rock, Arkansas 72212
Telephone: (501) 312-8500

**CO-LEAD COUNSEL FOR PLAINTIFFS
HANS A. QUAAK, ATTILIO PO and KARL
LEIBINGER**